UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------------x
In re:                                                                            Chapter 11

41-23 Haight Street Realty, Inc.,                                     Case No. 19-43441 (NHL)

                    Debtor.
---------------------------------------------------------------x

### ORDER CONFIRMING THE SALE OF THE DEBTOR'S REAL PROEPRTY TO THE STALKING HORSE BIDDER FREE AND CLEAR OF ALL LIENS, CLAIMS, ENCUMBRANCES AND OTHER INTERESTS AND RELATED RELIEF

Upon the motion (the "Sale Procedures Motion") [ECF No. 116] of Gregory Messer, solely in his capacity as Chapter 11 Trustee ("Trustee") of the estate of 41-23 Haight Street Realty Inc. ~~a/k/a 41-23 Haight Realty Inc.~~ *(NHL)* (the "Debtor"), by his counsel, LaMonica, Herbst & Maniscalco, LLP, seeking entry of an order, pursuant to 11 U.S.C. §§ 105 and 363 (the "Bankruptcy Code") and Rules 2002 and 6004(h) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"): (i) authorizing the Trustee to proceed with virtual public auction sale of the Debtor's real properties in Queens County identified as Block 5063, Lots 44, 45, 46, 47, 48, 49, 50, 51, 52, 53 and 55 Haight Street, Flushing, New York 11355 (collectively, the "Real Property"); (ii) approving the Terms and Conditions of Sale (the "Sale Terms") and the Notice of Sale; (iii) approving the sale of Debtor's Real Property, free and clear of all liens, claims and encumbrances, security interests and other interests (collectively, the "Liens"), to the successful bidder(s) at the sale; (iv) scheduling a hearing to confirm the results of the sale; and (v) approving and granting such other, further and different relief as this Court deems just and proper; and the letter in support of the Sale Procedure Motion having been filed by the Petitioning Creditors on March 23, 2020 [ECF No. 122]; and a limited objection having been filed by Chen Xia Liu and Chen Hua Liu (the "Lius"), through counsel, on March 24, 2020 (the "Lius Objection") [ECF No.

124]; and upon the Sales Procedure Motion having come on to be heard before the Court on March 24, 2020 at 3:30 p.m. (the "Procedures Hearing"), the transcript of which is incorporated by reference herein; and upon the order entered by the Court on March 30, 2020 (the "Sales Procedure Order") [ECF No. 126], pursuant to which the Court, inter alia: (i) approved the Sale Terms and the Notice of Sale; (ii) approved the procedures for sale of Debtor's Real Property, free and clear of all Liens to the successful bidder(s) at the public auction; (iii) scheduled the initial the public auction to be held on April 23, 2020; (iv) directed the Trustee to pay, from the proceeds of any sale of the Real Property, all sums due to 41-31 Haight Street Lender LLC (the "Lender"), on account of both the Lender's pre-petition loans to the Debtor and the Lender's post-petition loans to the Debtor's estate, through the date of payment of such loans; and (v) overruled the Lius Objection; and upon the motion dated April 29, 2020 (the "Stalking Horse Motion")[1] [ECF No. 145] of the Trustee, on behalf of the Debtor's estate, seeking entry of an order approving, inter alia: (i) the stalking horse agreement (the "Stalking Horse Agreement") with Mei Yang Ko (the "Stalking Horse Bidder" or "Purchaser"), which provided for, among other things, (i) an offer in the amount of $27,300,000, *plus* the payment of a 4% Buyer's Premium and the payment of any and all transfer taxes owed to New York City and New York State, (ii) the delivery of a deposit of $2,780,000 (the "Deposit"), currently being held by the Trustee; and (iii) a breakup fee of $500,000 (the "Breakup Fee"); and upon an objection to the Stalking Horse Motion having been filed by Tu Kang Yang and Selene Chau (the "Yang Chau Objection"); and the Stalking Horse Motion having come on to be heard before the Court on May 5, 2020 at 12:00 p.m. (the "Stalking Horse Hearing"), the transcript of which is incorporated by reference herein; and upon the order entered by the Court

---

[1] Capitalized terms not otherwise defined herein shall have the definition ascribed to the in the Sale Procedures Motion or the Stalking Horse Motion. In the event of any conflict between the terms of this Order, on the one hand, and the terms of the Stalking Horse Motion or Stalking Horse Agreement, on the other hand, the terms of this Order shall control.

on May 8, 2020 (the "Stalking Horse Order") [ECF No. 154], pursuant to which, inter alia: (i) the Court approved the Stalking Horse Agreement with the Stalking Horse Bidder, (ii) approved the Breakup Fee; and (iii) overruled the Yang Chau Objection; and upon a virtual Public Auction having been conducted by the Trustee's retained brokers, Maltz Auctions, Inc. and Rosewood Realty LLC (the "Co-Brokers"), on May 12, 2020 at 11:00 a.m. in accordance with the Sale Procedures Order (the "Public Auction"); and there having been no other registered bidders and no competing bids at the Public Auction; and the Stalking Horse Bidder having been the successful purchaser of the Real Property with a purchase price of $27,300,000 (*plus* the payment of the Buyer's Premium in the sum of $1,092,000 and *plus* the payment of any and all New York State and New York City transfer taxes (collectively, the "Purchase Price"); and the confirmation of the sale of the Real Property and the Public Auction having come on to be heard before the Court on May 14, 2020 at 11:00 a.m. (the "Sale Confirmation Hearing"); and upon the record of the Sale Confirmation Hearing, the transcript of which is incorporated by reference herein; and upon the transcripts of all other hearings in this case which are hereby incorporated by reference; and no additional notice or hearing being required; and after due deliberation and good cause appearing therefor, it is hereby FOUND AND DETERMINED THAT:

A. The Court has subject matter jurisdiction over the Sale Procedure Motion and the Stalking Horse Motion and the relief requested therein, including without limitation, the sale of the Real Property, pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding pursuant to 28 U.S.C. §§ 157(b)(2)(A) and (N). Venue in this district is proper before the Court pursuant to 28 U.S.C. §§ 1408 and 1409.

B. Proper, timely, adequate and sufficient notice of the Sale Procedure Motion, the Stalking Horse Motion, the Public Auction and the Sale Confirmation Hearing was provided in

accordance with Bankruptcy Code §§ 105 and 363 and Bankruptcy Rules 2002, 4001 and 6004, including, but not limited to, all the parties listed in paragraph 6 of the Sale Procedure Order.

C.  As directed the Sale Procedure, the Trustee, through the Co-Brokers, published the Notice of Sale in *New York Real Estate Journal*, *New York Times*, *Real Estate Weekly*, and *Epoch Times* once at least fifteen (15) days prior to the Public Auction.

D.  The Trustee conducted a fair and open sale process. The sale process, including the Public Auction, was non-collusive, duly noticed and provided a full, fair and reasonable opportunity for any entity to make an offer to purchase the Real Property, and the process conducted by the Trustee pursuant to the Sale Procedure Order obtained the highest and best value for the Debtor's Real Property.

E.  The Purchaser was selected as the successful bidder for the Debtor's Real Property at the Public Auction.

F.  The Trustee has demonstrated that the sale of the Real Property to the Purchaser for the Purchase Price is a reasonable exercise of the Trustee's business judgment.

G.  The Purchaser is purchasing the Real Property in good faith and is a good faith buyer within the meaning of Bankruptcy Code § 363(m) and is therefore entitled to the full protections of that provision.

H.  The Trustee shall sell the Real Property free and clear of any and all Liens, or adverse claims to title, of whatever kind of nature, because one or more of the standards set forth in Bankruptcy Code § 363(f)(1)-(5) has been satisfied. Those holders of Liens against the Real Property who did not object to the sale of the Real Property are deemed to have consented thereto pursuant to Bankruptcy Code § 363(f)(2), subject to the provisions of this Order and the Sale Procedures Order.

**NOW THEREFORE, IT IS HEREBY ORDERED, ADJUDGED AND DECREED THAT**:

1. Pursuant to Bankruptcy Code §§ 363(b), (f) and (m), the Trustee is authorized to (a) sell the Real Property to the Purchaser for the Purchase Price in accordance with the Memorandum of Sale and the Stalking Horse Agreement; and (b) execute and deliver, perform under, consummate, implement and close fully the Stalking Horse Agreement, together with all additional instruments and documents that may be reasonably necessary, desirable, or appropriate to implement the Stalking Horse Agreement and the sale of the Real Property. The sale of the Real Property pursuant to this Order is herein referred to as the "Sale".

2. In accordance with the Stalking Horse Agreement, at the Closing of the Sale the Purchaser shall (i) deliver to the Trustee, by certified check or bank check made payable to "Gregory M. Messer, Chapter 11 Trustee" or by wire in immediately available federal funds, the aggregate Purchase Price *less* the amount of the Deposit; and (ii) pay any and all New York State, New York City and any other County transfer taxes payable on account of the sale of the Real Property, which tax payment shall also be made by the Purchaser to the Trustee by certified check or bank check made payable to "Gregory M. Messer, Chapter 11 Trustee" or by wire in immediately available federal funds.

3. The Real Property is being sold "**AS IS" "WHERE IS"**, **"WITH ALL FAULTS"**, pursuant to Bankruptcy Code § 363 and without any representations, covenants, guarantees or warranties of any kind or nature, and free and clear of any liens, claims, interests or encumbrances of whatever kind or nature, with any liens, if any, to attach to the proceeds of sale in such order and priority as they existed immediately prior to the actual closing on the Sale of the Real Property, and Sale of the Real Property is subject to, among other things (a) any state of facts that an accurate survey may show; (b) any covenants, restrictions and easements of record; (c) any state of facts a

physical inspection may show; (d) any building or zoning ordinances or other applicable municipal regulations and violations thereof; and (e) environmental conditions; provided however, the Real Property shall be delivered free and clear of any and all Liens and vacant of leases and tenancies.

4. The Trustee shall convey the Real Property to the Stalking Horse Bidder by delivery of a quitclaim or Trustee Deed.

5. The Trustee is hereby directed to pay to the Lender, and satisfy from the proceeds of the Sale, within three (3) business days that the proceeds have cleared the Trustee's account, all sums due to the Lender, on account of both the Lender's pre-petition loans to the Debtor and the Lender's post-petition loans to the Debtor's estate or the Trustee, through and including the date of payment of such loans in such amounts as the Lender shall advise the Trustee in a written payoff letter on or after the date of the Closing of the Sale, and the Trustee's payment to Senior Lienholder shall constitute conclusive approval of the amounts owed to the Senior Lienholder. The Trustee shall make the foregoing payment to the Lender whether or not the Court has determined the Trustee's rights to retain the deposit previously delivered to the Trustee by Yang/Chau. The Trustee shall advise the Lender of the date of the closing of the Sale at least 2 business days prior to the date of such closing.

6. All Liens shall immediately attach to the proceeds of sale of the Real Property in the same priority and extent as they existed on date of the Closing of the Sale; and without limiting the foregoing, the Lender shall have, and hereby has, a first priority lien on all of the proceeds of Sale of the Real Property and on any deposits previously paid to the Trustee by any person, including, without limitation, by Yang/Chau.

7. The Purchaser is solely responsible to pay the Co-Brokers the four (4%) percent Buyer Premium in the amount of $1,092,000. Notwithstanding any prior agreement or orders of

this Court or anything else whatsoever to the contrary, the Trustee and the Lender shall not be required to pay a Buyer's Premium or any other amounts whatsoever to the Co-Brokers.

8. Not later than the close of business on May 14, 2020 the Purchaser shall deliver to the Trustee by certified check or bank check made payable to "Gregory M. Messer, Chapter 11 Trustee" or by wire in immediately available federal funds the Buyer's Premium in sum of $1,092,000.

9. If the Purchaser fails to pay the Buyer's Premium in sum of $1,092,000 by the close of business on May 14, 2020, then (i) the Purchaser shall be deemed to have defaulted under the Memorandum of Sale and the Stalking Horse Agreement, (ii) the Purchaser shall automatically forever forfeit any rights whatsoever to the Deposit, (iii) the Deposit shall automatically be deemed property of the Debtor's estate, and (iv) the Lender shall have a first priority Lien on the Deposit.

10. The Stalking Horse Bidder shall close title to the Real Property no later than June 11, 2020 (which is no more than thirty (30) days after the date of the Public Auction) (the "Closing Date"), **TIME BEING OF THE ESSENCE,** although such Closing Date may be extended by the Trustee, in his sole discretion and after consultation with the Lender, but such extension of the Closing Date shall not be later than thirty (30) days from the original Closing Date—July 11, 2020, **TIME BEING OF THE ESSENCE**.

11. To the extent that the Trustee, in his sole discretion, grants any such extension of the Closing Date, the Purchaser shall provide to the Trustee an additional, non-refundable deposit equal to ten (10%) percent of the Purchase Price in the amount of $2,730,000 (the "Additional Deposit"). The Additional Deposit shall be made by certified check or bank check made payable to "Gregory M. Messer, Chapter 11 Trustee" or by wire in immediately available federal funds.

12. The Stalking Horse Bidder shall pay the Additional Deposit, and any other adjustments, as of the original Closing Date, and failure to do so shall be deemed a default under the terms of the Stalking Horse Agreement and the Sale Terms and shall result in the Stalking Horse Bidder's automatic forfeiture of any rights whatsoever to the Deposit, the Additional Deposit and the Buyer's Premium. The Lender shall have a first priority Lien on any sums paid by the Purchaser.

13. The Purchaser shall be solely responsible for any and all real estate taxes, costs, fees and expenses incurred by the Debtor's estate after the original Closing Date through the adjourned closing date of the Real Property and water and sewage charges will be adjusted as of the original Closing Date. The Purchaser shall also be responsible for any additional interest, fees and other amounts due to the Lender and any other party asserting a Lien against the Real Property from the original Closing Date through the adjourned closing date of the Real Property.

14. At the Trustee's discretion, the closing shall take place virtually, by mail or at the Law Office of Gregory M. Messer, 26 Court Street, Suite 2400, Brooklyn, NY 11242 (the "Closing").

15. At or before the Closing, the Purchaser shall pay any and all costs and expenses in connection with the Closing related to obtaining a survey; fee title or mortgage insurance; title company endorsement, search and escrow charges; environmental, engineering or other inspections; appraisals, reports and other costs of due diligence; and County, State, City, or other real property transfer, deed or documentary tax, or other taxes imposed upon the Sale due in connection with the transfer of the Real Property, including, but not limited to, any transfer tax imposed by New York State and/or the City of New York.

16. The Purchaser shall be responsible for the completion of any ACRIS forms, if required. The Trustee shall not be required to execute any form of title affidavit (but may in its sole and absolute discretion) and all title exceptions customarily omitted from a title policy on account of such title affidavit shall be deemed permitted exceptions.

17. The Purchaser shall be responsible for the preparation of all Closing documents required including, but not limited to, transfer tax forms.

18. Time is of the essence as to the Purchaser's obligation to timely close on the Sale on the Closing Date and the failure of the Purchaser to close for any or no reason whatsoever, including, without limitation, its failure to pay the balance of the Purchase Price on the Closing Date, will result in an immediate forfeiture of the Deposit, any Additional Deposit, and Buyer's Premium and the termination of the right to acquire the Real Property.

19. The Purchaser has acknowledged and agreed that: (i) Kensington Vanguard National Land Services (the "Title Company") is ready to issue an owner's title insurance property for the Real Property; (ii) the Title Company has examined title and issued a Certificate of Title for File No. 530843-S-NY-MR-RA last updated on dated March 9, 2019 (hereinafter either the "Certificate of Title" or the "Title Report"); (iii) he has examined the Title Report and there are no title issues preventing the Stalking Horse Bidder from Closing on the sale of the Real Property; and (iv) the Purchaser hereby waives, any title issues in connection with the sale of the Real Property; provided however, that the Purchaser may elect to use his own title company provided the Purchaser is bound by the provisions of this Order and there will not be any delay in the Closing and such election, or any issues raised by Purchaser's title company, shall not in any way be used as an excuse not to close or to delay the closing beyond the Closing Date. The Purchaser further acknowledges and agrees that he will cover any and all costs, and reimburse

the estate for any costs and expenses incurred, in connection with the use of a different title company, different title report and any issues arising related to the same.

20. If the Trustee is unable to deliver any of the Real Property in accordance with this Order and the Stalking Horse Agreement for any reason whatsoever, the Trustee's and the Co-Brokers' only obligation will be to refund the Deposit, the Additional Deposit, if any, and Buyer's Premium, without interest, to the Stalking Horse Bidder and upon such refund, the Stalking Horse Bidder shall have no claim or recourse against the Co-Brokers, the Trustee, his retained professionals and/or the estate and shall have no further rights under this Order, the Stalking Horse Agreement or Memorandum of Sale.

21. The Stalking Horse Bidder has acted without collusion and is a good faith purchaser of the Real Property and is hereby granted and is entitled to the protections provided to a good faith purchaser under Bankruptcy Code § 363(m). Pursuant to Bankruptcy Code § 363(m), if any or all of the provisions of this Order are hereafter reversed, modified or vacated by a subsequent order of the Bankruptcy Court or any other court, such reversal, modification, or vacatur shall not affect the validity and enforceability of any sale, transfer or assignment or obligation or right granted pursuant to the terms of this Order (unless stayed pending appeal), and notwithstanding any reversal, modification or vacatur, any sale, transfer, or assignment shall be governed in all respects by the original provisions of this Order.

22. This Court shall retain jurisdiction to: (i) interpret and construe and enforce the provisions of this Order and any ancillary documents in connection therewith; (ii) hear and determine any disputes arising under or related to the foregoing; and (iii) enforce the provision of this Order.

23.     Notwithstanding Bankruptcy Rule 6004(h), this Order shall not be stayed for fourteen (14) days after the entry hereof and shall be effective and enforceable immediately upon entry hereof.



**Dated: May 19, 2020**
      **Brooklyn, New York**

_____
**Nancy Hershey Lord**
**United States Bankruptcy Judge**