**LaMONICA HERBST & MANISCALCO, LLP**
*Counsel to Gregory Messer, as Chapter 11 Trustee*
3305 Jerusalem Avenue
Wantagh, New York 11793
Telephone: 516.826.6500
Gary F. Herbst, Esq.
Jacqulyn S. Loftin, Esq.

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------------x
In re:                                                                    Chapter 11

41-23 HAIGHT STREET REALTY INC.,              Case No.: 19-43441 (NHL)

                Debtor.
---------------------------------------------------------------x

**MOTION OF THE CHAPTER 11 TRUSTEE SEEKING ENTRY OF AN ORDER, PURSUANT TO 11 U.S.C. §§ 105 (a) AND 541, AUTHORIZING THE RETENTION OF THE PARTIAL DEPOSIT AS LIQUIDATED DAMAGES FROM THE STALKING HORSE BIDDERS' DEFAULT OF THE STALKING HORSE AGREEMENT AND THE <u>COURT ORDER APPROVING THE STALKING HORSE AGREEMENT</u>**

TO THE HONORABLE NANCY HERSHEY LORD
UNITED STATES BANKUPTCY JUDGE

      Gregory Messer, solely in his capacity as the Chapter 11 Trustee (the "<u>Trustee</u>") of the 41-23 Haight Street Realty, Inc. (the Debtor"), by his counsel, LaMonica Herbst & Maniscalco, LLP, submits this motion (the "<u>Motion</u>") seeking the entry of an Order, pursuant to 11 U.S.C. §§ 105 and 541 (the "<u>Bankruptcy Code</u>") authorizing the retention by the estate of the deposit in the amount of $2,580,000 (the "<u>Partial Deposit</u>"), as liquidated damages, paid to the Trustee by Tu Kang (partner of Wing Fung Chau a/k/a Andy Chau) and Selena Chau (daughter of Wing Fung Chau a/k/a Andy Chau), as the stalking horse bidders (the "<u>Stalking Horse Bidders</u>"), for their default under Stalking Horse Order (defined below) of this Court, the stalking horse agreement by and between the Trustee and the Stalking Horse Bidders dated March 20, 2020 (the "<u>Stalking Horse Agreement</u>") and the Court approved terms of sale (the "Sale Terms") in connection with the sale of the Debtor's real properties in Queens County identified as Block 5063, Lots 44, 45,

1

46, 47, 48, 49, 50, 51, 52, 53 and 55 Haight Street, Flushing, New York 11355 (collectively, the "Real Property") for the purchase price of $31,000,000, *plus* the Buyer's Premium and payment of any and all transfer taxes owed to New York State and New York City (collectively, the "Purchase Price") and for related relief, and respectfully states as follows:

## PRELIMINARY STATEMENT

This Motion represents an important step in the Trustee moving forward with a new sale of the Real Property. As the Court may recall, the Stalking Horse Bidders entered into the Stalking Horse Agreement whereby, among other things, they agreed to purchase the Real Property for a Purchase Price of $31,000,000, *plus* the 4% Buyer's Premium and payment of the transfer taxes in connection with the sale. The Stalking Horse Agreement also required the Stalking Horse Bidders to give a deposit $3,100,000 (the "Deposit") upon execution of the agreement. The Trustee filed a motion requesting a hearing on shortened notice seeking approval Stalking Horse Agreement in advance of the virtual public auction for higher or better offers. The Stalking Horse Bidders had not tendered the full Deposit at the time of the hearing on approval of the Stalking Horse Agreement, but allowed the Stalking Horse Bidders to pay the balance of the Deposit after the hearing, as set forth at the hearing and in the Stalking Horse Order (defined below).

Upon entry of the Stalking Horse Order, the Stalking Horse Bidders failed to tender the remaining balance of the Deposit. Indeed, not only did they fail to tender the balance of the Deposit, the Stalking Horse Bidders filed a motion with this Court requesting approval to withdraw the stalking horse bid. In their affidavits, both Stalking Horse Bidders conceded that they could not pay the remaining balance of the Deposit or Purchase Price, and therefore defaulted under the terms of the Stalking Hose Agreement and the Sale Terms. As a result, the Stalking Horse Order

authorizes the Trustee, on behalf of the estate, to retain all the funds paid by the Stalking Horse Bidders to the Trustee on account of the sale of the Real Property.

It is unequivocal that the Stalking Horse Order and the Sale Terms authorize the Trustee to retain the Partial Deposit in the event of a default by the Stalking Horse Bidders. Further, it is unequivocal that their inability to pay the Deposit and the Purchase Price and close on the sale of the Real Property is a default that forfeits the Partial Deposit.

It is extremely important for the administration of this estate that this issue be decided by the Court as soon as possible, so that the Trustee can consider other offers from a number of interested buyers to purchase the Real Property. The Trustee would be greatly aided in both facilitating, and evaluating, potential sales if it had certainty as to its rights to the Deposit so that, among other things, it could (i) pay transfer taxes and any broker fees in connection with a sale and (ii) evaluate the potential available funds for creditors after payment of transaction costs and the secured debt.

Indeed, the estate is incurring a substantial amount of expenses that need to be paid in the upcoming month, including, but not limited to, that New York City taxes of several hundred thousand dollars, which are due and owing July 1, 2020 and other operational expenses such as water charges, electric bills, insurance and the costs of maintaining the Real Property. Moreover, the post-petition financing loan with the lender matures on July 31, 2020 and there is a need to pay part of the deposit to the secured lender.

Based on this and the foregoing, the Trustee respectfully requests the Court enter an Order authorizing the Trustee to retain the Partial Deposit as liquidated damages.

**JURISDICTION AND VENUE**

1.      This Court has jurisdiction to consider this Motion pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

2.      Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

3.      The statutory predicates for the relief sought herein include Bankruptcy Code §§ 105 and 541 and Rule 2002 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

**RELEVANT FACTUAL AND PROCEDURAL BACKGROUND**

**A.    The Involuntary Filing and the Procedural Background**

4.      On June 4, 2019 ("Petition Date"), an involuntary petition pursuant to Chapter 11 of the Bankruptcy Code was filed in the United States Bankruptcy Court for the Eastern District of New York ("Court") against the Debtor by petitioning creditors, Wen Mei Wang, Xian Kang Zhang, Yu Qing Wang, Matthew Krepil, T.8.J. LLC and LDWS LLC. See Dkt. No. 1.

5.      On June 30, 2019, a motion to dismiss this case was filed on behalf of the Debtor. See Dkt. No. 6.

6.      On July 22, 2019, the Lender filed a motion to appoint a Chapter 11 Trustee. See Dkt. No. 7.

7.      On August 8, 2019, the Court entered an Order for Relief and Order to File Schedules and Other Documents. See Dkt. No. 16.

8.      On August 12, 2019, the Court entered an Order Granting Motion for Appointment of Chapter 11 Trustee. See Dkt. No. 20. By Notice of Appointment dated August 12, 2019, Gregory Messer was appointed as Chapter 11 Trustee of the Debtor's estate. See Dkt. No. 22. By Order

dated August 12, 2019, the Court approved the appointment of Gregory Messer as Chapter 11 Trustee of the Debtor's estate. See Dkt. No. 21.

9. In an Order entered on December 12, 2019, the Court approved the retention of Maltz Auctions, Inc. d/b/a Maltz Auctions and Rosewood Realty Group as co-real estate brokers (the "Co-Brokers") to sell the Debtor's Real Property. See Dkt. No. 105.

## B. The Sale of the Real Property and Stalking Horse Agreement

10. Pursuant to an Order entered on March 30, 2020 [Dkt. No. 126], the Court, among other things, (i) authorized the Trustee to proceed with the virtual public auction for the sale of the Real Property; (ii) the Terms and Conditions of Sale (the "Sale Terms"); and (iii) the Notice of Sale (the "Sale Procedure Order"). The Court approved Sale Terms and Notice of Sale were annexed to the Sale Procedure Order. See Dkt. No. 126-1.

11. Upon entry of the Sale Procedure Ordre, the Trustee, with the assistance of the Co-Brokers, marketed the Real Property extensively for more than three months to a variety of interested parties in an effort to obtain the highest and best offer. These extensive efforts resulted in several open houses and private tours conducted by both Co-Brokers. As a result of these efforts, the Stalking Horse Bidders made an offer of $31,000,000 *plus* the Buyer's Premium and payment of the transfer tax for the purchase of the Real Property, subject to higher or better offers.

12. The Trustee and the Stalking Horse Bidders memorialized the terms of the offer in the Stalking Horse Agreement dated March 20, 2020, which incorporated the Court approved Sale Terms. A copy of the Order Approving the Stalking Horse Agreement, with the Stalking Horse Agreement (and the Sale Terms) as Exhibit "A", is annexed hereto as **Exhibit "1".** Under the Stalking Horse Agreement, the Stalking Horse Bidders were also required to give a 10% deposit in the amount of $3,100,000 (the "Deposit"). See Exhibit "1".

5

13. The public auction to accept higher or better offers was scheduled to take place on April 23, 2020 at 11:00 a.m.

14. In advance of the public auction, the Trustee filed a motion requesting a hearing on shortened notice seeking approval of the Stalking Horse Agreement. At the time the motion was filed, the Trustee had only received $1,900,000 of the $3,100,000 Deposit. The Stalking Horse Bidders advised the Trustee that they were having a difficult time getting bank checks and/or wire the remaining balance of the Deposit given the global crisis and the New York State mandated quarantine. Given the unprecedented circumstances, the Trustee agreed to give the Staking Horse Bidders some additional time to procure the remaining balance of $1,200,000 of the Deposit.

15. More importantly, the Trustee, through counsel, advised the Stalking Horse Bidders, through counsel, that failure to pay the remaining balance of the Deposit would constitute a default and that any funds paid on account of the Deposit were property of the Debtor's estate, and would not be returned in the event of a default.

16. After notice and telephonic hearing (in which the Stalking Horse Bidder's counsel was present), the Court approved the Stalking Horse Agreement. Given the status of the Deposit, however, the Order approving the Stalking Horse Agreement entered April 9, 2020 (the "Stalking Horse Order") [dkt. no. 135] had the following provisions:

> 7. Pursuant to the Stalking Horse Agreement, the Stalking Horse Bidder is required to pay to the Trustee a Deposit in the amount of $3,100,000 representing 10% of the Purchase Price. ***In the event that any of the funds paid (or any check delivered) to the Trustee on account of the Deposit do not clear the Trustee's bank account upon presentment thereof, then the Stalking Horse Bidder is hereby automatically deemed to have defaulted under the terms of the Stalking Horse Agreement without any notice or opportunity to cure such default (the "Default")***.
>
> 8. ~~If~~ ***In (NHL)*** the event of any Default, the Stalking Horse Bidder (and any person(s) that delivered ***any funds on behalf or for the benefit of the Stalking Horse Bidder) is hereby automatically deemed to forever waive any and all rights***

6

*in and to the funds and or the Deposit, which were paid to the Trustee on account of the Deposit that have already cleared the Trustee's account and all these funds shall be deemed property of the Debtor's estate* and 41-31 Haight Street Lender LLC shall have a first priority lien in such funds.

See Exhibit "1", paragraphs 7 and 8 [*emphasis added*].

17. The Stalking Horse Bidders had notice of this Order and never objected to the proposed revisions prior to its entry. The Stalking Horse Order is a final non-appealable Order.

### C. The Default by the Stalking Horse Bidders

18. After the hearing, the Trustee made numerous attempts to collect the remaining $1,210,000 of the Deposit required to be paid under the Stalking Horse Agreement and the Stalking Horse Order.

19. After the hearing, the Stalking Horse Bidders made additional payments of $680,000 (all of which cleared the Trustee's account) for the aggregate Partial Deposit amount of $2,580,000.

20. The Stalking Horse Bidders gave the Trustee additional payments, each in the amount of $340,000, $170,000 and $700,000, all of which did not clear the Trustee's account— the last check failing to clear on April 20, 2020. Thus, prompting a default by the Stalking Horse Bidders under the Stalking Horse Agreement.

21. Then, on April 21, 2020 (two days before the public auction), the Stalking Horse Bidders submitted an affidavit to the Court requesting a hearing on shortened notice and seeking an Order rescinding and the withdrawing the Stalking Horse Agreement. In the affidavit submitted by Selene Chau (daughter of Wing Fung Chau a/k/a Andy Chau), she stated that due to the pandemic she was unable to collect rents on many of her investment properties. And, as a result, she was unable to gather the funds necessary for the remaining balance of the Deposit and the

Purchase Price and requested that the she be authorized to withdraw as the Stalking Horse Bid. A copy of the Affidavit of Selene Chau is annexed hereto as **Exhibit "2"**.

22. Similarly, Tu Kang Yang (a purported partner of Wing Fung Chau a/k/a Andy Chau) submitted an affidavit echoing the same position as Ms. Chau with an acknowledgment of the inability to pay the remaining balance of the Deposit and the Purchase Price and requesting a return of the Partial Deposit paid to the Trustee. A copy of the Affidavit of Tu Kang Yang is annexed hereto as **Exhibit "3"**.

23. Both Stalking Horse Bidders acknowledge that they could not then fulfill their requirements under the Stalking Horse Agreement and admitted an inability to pay the 10% Deposit and the Purchase Price.

24. The Court conducted an emergency telephonic hearing on the Stalking Horse Bidders' request, and after oral argument, the Court denied the relief sought by the parties seeking an emergency hearing.

25. No other party registered as a bidder for the April 23, 2020 virtual public auction. Accordingly, the Trustee moved forward with a second sale of the Real Property.

26. The Stalking Horse Bidders defaulted under the terms of the Stalking Horse Agreement when they failed to tender the Deposit of $3,100,000. At that point, the Stalking Horse Order is clear that in the event of a Default "any funds on behalf or for the benefit of the Stalking Horse Bidder is hereby automatically deemed to forever waive any and all rights in and to the funds and or the Deposit, which were paid to the Trustee on account of the Deposit that have already cleared the Trustee's account and all these funds shall be deemed property of the Debtor's estate". See Exhibit "1".

## BASIS FOR RELIEF REQUESTED

27. By this Motion, the Trustee respectfully seeks the entry of an Order authorizing the Trustee, on behalf of the estate, to retain the Partial Deposit of $2,580,000, as liquidated damages, based upon the Stalking Horse Bidders default of the terms of the Stalking Horse Agreement, the Sale Terms and Stalking Horse Order.

28. The Stalking Horse Agreement, the Sale Terms and the Stalking Horse Order both required the Stalking Horse Bidders to make a 10% Deposit of $3,100,000, and failure to do so, resulted in a default. Further, the language in the Stalking Horse Order is unequivocal and clear that in the event of a default, the Trustee is entitled to retain any funds, which were paid to the Trustee on account of the Deposit.

29. The Bankruptcy Code and relevant case law supports the Trustee's position to retain the Partial Deposit. Specifically, Bankruptcy Code § 105(a) provides:

> (a) The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title. No provision of this title providing for the raising of an issue by a party in interest shall be construed to preclude the court from, sua sponte, taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process.

11 U.S.C. § 105(a).

30. In a case with a virtually identical fact pattern, *Yama Raj v. R. Kenneth Banard and Bethpage Credit Federal Union*, (*In re Joe's Friendly Service & Sons, Inc. d/b/a Thatched Cottage at the Bay*), 15-cv-000576-ADS (E.D.N.Y. 2015), the District Court confirmed the ruling from the Bankruptcy Court, whereby Judge Grossman ruled in favor of the Trustee allowing him to retain the deposit as liquidate damages in connection with the sale of real property when the successful purchaser failure to comply with the terms and conditions of sale. *See* Id. Indeed, the District

Court noted that the evidence established that the Appellant [Purchaser] "knowingly received, reviewed, and signed the court-approved Terms of Sale, thereby contractually obligating himself to comply with the Terms, for the specific purpose of becoming eligible to participate in the auction. Those Terms of Sale are thus dispositive here." *See* Id. at 14.

31. Similarly, this Court, in *In re Oyster Bay Cove, LTD.*, 161 B. R. 338, 345 (Bankr. E.D.N.Y. 1993) aff'd 196 B.R. 251 (E.D.N.Y. 1996), authorized the trustee to retain the deposit, noting that absent a showing that title was not marketable, there was an obligation to perform under the order of sale. This Court clearly opined that ". . . in order to place a vendor under a contract of sale in default for a claimed failure to provide clear title, the purchaser normally must tender performance himself and then demand good title." *Oyster Bay* at 344 (citing *Willard v. Mercer*, 83 A.D.2d 656, 442 N.Y.S. 2d 200 (3rd Dept. 1981) *See also*, *Matter of Louis L. Lasser & Stanley M. Kahn, Partnership*, 52 B.R. 957, 959 (E.D.N.Y. 1985) (authorizing Trustee to retain contract deposit based on purchaser's failure to perform under the purchase and sale agreement).

32. The circumstances surrounding this sale are simple and straightforward. The Stalking Horse Bidder was obligated to tender a Deposit of 10% of the Purchase Price, and failure to do so was a default. The Stalking Horse Bidder, themselves, admitted to their default for failure to pay the Deposit and the Purchase Price as required the Stalking Horse Agreement when they submitted Affidavits in support of the Request to Withdraw the stalking horse bid. See Exhibits 2 & 3.

33. Further, the Stalking Horse Order expressly states that in the event of a default, to which the Stalking Horse Bidder admitted, the Trustee would be entitled to retain any funds paid by, or on behalf of, the Stalking Horse Bidders and such funds shall be deemed property of the

Debtor's estate. The Stalking Horse Bidders counsel reviewed the Stalking Horse Order before it was submitted to the Court.

34. The Stalking Horse Bidders were parties at the stalking horse hearing, had notice of the Stalking Horse Order, and thus were aware of the consequences if they failed to perform under the terms of the Stalking Horse Agreement. Yet, they still failed to tender the remaining balance of the Deposit and admitted they did not have the funding to pay the Purchase Price and could not close on the sale.

35. The facts and the law are quite clear in the instant case. It is respectfully submitted that the Stalking Horse Bidders defaulted, and as such, the Trustee is entitled to retain the Partial Deposit of $2,580,000 as liquidated damages.

## NOTICE AND NO PRIOR REQUEST

36. All necessary parties were served in accordance with Bankruptcy Rule 2002.

37. No previous request for the relief sought herein has been made by the Trustee to this or any other Court.

**WHEREFORE** the Trustee respectfully requests that the Court grant the relief requested herein and such other and further relief as it deems just and proper.

Dated: June 29, 2020
       Wantagh, New York

**LaMONICA HERBST & MANISCALCO, LLP**
Counsel to Gregory Messer, Chapter 11 Trustee

By: *s/ Jacqulyn S. Loftin*
Gary F. Herbst, Esq.
Jacqulyn S. Loftin, Esq.
3305 Jerusalem Avenue, Suite 201
Wantagh, New York 11793
Telephone: 516.826.6500