**LaMONICA HERBST & MANISCALCO, LLP**
*Counsel to Gregory Messer, as Chapter 11 Trustee*
3305 Jerusalem Avenue
Wantagh, New York 11793
Telephone: 516.826.6500
Gary F. Herbst, Esq.
Jacqulyn S. Loftin, Esq.

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------------x
In re:                                                                           Chapter 11

41-23 HAIGHT STREET REALTY INC.,                        Case No.: 19-43441 (NHL)

                        Debtor.
---------------------------------------------------------------x

### MOTION OF THE CHAPTER 11 TRUSTEE SEEKING ENTRY OF AN ORDER, PURSUANT TO 11 U.S.C. §§ 105 (a) AND 541, AUTHORIZING THE RETENTION OF THE FUNDS AS LIQUIDATED DAMAGES FROM THE PURCHASER'S DEFAULT OF THE STALKING HORSE AGREEMENT AND THE COURT ORDERS APPROVING THE STALKING HORSE AGREEMENT AND CONFIRMING THE SALE TO THE PURCHASER

TO THE HONORABLE NANCY HERSHEY LORD
UNITED STATES BANKUPTCY JUDGE

      Gregory Messer, solely in his capacity as the Chapter 11 Trustee (the "Trustee") of the 41-23 Haight Street Realty Inc. (the "Debtor"), by his counsel, LaMonica Herbst & Maniscalco, LLP, submits this motion (the "Motion") seeking the entry of an Order, pursuant to 11 U.S.C. §§ 105 and 541 (the "Bankruptcy Code") authorizing the retention by the estate of the deposit of $2,730,000 (the "Deposit") and the 4% Buyer's Premium of $1,092,000 for an aggregate amount of $3,822,000 (collectively, the "Funds"), as liquidated damages, paid to the Trustee by Me Yan Ko (mother of Wing Fung Chau a/k/a Andy Chau), as the stalking horse bidder and the successful purchaser (the "Purchaser"), for her default under Stalking Horse Order (defined below), the stalking horse agreement by and between the Trustee and the Purchaser dated April 20, 2020 (the "Stalking Horse Agreement"), the Court approved Sale Terms annexed to the Stalking Horse

1

Agreement and the Sale Confirmation Order (defined below) in connection with the sale of the Debtor's real properties in Queens County identified as Block 5063, Lots 44, 45, 46, 47, 48, 49, 50, 51, 52, 53 and 55 Haight Street, Flushing, New York 11355 (collectively, the "Real Property") for the purchase price of $27,300,000, *plus* the Buyer's Premium and payment of any and all transfer taxes owed to New York State and New York City (collectively, the "Purchase Price") and for related relief, and respectfully states as follows:

## PRELIMINARY STATEMENT

This Motion represents an important step in the Trustee moving forward with a new sale of the Real Property. The Purchaser entered into the Stalking Horse Agreement whereby, among other things, she agreed to purchase the Real Property for a Purchase Price of $27,300,000, *plus* the 4% Buyer's Premium of $1,092,000 and payment of the transfer taxes in connection with the sale. The Stalking Horse Agreement also required the Purchaser to give a Deposit $2,730,000, to which the Purchaser complied. In advance of the virtual public auction, the Court approved the Stalking Horse Agreement. At the virtual public auction, the Purchaser was the only registered bidder, and thus was the successful purchaser of the Real Property. Two days after the auction, the parties attended the hearing confirming the sale of the Real Property, which the Court approved. After the entry of the Sale Confirmation Order (defined below), the Purchaser paid the 4% Buyer's Premium and the parties moved forward with the closing.

Two days prior to the closing, the Purchaser advised the Trustee of her inability to close on the sale and requested a 30-day extension. The Trustee consented to the short extension, provided that the Purchaser provide an Additional Deposit of 10% of the Purchase Price in the amount of $2,730,000 by June 10, 2020 and sign the Acknowledgment. The Stalking Horse

Agreement, the Sale Terms and the Sale Confirmation required this Additional Deposit be paid if the Trustee was going to agree to the extension.

Importantly, the Sale Confirmation Order and the Acknowledgement expressly stated that failure to pay the Additional Deposit would result of a forfeiture of all monies paid, including the Funds, paid to the Trustee on account of the purchase of the Real Property. The Purchaser signed the Acknowledgement but failed to pay the Additional Deposit. Accordingly, the extension was not granted and the Purchaser was in default. The Purchaser defaulted under the terms of the Stalking Horse Agreement, the Sale Terms, the Sale Confirmation Order and the Acknowledgment executed by the Purchaser. As a result of this default, the Trustee is authorized the retain the Funds of $3,822,000 for the estate.

It is unequivocal that the Sale Confirmation Order and the Acknowledgment authorize the Trustee to retain the Funds in the event of a default by the Purchaser. Further, it is unequivocal that the Purchaser's inability to pay the Additional Deposit and/or close on the sale of the Real Property is a default that forfeits the Funds.

It is extremely important for the administration of this estate that this issue be decided by the Court as soon as possible, so that the Trustee can consider other offers from a number of interested buyers to purchase the Real Property. The Trustee would be greatly aided in both facilitating, and evaluating, potential sales if it had certainty as to its rights to the Funds so that, among other things, it could (i) pay transfer taxes and any broker fees in connection with a sale; and (ii) evaluate the potential available funds for creditors after payment of transaction costs and the secured debt.

Indeed, the estate is incurring a substantial amount of expenses that need to be paid in the upcoming month, including, but not limited to, that New York City taxes of several hundred

thousand dollars, which are due and owing July 1, 2020 and other operational expenses such as water charges, electric bills, insurance and the costs of maintaining the Real Property. Moreover, the post-petition financing loan with the lender matures on July 31, 2020 and there is a need to pay part of the deposit to the secured lender.

Based on this and the foregoing, the Trustee respectfully requests the Court enter an Order authorizing the Trustee to retain the Funds as liquidated damages.

## JURISDICTION AND VENUE

1. This Court has jurisdiction to consider this Motion pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

2. Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

3. The statutory predicates for the relief sought herein include Bankruptcy Code §§ 105 and 541 and Rule 2002 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

## RELEVANT FACTUAL AND PROCEDURAL BACKGROUND

### A. The Involuntary Filing and the Procedural Background

4. On June 4, 2019 ("Petition Date"), an involuntary petition pursuant to Chapter 11 of the Bankruptcy Code was filed in the United States Bankruptcy Court for the Eastern District of New York ("Court") against the Debtor by petitioning creditors, Wen Mei Wang, Xian Kang Zhang, Yu Qing Wang, Matthew Krepil, T.8.J. LLC and LDWS LLC. See Dkt. No. 1.

5. On June 30, 2019, a motion to dismiss this case was filed on behalf of the Debtor. See Dkt. No. 6.

6. On July 22, 2019, the Lender filed a motion to appoint a Chapter 11 Trustee. See Dkt. No. 7.

7. On August 8, 2019, the Court entered an Order for Relief and Order to File Schedules and Other Documents. See Dkt. No. 16.

8. On August 12, 2019, the Court entered an Order Granting Motion for Appointment of Chapter 11 Trustee. See Dkt. No. 20. By Notice of Appointment dated August 12, 2019, Gregory Messer was appointed as Chapter 11 Trustee of the Debtor's estate. See Dkt. No. 22. By Order dated August 12, 2019, the Court approved the appointment of Gregory Messer as Chapter 11 Trustee of the Debtor's estate. See Dkt. No. 21.

9. In an Order entered on December 12, 2019, the Court approved the retention of Maltz Auctions, Inc. d/b/a Maltz Auctions and Rosewood Realty Group as co-real estate brokers (the "Co-Brokers") to sell the Debtor's Real Property. See Dkt. No. 105.

**B.    The Sale of the Real Property and Stalking Horse Agreement**

10. Pursuant to an Order entered on March 30, 2020 [Dkt. No. 126], the Court, among other things, (i) authorized the Trustee to proceed with the virtual public auction for the sale of the Real Property; (ii) the Terms and Conditions of Sale (the "Sale Terms"); and (iii) the Notice of Sale (the "Sale Procedure Order"). The Court approved Sale Terms and Notice of Sale were annexed to the Sale Procedure Order. See Dkt. No. 126-1.

11. Upon entry of the Sale Procedure Order, the Trustee, with the assistance of the Co-Brokers, marketed the Real Property extensively for more than three months to a variety of interested parties in an effort to obtain the highest and best offer. These extensive efforts resulted in several open houses and private tours conducted by both Co-Brokers.

12. The Trustee had previously entered into a stalking horse agreement with Tu Kang (partner of Wing Fung Chau a/k/a Andy Chau) and Selena Chau (daughter of Wing Fung Chau a/k/a Andy Chau) (collectively, the "Initial Offerors") for $31,000,000 with an initial deposit to be

5

paid of $3,100,000. In the Motion to approve the initial agreement, the Trustee explained that the Initial Offerors had only partially paid the deposit, which had cleared the Trustee's account with a commitment from the Initial Offerors to pay the remaining balance immediately following the hearing seeking approval of the agreement with the Initial Offerors.

13. Pursuant to an Order entered on April 9, 2020 (the "April 9th Order") [Dkt. No. 135], the Court approved, among other things, that agreement with the Initial Offerors. The April 9th Order also provided that "[i]n the event that any of the funds paid (or any check delivered) to the Trustee on account of the Deposit do not clear the Trustee's bank account upon presentment thereof, then the Stalking Horse Bidder [Initial Offerors] is hereby automatically deemed to have defaulted under the terms of the Stalking Horse Agreement without any notice or opportunity to cure such default."

14. After the entry of the Order, the Initial Offerors defaulted under the terms of the April 9th Order, the initial stalking horse agreement and the Sale Terms for their failure to pay the remaining balance of the deposit and the purchase price of $31,000,000. As a result, the Trustee declared the default of the Initial Offerors and retained the funds paid to the estate.

15. After the default, the Trustee began remarketing the Real Property for sale and received an offer from the Purchaser for the purchase price of $27,300,000 for the sale of the Real Property.

16. The Trustee and the Purchaser memorialized the terms of the offer in the Stalking Horse Agreement dated April 20, 2020, which incorporated the Court approved Sale Terms. A copy of the Order Approving the Stalking Horse Agreement, with the Stalking Horse Agreement (and the Sale Terms) as Exhibit "A", is annexed hereto as **Exhibit "1".** Under the Stalking Horse Agreement, the Purchaser was also required to give a 10% Deposit of $2,730,000. See Exhibit "1".

17. Upon executed of the Stalking Horse Agreement, the Purchaser paid the Trustee a Deposit of $2,730,000, *plus* an additional $50,000 for an aggregate amount of $2,780,000.

18. The public auction to accept higher or better offers was scheduled to take place on May 12, 2020 at 11:00 a.m.

19. In advance of the public auction, on April 29, 2020, the Trustee filed a motion requesting a hearing on shortened notice seeking approval of the Stalking Horse Agreement, which the Court granted. The Initial Offerors filed an objection to the motion seeking approval of the Stalking Horse Agreement, which was eventually overruled.

20. After notice and hearing, the Court approved, among other things, the Stalking Horse Agreement with the Purchaser in an Order entered on May 8, 2020 (the "Stalking Horse Order") [Dkt. No. 154].

21. There were no other registered bidders at the virtual public auction, and as a result the Purchaser was the successful purchaser of the Real Property with a Purchase Price of $2,730,000, *plus* Buyer's Premium and any and all transfer tax.

22. On May 13, 2020 [Dkt. No. 156], the Trustee filed an Affirmation of the Results of the Public Auction with the Court in preparation for the hearing seeking confirmation the sale of the Real Property to the Purchaser.

23. On May 14, 2020, the Court conducted a hearing to consider the sale results, and on May 19, 2020, the Court entered the Order Confirming the Sale of the Real Property to the Purchaser (the "Sale Confirmation Order") [Dkt. No. 158]. A copy of the Sale Confirmation Order is annexed as **Exhibit "2"**.

24. The Sale Confirmation Order directed the parties to close on or before June 11, 2020 with **TIME BEING OF THE ESSENCE**. The Sale Confirmation Order (as did the Sale Terms) also provided for the following:

> "[t]o the extent that the Trustee, in his sole discretion, grants any such extension of the Closing Date, the Purchaser shall provide to the Trustee an additional, non-refundable deposit equal to ten (10%) percent of the Purchase Price in the amount of $2,730,000 (the "Additional Deposit"). The Additional Deposit shall be made by certified check or bank check made payable to "Gregory M. Messer, Chapter 11 Trustee" or by wire in immediately available federal funds."
>
> The Stalking Horse Bidder [the Purchaser] shall pay the Additional Deposit, and any other adjustments, as of the original Closing Date, and *failure to do so shall be deemed a default under the terms of the Stalking Horse Agreement and the Sale Terms and shall result in the Stalking Horse Bidder's automatic forfeiture of any rights whatsoever to the Deposit, the Additional Deposit and the Buyer's Premium*. The Lender shall have a first priority Lien on any sums paid by the Purchaser.

See Exhibit 2 [*emphasis added*].

### C. The Default by the Purchaser

25. After the entry of the Sale Confirmation, the Trustee, with the assistance of his retained professionals, began preparations for the closing on the sale of the Real Property. In accordance with the Sale Terms and the Sale Confirmation Order, the Purchaser was obligated to close on the sale of the Real Property within thirty (30) days of the public auction—no later than June 11, 2020 at 11:00 a.m. (the "Closing Date") with **TIME BEING OF THE ESSENCE**. The closing was to take place virtually, via zoom, and the instructions to participate were sent to the Purchaser, through counsel.

26. Also, within forty-eight (48) hours of the public auction, the Purchaser was required to pay to the Trustee the 4% Buyer's Premium of $1,092,000. The Purchaser ultimately complied with the Sale Terms and the Sale Confirmation Order and wired the necessary funds for the Buyer's

Premium. As a result, the Trustee was holding Funds in the amount of $3,822,000 in connection with the sale of the Real Property to the Purchaser.

27. On or about June 9, 2020 (two days before the Closing Date), the Purchaser, through counsel, advised that she was not prepared to close on the sale because she did not have the necessary funding and requested a 30-day extension, which was permitted solely in the discretion of the Trustee under the terms of the Sale Terms and the Sale Confirmation Hearing.

28. Accordingly, the Trustee, through counsel, advised that he would consent to the extension, provided the Purchaser: (i) executed the acknowledgement of terms of the requested extension (the "Acknowledgement"); **and** (ii) agreed to, and deliver to, the Trustee an Additional Deposit of $2,730,000, which was to be tendered to the Trustee, via a wire transfer, by June 10, 2020 with the understanding that time was of the essence with regard to the Purchaser's obligation to deliver the Acknowledgement and the Additional Deposit to the Trustee on such date.

29. On June 10, 2020, the Purchaser (and her counsel) executed the Acknowledgement and sent a copy to the Trustee. An executed copy of the Acknowledgement is annexed hereto as **Exhibit "3"**. The Purchaser failed, however, to remit the Additional Deposit to the Trustee by the close of business on June 10, 2020, as required by the Acknowledgment.

30. On the morning of June 11, 2020 (prior to the scheduled closing time of 11:00 a.m.), the Trustee confirmed that he had not received the Additional Deposit. As a result, the Purchaser was in default and agreed to forfeit the Funds paid. The Purchaser did not close on the sale as required.

31. On June 11, 2020 the Trustee and his counsel noted the Purchaser's failure to provide the Additional Deposit as required for the 30-day extension under the Acknowledgment. See Exhibit "3".

9

32. Equally as important, the Acknowledgement required that the Purchaser acknowledge, and agree to, among other thing, that:

> If for any reason, or no reason at all, I, as Purchaser, fails or refuses to comply in all respects with (i) the terms and conditions of this agreement; (ii) the terms and conditions of the Sale Confirmation Order; (iii) the Stalking Horse Agreement; or (iv) the Terms and Conditions of Sale then, in either of such events, an event of default by me, as Purchaser, shall exist and as a result thereof and I shall forfeit its right to, and shall not be entitled to, purchase the Real Property from the Trustee; and I shall forfeit all rights in and to acquiring the Real Property from Trustee and ***shall forfeit all sums paid to the Trustee including without limitation the Deposit (defined herein), the Buyer's Premium (defined herein) and the Additional Deposit***;

See Exhibit "3" [*emphasis added*].

33. It is indisputable that the Purchaser was in default for her failure to pay the Additional Deposit, and under the terms of the Sale Confirmation Order, and her own Acknowledgment, the Purchaser forfeited her right to the Funds paid to the Trustee, on behalf of the estate, on account of the purchase of the Real Property.

## BASIS FOR RELIEF REQUESTED

34. By this Motion, the Trustee respectfully seeks the entry of an Order authorizing the Trustee, on behalf of the estate, to retain the Funds in the amount of $3,822,000 as liquidated damages, based upon the Purchaser's default of the terms of the Stalking Horse Agreement, the Sale Terms, and the Stalking Horse and Sale Confirmation Orders.

35. The Bankruptcy Code and relevant case law supports the Trustee's position to retain the Partial Deposit. Specifically, Bankruptcy Code § 105(a) provides:

> (a) The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title. No provision of this title providing for the raising of an issue by a party in interest shall be construed to preclude the court from, sua sponte, taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process.

11 U.S.C. § 105(a).

36. In a case with a virtually identical fact pattern, *Yama Raj v. R. Kenneth Banard and Bethpage Credit Federal Union*, (*In re Joe's Friendly Service & Sons, Inc. d/b/a Thatched Cottage at the Bay*), 15-cv-000576-ADS (E.D.N.Y. 2015), the District Court confirmed the ruling from the Bankruptcy Court, whereby Judge Grossman ruled in favor of the Trustee allowing him to retain the deposit as liquidate damages in connection with the sale of real property when the successful purchaser failure to comply with the terms and conditions of sale. *See* Id. Indeed, the District Court noted that the evidence established that the Appellant [Purchaser] "knowingly received, reviewed, and signed the court-approved Terms of Sale, thereby contractually obligating himself to comply with the Terms, for the specific purpose of becoming eligible to participate in the auction. Those Terms of Sale are thus dispositive here." *See* Id. at 14.

37. Similarly, this Court, in *In re Oyster Bay Cove, LTD.*, 161 B. R. 338, 345 (Bankr. E.D.N.Y. 1993) aff'd 196 B.R. 251 (E.D.N.Y. 1996), authorized the trustee to retain the deposit, noting that absent a showing that title was not marketable, there was an obligation to perform under the order of sale. This Court clearly opined that ". . . in order to place a vendor under a contract of sale in default for a claimed failure to provide clear title, the purchaser normally must tender performance himself and then demand good title." *Oyster Bay* at 344 (citing *Willard v. Mercer*, 83 A.D.2d 656, 442 N.Y.S. 2d 200 (3rd Dept. 1981) *See also*, *Matter of Louis L. Lasser & Stanley M. Kahn, Partnership*, 52 B.R. 957, 959 (E.D.N.Y. 1985) (authorizing Trustee to retain contract deposit based on purchaser's failure to perform under the purchase and sale agreement).

38. The Purchaser was obligated to tender the Additional Deposit of 10% of the Purchase Price, and her failure to do so was a default under the Stalking Horse Agreement (and Sale Terms), the Stalking Horse Order, the Sale Confirmation Order and the Acknowledgment.

39. The Purchaser was on notice as to what constitutes a default and the consequences of such default as it is spelled out in the various documents—the Stalking Horse Agreement/Sale Terms, multiple Court Orders and the Acknowledgment—all of which the Purchaser either signed or had notice.

40. Moreover, the Sale Confirmation and the Acknowledgment expressly state that in the event of a default, the Trustee would be entitled to retain the Funds paid by, or on behalf of, the Purchaser and such funds shall be deemed property of the Debtor's estate.

41. The facts and the law are quite clear in the instant case. It is respectfully submitted that the Purchaser defaulted, and as such, the Trustee is entitled to retain the Funds of $3,822,000 as liquidated damages.

## NOTICE AND NO PRIOR REQUEST

42. All necessary parties were served in accordance with Bankruptcy Rule 2002.

43. Other than the Motion to retain the first stalking horse bidders partial deposit and hold that party in default, no previous request for the relief sought herein has been made by the Trustee to this or any other Court for the relief sought herein.

**WHEREFORE** the Trustee respectfully requests that the Court grant the relief requested herein and such other and further relief as it deems just and proper.

Dated: June 30, 2020
      Wantagh, New York

                          **LaMONICA HERBST & MANISCALCO, LLP**
                          Counsel to Gregory Messer, Chapter 11 Trustee

                By:    *s/ Jacqulyn S. Loftin*
                        Gary F. Herbst, Esq.
                        Jacqulyn S. Loftin, Esq.
                        3305 Jerusalem Avenue, Suite 201
                        Wantagh, New York 11793
                        Telephone: 516.826.6500