**LaMONICA HERBST & MANISCALCO, LLP**
*Counsel to Gregory Messer, as Chapter 11 Trustee*
3305 Jerusalem Avenue
Wantagh, New York 11793
Telephone: 516.826.6500
Gary F. Herbst, Esq.
Jacqulyn S. Loftin, Esq.

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------------x
In re:                                                                                  Chapter 11

41-23 HAIGHT STREET REALTY INC.,                    Case No.: 19-43441 (NHL)

                Debtor.
---------------------------------------------------------------x

# MOTION OF CHAPTER 11 TRUSTEE FOR AN ORDER: (I) APPROVING THE DATE OF THE VIRTUAL PUBLIC AUCTION FOR THE SALE OF THE REAL PROPERTY; (II) APPROVING THE REVISED TERMS AND CONDITIONS OF SALE; (III) APPROVING THE NOTICE OF SALE; AND (IV) SCHEDULE THE SALE <u>CONFIRMATION HEARING</u>

TO THE HONORABLE NANCY HERSHEY LORD,
UNITED STATES BANKRUPTCY JUDGE

      Gregory Messer, solely in his capacity as Chapter 11 Trustee ("Trustee") of the estate of 41-23 Haight Street Realty Inc. (the "Debtor"), by his counsel, LaMonica, Herbst & Maniscalco, LLP, submits this motion ("Motion") seeking entry of an Order ("Order"), pursuant to 11 U.S.C. §§ 105 and 363 (the "Bankruptcy Code") and Rules 2002 and 6004(h) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"): (i) approving July 31, 2020[1] as the date of the virtual public auction sale[2] (the "Sale") of the Debtor's real properties in Queens County identified as Block 5063, Lots 44, 45, 46, 47, 48, 49, 50, 51, 52, 53 and 55 Haight Street, Flushing, New

---

[1] The Trustee may change the date of the Sale of the Real Property depending on the hearing date to consider the relief sought in this Motion.

[2] The Trustee reserves the right to permit in-person bidding at the public auction.

York 11355 (collectively, the "Real Property"); (ii) approving the revised Terms and Conditions of Sale (the "Sale Terms")[3] and the revised Notice of Sale, a copy of each are annexed as **Exhibit "A" and "B"**, respectively; (iii) scheduling a hearing to confirm the results of the Sale; and (iv) granting such other, further and different relief as this Court deems just and proper, and respectfully states as follows:

## PRELIMINARY STATEMENT

In an Order entered on March 30, 2020, the Court authorized the Trustee to proceed with the sale of the Debtor's Real Property free and clear of all liens, claims and encumbrances (collectively, the "Liens").  As the Court is aware, there have been two stalking horse offers, both of whom have defaulted under the terms of the respective stalking horse agreement and related Orders. The Trustee has also obtained injunctive relief against numerous individuals, who have purportedly interfered with the administration of the Debtor's estate, and more specifically the sale of the Real Property.  The Trustee is now prepared to go forward with a new virtual public auction pursuant to the annexed revised Sale Terms. See Exhibit "A".

Therefore, the Trustee seeks the Court's approval of the new proposed date of July 31, 2020 for the Sale of the Real Property, along with the revised Sale Terms and Notice of Sale.

The Trustee must proceed with the Sale of the Real Property as the estate is incurring a substantial amount of expenses, which need to be paid, including, but not limited to, that New York City taxes of several hundred thousand dollars, which became due and owing on July 1, 2020 and other operational expenses such as water charges, electric bills, insurance and the costs of maintaining the Real Property. Moreover, the post-petition financing loan with the lender matures

---

[3] Capitalized terms not otherwise defined herein shall have the definition ascribed to them in the Sale Terms.

on July 31, 2020. Therefore, the Trustee needs to move forward rapidly with the Sale, as well as the hearing on the motions filed by the Trustee to have both deposits from the defaulted buyers be deemed property of the estate.

The Trustee submits that scheduling a new public auction is a critical step in the administration of this estate. For these and the reasons set forth below, the Trustee respectfully requests that the Court approve the relief sought herein.

## JURISDICTION AND VENUE

1. This Court has jurisdiction to consider this Motion pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

2. Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

3. The statutory predicates for the relief sought in this Motion include Bankruptcy Code §§ 105 and 363 and Bankruptcy Rules 2002 and 6004(h).

## BACKGROUND

**A.    The Involuntary Filing and the Procedural Background**

4. On June 4, 2019 ("Petition Date"), an involuntary petition pursuant to Chapter 11 of the Bankruptcy Code was filed in the United States Bankruptcy Court for the Eastern District of New York ("Court") against the Debtor by petitioning creditors, Wen Mei Wang, Xian Kang Zhang, Yu Qing Wang, Matthew Krepil, T.8.J. LLC and LDWS LLC. See Dkt. No. 1.

5. On June 30, 2019, a motion to dismiss this case was filed on behalf of the Debtor. See Dkt. No. 6.

6. On July 22, 2019, the Lender filed a motion to appoint a Chapter 11 Trustee. See Dkt. No. 7.

7.      On August 8, 2019, the Court entered an Order for Relief and Order to File Schedules and Other Documents. See Dkt. No. 16.

8.      On August 12, 2019, the Court entered an Order Granting Motion for Appointment of Chapter 11 Trustee. See Dkt. No. 20. By Notice of Appointment dated August 12, 2019, Gregory Messer was appointed as Chapter 11 Trustee of the Debtor's estate. See Dkt. No. 22. By Order dated August 12, 2019, the Court approved the appointment of Gregory Messer as Chapter 11 Trustee of the Debtor's estate. See Dkt. No. 21.

9.      In an Order entered on December 12, 2019, the Court approved the retention of Maltz Auctions, Inc. d/b/a Maltz Auctions and Rosewood Realty Group as co-real estate brokers (the "Co-Brokers") to sell the Debtor's Real Property.  See Dkt. No. 105.

**B.     Previous Sales of the Real Property**

10.     Pursuant to an Order entered on March 30, 2020 [Dkt. No. 126], the Court, among other things, (i) authorized the Trustee to proceed with the virtual public auction for the sale of the Real Property; (ii) the Terms and Conditions of Sale (the "Original Sale Terms"); and (iii) the Notice of Sale (the "Sale Procedure Order").  The Court approved Sale Terms and Notice of Sale that were annexed to the Sale Procedure Order. See Dkt. No. 126-1.

11.     Upon entry of the Sale Procedure Order, the Trustee, with the assistance of the Co-Brokers, marketed the Real Property extensively for more than three months to a variety of interested parties in an effort to obtain the highest and best offer. These extensive efforts resulted in several open houses and private tours conducted by both Co-Brokers.

12.     The Trustee had previously entered into a stalking horse agreement with Tu Kang Yang (a partner of Wing Fung Chau a/k/a Andy Chau) and Selena Chau (daughter of Wing Fung Chau a/k/a Andy Chau) (collectively, the "Initial Offerors") for $31,000,000 with an initial deposit

to be paid of $3,100,000. In the Motion to approve the initial stalking horse agreement (the "Initial Stalking Horse Agreement"), the Trustee explained that the Initial Offerors had only partially paid the deposit, which had cleared the Trustee's account with a commitment by the Initial Offerors to pay the remaining balance immediately following the hearing seeking approval of the staking horse agreement. Pursuant to an Order entered on April 9, 2020 (the "April 9th Order") [Dkt. No. 135], the Court approved, among other things, the stalking horse agreement with the Initial Offerors.

13.     Upon entry of the April 9th Order, the Initial Offerors defaulted for their failure to procure the 10% deposit as required under the agreement. As a result, the Trustee began remarketing the Real Property for sale and received an offer from Mei Yang Ko (the mother of Wing Fung Chau a/k/a Andy Chau) (the "Second Offeror") for the purchase price of $27,300,000 for the sale of the Real Property.  The Trustee and the Second Offeror memorialized the terms of the offer in the stalking horse agreement dated April 20, 2020 (the "Second Stalking Horse Agreement"), which incorporated the Original Sale Terms.

14.     The public auction to accept higher or better offers was scheduled to take place on May 12, 2020 at 11:00 a.m. In advance of the public auction, on April 29, 2020, the Trustee filed a motion requesting a hearing on shortened notice seeking approval of the Second Stalking Horse Agreement, which the Court granted. In an Order entered on May 8, 2020 [Dkt. No. 154], the Court approved, among other things, the Second Stalking Horse Agreement with the Second Offeror.

15.     There were no other registered bidders at the virtual public auction, and as a result the Second Offeror was the successful purchaser of the Real Property with a purchase price of $2,730,000, *plus* Buyer's Premium and any and all transfer tax. On May 14, 2020, the Court conducted a hearing to consider the sale results, and on May 19, 2020, the Court entered the Order

Confirming the Sale of the Real Property to the Second Offeror (the "Sale Confirmation Order") [Dkt. No. 158].

16.     Upon entry of the Sale Confirmation Order, the parties proceeded with preparations for the closing on the sale. Then, on June 10, 2020 (a day prior to the originally scheduled Closing Date), the Second Offeror advised the Trustee of her inability to close and requested an extension. The Trustee agreed to the extension provided that the Second Offeror executed an acknowledgment and paid an additional deposit of 10% of the purchase price. The Second Offeror failed to provide the additional 10% deposit, and thus defaulted under the terms of the Second Stalking Horse Agreement, the Original Sale Terms and Sale Confirmation Order.

17.     The Trustee recently filed two motions seeking to the retain the deposits paid by the Initial Offerors and the Second Offeror, which are scheduled to be heard on July 14, 2020.

### C.     The Trustee's Injunctive Relief and New Public Auction Sale

18.     On June 9, 2020, Ming Yun Yang ("Yang") filed a Declaration in Support of Order to Show Cause and Temporary Restraining Order (the "Yang Declaration") [Dkt. No. 161]. The Yang Declaration stated, among other things, that Yang entered into a contract of sale with the Debtor on or about June 11, 2012 to purchase condo 4E, and since entering into the contract had paid $240,000 to Debtor in connection with this sale. Yang further declared that she was never notified of the bankruptcy filing and the sale of the Real Property, and would be prejudiced against if the sale to Mei Yang Ko (the Second Offeror) went forward.

19.     On June 10, 2020, the Court conducted a telephonic hearing on the Yang request for a Temporary Restraining Order. At the hearing, certain questions and concerns were raised by other creditors (through counsel), who claimed that the Second Offeror is the mother of Wing Fung

Chau a/k/a Andy Chau, and that Wing Fung Chau a/k/a Andy Chau was interfering with the sale of the Real Property. The Court adjourned the hearing until June 15, 2020 (the "June 15 Hearing").

20. In advance of the June 15 Hearing, Xue Mei Chen ("Chen"), in conjunction with LDWS, LLC ("LDWS"), filed an Affidavit (the "Chen Affidavit") to support a second Order to Show Cause to: (a) grant a preliminary injunction with a temporary restraining order; and (b) enjoin and restrain Wing Fung Chau a/k/a Andy Chau, Xiu Qin Shi a/k/a Amy Sh, Mei Yang Ko, Salena Chau, Bo Jin Zhu, Hok Kwai Chau, Chun Yin Chen, Tu Kang Yang, Dongmei Li, their agents, attorneys, employees, etc. from interfering with the estate of the Debtor, directly or indirectly, with the Debtor's Real Property [dkt. no. 165].

21. The Chen Affidavit asserted, among other things, that in March 2020, Wing Fung Chau a/k/a Andy Chau and Xiu Qin Shi (Amy) contacted third parties, who purportedly purchased individual units and/or townhouses at the Real Property and were soliciting funds from these individuals and advising that they would still receive title for such units/townhouses.

22. The Chen Affidavit also asserted that Xiu Qin Shi (Amy) contacted numerous individuals to attend an open house at the Real Property, which took place on May 20, 2020 with approximately 100 people in attendance. In fact, the Second Offeror, through her retained professionals, had requested from the Trustee access to do a walk through and inspect the Real Property prior to closing. At no time was the Trustee advised of, nor would he have consented to, anything other than very limited access for the walk through of the Real Property. The Trustee was not informed about, nor would he consent to, an open house at the Real Property.

23. At the June 15 Hearing, the Court addressed all of these issues surrounding the sale of the Real Property. Specifically, the Court made it clear that the Trustee (with the assistance of

his retained professionals) is the sole party authorized to administer the assets of the Debtor's estate. The Court further stated that any interference in the administration of the estate by the any of these individuals or any other unknown parties, including but not limited to, intimidating creditors or chilling the sale process, would not be tolerated.

24. The Court "So-Ordered" the record and directed the Trustee to continue his ongoing investigation into these claims. In response, the Trustee filed an application requesting a hearing on shortened notice and seeking temporary injunctive relief while the application was pending with the Court, which was granted.

25. On June 23, 2020, the Court conducted a hearing on the Trustee's application and granted the relief sought therein. In an Order entered on June 26, 2020 (the "Injunctive Relief Order") [Dkt. No. 171], the Court restrained Wing Fung Chau a/k/a Andy Chau, Xiu Qin Shi a/k/a Amy Shi (Wing Fung Chau's wife and statutory insider of the Debtor), Mei Yang Ko (Wing Fung Chau's mother and statutory insider of the Debtor), Salena Chau (Wing Fung Chau's daughter and statutory insider of the Debtor), Bo Jin Zhu (shareholder of Debtor), Hok Kwai Chau (a statutory insider of Debtor), Chun Yin Chen (a statutory insider r of Debtor), Tu Kang Yang (Wing Fung Chau's partner), Dongmei Li, 77 Shi Inc., Ken Chung, and any of their representatives, agents or any other party purporting to act on behalf of, or in concert with, these individuals (collectively, the "Parties") from, among other things:

> interfering with the Trustee's control and possession of the Real Property shall be deemed a violation of automatic stay under Bankruptcy Code § 362; and, it is further,
>
> entering the Real Property and entering the Real Property shall be deemed a violation of automatic stay under Bankruptcy Code § 362; and, it is further
>
> taking any adverse action against, any and all property of the Debtor's estate, including, but not limited to, the Real Property and such interference or adverse

8

action shall be deemed a violation of the automatic stay under Bankruptcy Code § 362; and, it is further,

contacting any party interested in purchasing the Real Property for the purpose of, among other things, preventing such party from making an offer for the Real Property, soliciting offers to purchase the Real Property or accepting down payments in cash or other property for the purchase of the Real Property, or contacting any of the creditors of this estate for the purpose of intimidating or threatening any such creditor in connection with this case and such actions shall be deemed a violation of automatic stay under Bankruptcy Code § 362; and, it is further,

accepting any funds from the creditors with pre-petition contracts for the purpose of purchasing any unit and/or townhouse of the Real Property and such actions shall be deemed a violation of automatic stay under Bankruptcy Code § 362.

See Injunctive Relief Order [Dkt. No. 171].

26.     In addition to the motions to retain the deposits from the Initial Offerors and the Second Offer and obtaining the Injunctive Relief Order, the Trustee, with the assistance of his retained professionals, has simultaneously continued to market the Real Property. As a result, the Trustee has been contacted my multiple parties, who have expressed an interest in purchasing the Real Property.

27.     This combined with the significant costs and expenses being incurred by the estate and the need to maintain the TCO's for the Real Property, the Trustee submits that it is essential that the Trustee be authorized to proceed with the Sale of the Real Property. Accordingly, the Trustee now seeks authorization for such relief as set forth below.

## RELIEF REQUESTED AND BASIS FOR RELIEF

28.     By this Motion, the Trustee seeks entry of the Order: (i) approving July 31, 2020 as the new date for the Sale of the Real Property; (ii) approving the revised Sale Terms (**Exhibit A** hereto); (iii) approving the revised Notice of Sale (**Exhibit B** hereto); (iv) scheduling a hearing

to confirm the results of the Sale; and (v) approving and granting such other, further and different relief as this Court deems just and proper.

## I. The Court Has Already Determined that Sale of the Real Property Is A Reasonable Exercise of the Trustee's Business Judgment and Should Be Approved

29. Bankruptcy Code § 363 provides, in relevant part, that "[t]he trustee, after notice and hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate . . .". 11 U.S.C. § 363(b)(1). The terms of such sale are generally within the sound discretion of the debtor, or if applicable the trustee. See Committee of Equity Security Holders v. Lionel Corp. (In re Lionel Corp.), 722 F.2d 1063, 1071 (2d Cir. 1983); see also Official Comm. of Unsecured Creditors of LTV Aerospace & Defense Co. v. LTV Corp. (In re Chateaugay Corp.), 973 F.2d 141, 145 (2d Cir. 1993); In re Dial-A-Mattress Operating Corp., 2009 Bankr. LEXIS 1801, at *12 (Bankr. E.D.N.Y. June 24, 2009) ("The business judgment test is the standard for Section 363 sales in this Circuit." (citations omitted)); In re Hirsch, 360 B.R. 43, 45–46, 48, 50 (Bankr. E.D.N.Y. 2007) (requiring "existence of 'a good business reason to grant such an application'" (quoting In re Lionel Corp., 722 F.2d at 1071)); In re Thomson McKinnon Sec., Inc., 120 B.R. 301, 307–08 (Bankr. S.D.N.Y. 1990). As recognized by the United States Court of Appeals for the Second Circuit in Lionel Corp., a court may approve a § 363 application after expressly determining from the evidence presented that a good business reason exists to grant such application. 722 F.2d 1063.

30. At the hearing on March 24, 2020, the Trustee set forth sound business judgment in selling the Real Property outside the ordinary course of business. The Court determined that the Trustee articulated good and sufficient reasons to grant the relief requested, including this Court's approval of: (i) the Sale of the Debtor's Real Property; (ii) approving the Original Sale Terms and

the Notice of Sale; and (iii) approving the Sale of Debtor's Real Property, free and clear of all Liens, to the successful bidder(s) at the Sale. See Sale Procedure Order, Dkt. No. 126.

## II.     The Sale Terms Should Be Approved

31.     As set forth above, the Original Sale Terms were approved in the Sale Procedure Order. The revised and supplemented Sale Terms are set forth below. All other terms have remained the same to those in the Original Sale Terms approved by the Court in the Sale Procedure Order. The revisions to the Sale Terms are emphasized in italics and are as follows:

> *At or prior to the Sale, each Bidder with the submission of its bid, shall provide:*
>
> *(i) a sworn declaration advising if the Bidder is a statutory insider as defined under Bankruptcy Code § 101(31) or have any relationship to the Debtor, Wing Fung Chau a/k/a Andy Chau, Bo Jin Zhu (shareholder of Debtor), Hok Kwai Chau (a statutory insider of Debtor), Chun Yin Chen (a statutory insider of Debtor);*
>
> *(ii) written evidence of its/their ability to close on the sale of the Real Property, that will allow the Trustee, and after consultation with the Senior Lienholder, to make a reasonable determination as to the Bidder's financial capabilities to close on the Sale of the Real Property*
>
> **At the conclusion of the Sale, Co-Brokers will return the Qualifying Deposits to all Bidders, except for the Successful Purchaser and the Second Highest Bidder.** Within 48 hours after conclusion of the Sale, the Successful Purchaser and the Second Highest Bidder (except for the Senior Lienholder) shall deliver to the Trustee, by certified check or bank check made payable to "Gregory M. Messer, Chapter 11 Trustee" or by wire in immediately available federal funds, an amount equal to ten (10%) percent of the bid submitted at Sale by the Successful Purchaser, minus such Qualifying Bidder's applicable Qualifying Deposit (together with the Qualifying Deposit, the "Initial Deposit"), plus a four (4%) percent Buyer's Premium (except for the Senior Lienholder). The Buyer's Premium shall be deemed to have been earned immediately upon the fall of the hammer and is due within 48 hours after conclusion of the Sale. Failure of the Successful Purchaser to tender both (i) the ten (10%) percent Deposit of the high bid at the Sale and (ii) the Buyer's Premium within 48 hours after conclusion of the Sale, shall result in an immediate: (a) default under the terms of these Terms and Conditions of Sale and the Memorandum of Sale; and (b) forfeiture of all earnest monies paid, including without limitation, any part of the Initial Deposit paid. *The Trustee shall retain the Qualifying Deposit of the Second Highest Bidder until the Closing (as defined herein) with the Successful Purchaser.*

Successful Purchaser must pay the balance of the Purchase Price for the Real Property to the Trustee by certified check or bank check or by wire in immediately available federal funds. The Successful Purchaser must close title to the Real Property at a date that is no more than *twenty (20) days after the Sale Date* (the "Closing Date"). The Trustee shall seek the entry of an Order confirming the sale from the Bankruptcy Court. **TIME BEING OF THE ESSENCE as to each Successful Purchaser**, although such Closing Date may be extended by the Trustee, in his sole discretion and after consultation with the Senior Lienholder, but such extension of the Closing Date shall not be later than *twenty (20) days* from the original Closing Date.  To the extent that the Trustee grants any such extension, the Successful Purchaser shall provide to the Trustee, *at least two (2) days prior to the scheduled Closing Date*, an additional, non-refundable deposit equal to ten (10%) percent of the Purchase Price (the "Additional Deposit"). The Additional Deposit shall be made by certified check or bank check made payable to "Gregory M. Messer, Chapter 11 Trustee" or by wire in immediately available federal funds and, together with the Initial Deposit, shall be deemed the "Deposit". In addition, all adjustments shall be made as of the original Closing Date. Further, the Successful Purchaser shall also be responsible for any and all real estate taxes, costs, fees and expenses incurred by the Debtor's estate after the original Closing Date through the date of the actual closing of the sale of the Real Property. The Successful Purchaser shall also be responsible for any additional interest, fees and other amounts due to the Senior Lienholder and any other party asserting a lien against the Real Property from the original Closing Date through the actual closing of the sale of the Real Property.

If the  Successful Purchaser fails to post the total required ten (10%) percent Deposit and four (4%) percent Buyer's Premium within 48 hours following the Sale or if the Successful Purchaser fails to Close on the Sale of the Real Property as set forth and required herein, (the "Successful Purchaser's Default"), the Trustee, in his sole and absolute discretion, may, within three (3) business days of any Successful Purchaser's Default, deem the Second Highest Bidder to hold all benefits and obligations under the Terms and Conditions of Sale and Memorandum of Sale, as the new Successful Purchaser (the "New Successful Purchaser"). *In the event that of the  Successful Purchaser's Default, then within 48 hours after notification by the Trustee that the Second Highest Bidder is the New Successful Purchaser (except for the Senior Lienholder) the  New Successful Purchaser shall deliver to the Trustee, by certified check or bank check made payable to "Gregory M. Messer, Chapter 11 Trustee" or by wire in immediately available federal funds, an amount equal to ten (10%) percent of the bid submitted at Sale by the New Successful Purchaser minus such Qualifying Bidder's applicable Qualifying Deposit (together with the Qualifying Deposit, the "New Initial Deposit"), plus a four (4%) percent Buyer's Premium (except for the Senior Lienholder). The Buyer's Premium shall be deemed to have been earned immediately upon the fall of the hammer and is due within 48 hours after notification by the Trustee that the Second Highest Bidder is the New Successful Purchaser. Failure of the New Successful*

>*Purchaser to tender both (i) the ten (10%) percent Deposit of the high bid at the Sale and (ii) the Buyer's Premium within 48 hours after notification by the Trustee that the Second Highest Bidder is the New Successful Purchaser, shall result in an immediate: (a) default under the terms of these Terms and Conditions of Sale and the Memorandum of Sale; and (b) forfeiture of all earnest monies paid, including without limitation, any part of the New Initial Deposit paid. The Trustee may close on the Sale of the Real Property without further order of the Court.*
>
>Any New Successful Purchaser shall **not** receive credit for any Deposit and/or Buyer's Premium forfeited by the Successful Purchaser. Any New Successful Purchaser must close title no later than *twenty (20) days* following receipt of written notice to the New Successful Purchaser of Successful Purchaser's Default (the "New Successful Purchaser's Closing"), **TIME BEING OF THE ESSENCE as to the New Successful Purchaser**, although such Closing Date may be extended by the Trustee, as determined in his sole discretion. To the extent that the Trustee grants any such extension, the New Successful Purchaser(s) shall provide to the Trustee *at least two (2) days prior to the scheduled Closing Date* an additional, non-refundable deposit equal to ten (10%) percent of the Purchase Price (the "New Additional Deposit"). The New Additional Deposit shall be made by certified check or bank check made payable to "Gregory M. Messer, Chapter 11 Trustee" or by wire in immediately available federal funds and, together with the original Deposit, shall be deemed the "New Deposit". In addition, all adjustments shall be made as of the original Closing Date. Further, the New Successful Purchaser shall also be responsible for any and all real estate taxes, costs, fees and expenses incurred by the Debtor's estate after the New Successful Purchaser's Closing through the date of the actual closing of the sale of the Real Property. The New Successful Purchaser shall also be responsible for any additional interest due any Senior Lienholder or other party asserting a lien against the Real Property from the New Successful Purchaser's Closing through the actual closing of the sale of the Real Property.

See Exhibit "B".

32.    The Trustee submits that the Sale Terms are reasonably designed to ensure there will be no interference with the sale process and to receive the maximum benefit available from the sale of the Real Property. Therefore, the Trustee requests that the Court approve the revised Sale Terms.

### III.    The Notice of Sale Should be Approved

33.    Pursuant to Bankruptcy Rules 2002(a) and 6004(a), the Trustee is required to give 21 days' notice of any proposed sale of property not in the ordinary course of business to the

Debtor and all creditors. See FED. R. BANKR. P. 2002(a) and 6004(a). Bankruptcy Rule 2002(c) provides that such notice must include the time and place of any auction, a sale hearing, and the time fixed for objections to the sale. See FED. R. BANKR. P. 2002(c).

34. In this case, the proposed Notice of Sale sets forth the important and relevant Sale Terms, including, the proposed revisions, the date, time and location of the Sale, and a reasonably specific description of the Real Property to be sold.

35. The Trustee proposes to serve a Notice of Sale, substantially in the form annexed as Exhibit "B", not less than twenty-one (21) days prior to the date of the virtual public auction upon the following parties:

i. The Debtor, through its counsel;

ii. The United States Trustee;

iii. Entities who have requested notice under Bankruptcy Rule 2002;

iv. In Initial Offerors, through counsel;

v. The Second Offeror, through counsel,

vi. Entities who filed proofs of claim against the Debtor's estate with the Court;

vii. All entities known or reasonably believed to have asserted a Lien on the Real Property;

viii. All creditors listed on the Debtor's petitions and schedules;

ix. All persons who made their interest in the Real Property known to Maltz and Co. or Rosewood Realty LLC;

x. All persons that have asserted in this case that they had a pre-petition contract to purchase any part of the Real Property;

xi. All affected federal, state and local regulatory and taxing authorities, including the Internal Revenue Service, the New York State Department of Taxation and Finance, and the New York City Department of Finance;

xii. The United States Attorney for the Eastern District of New York;

xiii.        The Office of the New York State Attorney General;

xiv.        The Corporation Counsel for the City of New York; and

xv.        All entities that have filed a Notice of Appearance in this case.

(collectively, the "Notice Parties").

36.      The Trustee submits that the Notice of Sale as proposed substantially complies with Bankruptcy Rule 2002 and the Order and constitutes good and adequate notice of the Sale. Therefore, the Trustee respectfully requests that the Court approve the proposed Notice of Sale.

## NOTICE AND NO PRIOR REQUEST

37.      By separate application, the Trustee, through counsel, will submit an affirmation pursuant to Bankruptcy Rule 9077 in support of the request to schedule a hearing on shortened notice filed contemporaneously herewith.

38.      No previous request for the relief sought herein has been made by the Trustee to this or any other Court.

**WHEREFORE** the Trustee respectfully requests that the Court grant the relief requested herein and such other and further relief as it deems just and proper.

Dated: July 6, 2020
       Wantagh, New York

                        **LaMONICA HERBST & MANISCALCO, LLP**
                        Counsel to Gregory M. Messer, Chapter 11 Trustee

                 By:    *s/ Jacqulyn S. Loftin*
                         Gary F. Herbst, Esq.
                         Jacqulyn S. Loftin, Esq.
                         3305 Jerusalem Avenue, Suite 201
                         Wantagh, New York 11793
                         Telephone: 516.826.6500