# TERMS AND CONDITIONS OF A VIRTUAL PUBLIC AUCTION SALE

1. On June 4, 2019 ("Petition Date"), an involuntary petition pursuant to Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code") was filed in the United States Bankruptcy Court for the Eastern District of New York ("Bankruptcy Court") against 41-23 Haight Street Realty Inc. (the "Debtor") by petitioning creditors, Wen Mei Wang, Xian Kang Zhang, Yu Qing Wang, Matthew Krepil, T.8.J. LLC and LDWS LLC.

2. On August 12, 2019, the Bankruptcy Court entered an Order Granting Motion for Appointment of Chapter 11 Trustee. By Notice of Appointment dated August 12, 2019, Gregory Messer was appointed solely in his capacity as Chapter 11 Trustee (the "Trustee") of the Debtor's estate. The Trustee is represented by LaMonica Herbst & Maniscalco LLP, with offices at 3305 Jerusalem Avenue, Wantagh, New York 11793.

3. By Order dated August 12, 2019, the Bankruptcy Court approved the appointment of Gregory Messer as Chapter 11 Trustee of the Debtor's estate, and is the permanent Chapter 11 Trustee of the Debtor's estate.

4. Pursuant to an Order entered by the Court on March 30, 2020 [Dkt. No. 126], the Trustee is authorized to sell the Real Property free and clear of all liens, claims, encumbrances and interests (collectively, the "Liens") at a virtual public auction.

5. These Terms and Conditions of Sale are promulgated in connection with the Bankruptcy Court authorized virtual public auction sale (such auction being the "Sale") of the Debtor's Real Property, located in Queens, NY and known as:

| Offering ID | Block & Lots |
|---|---|
| A | Block 5063, Lot: 44 (the Residential Building) |
| B | Block: 5063, Lots: 45, 46, 47, 48, 49, 50, 51, 52, 53 & 55 (the Townhouses) |
| C | Bulk Sale of Offering A & Offering B (the Residential Building and the Townhouses) |

**("Offering A", "Offering B" and "Offering C", and collectively the "Real Property")**

6. Maltz Auctions, Inc. d/b/a Maltz Auctions and Rosewood Realty Group are the Trustee's retained broker/auctioneer who will conduct the Sale (collectively, "Co-Brokers").

7. The Real Property is encumbered by first priority liens belonging to 41-31 Haight Street Lender LLC (such entity, together with any assignee or designee thereof being referred to herein as the "Senior Lienholder"). The Senior Lienholder is represented by Katsky Korins LLP, 605 Third Avenue, New York, New York 10158.

8. The virtual Sale will be held on **July 31, 2020 at 1:00 p.m., prevailing Eastern time** (the "Sale Date"). **The bids will be submitted online and/or telephonic** (although the Trustee reserves the right to accept in-person bids at the Sale) and directions on how to submit an online and/or telephonic

bid can be found on Co-Broker's websites: www.MaltzAuction.com and www.rosewoodrealtygroup.com.

9. At the virtual Sale, in order to be permitted to submit a bid on the Real Property, at the Sale, each prospective bidder ("Bidder"), other than other than the Senior Lienholder, must deliver to the Co-Brokers an executed copy of these Terms and Conditions of Sale and an official cashier's check made payable to "Gregory Messer, Chapter 11 Trustee" in an amount of:

(i) $500,000 to bid on Offering A;

(ii) $1,500,000 to bid on Offering B; and

(iii) $2,000,000 to bid on Offering C.

(each, the "Qualifying Deposit"), which shall serve as a partial good faith deposit against payment of the purchase price by such competing bidder as the Trustee, in his sole discretion, after consultation with the Senior Lienholder, determines to have made the highest or best bid for the Real Property (the "Successful Purchaser").

10. Also, at or prior to the Sale, each Bidder with the submission of its bid, shall provide:

(i) a sworn declaration advising if the Bidder is a statutory insider as defined under Bankruptcy Code § 101(31) or have any relationship to the Debtor, Wing Fung Chau a/k/a Andy Chau, Bo Jin Zhu (shareholder of Debtor), Hok Kwai Chau (a statutory insider of Debtor), Chun Yin Chen (a statutory insider of Debtor); and

(ii) written evidence of its/their ability to close on the sale of the Real Property, that will allow the Trustee, and after consultation with the Senior Lienholder, to make a reasonable determination as to the Bidder's financial capabilities to close on the Sale of the Real Property

11. Notwithstanding anything to the contrary, the Senior Lienholder (a) shall in all events be deemed a Bidder and, (b) shall not be required to pay a Qualifying Deposit or any other Deposit whatsoever, (c) shall be permitted to credit bid the full amount that it claims is owed to the Senior Lienholder on the date of the Sale based on any or all of its pre-petition and post-petition loans to the Debtor and/or the Trustee and liens on the Real Property; and (d) shall not be required to pay a Buyer's Premium.

12. At the Sale, the Real Property shall be auctioned for sale by each individual Offering with the bidding remaining open until there are no higher bids tendered on any Real Property and/or Offering.

13. Upon the conclusion of the bidding, the Trustee, upon consultation with the Senior Lienholder, shall determine the Bidder(s) making the highest or best bid(s) (each the "Successful Purchaser") and the Bidder making the second highest or best bid(s) (each the "Second Highest Bidder") and announce such results at the Sale.

14. The Successful Purchaser(s) and the Second Highest Bidder of the Real Property, will, at the time and place of the conclusion of the Sale, sign a memorandum(s) of sale (the "Memorandum of Sale") in accordance with these Terms and Conditions of Sale.

15.     **At the conclusion of the Sale, the Co-Brokers will return the Qualifying Deposits to all Bidders, except for the Successful Purchaser and the Second Highest Bidder.**  Within 48 hours after conclusion of the Sale,  the Successful Purchaser and the Second Highest Bidder (except for the Senior Lienholder) shall deliver to the Trustee, by certified check or bank check made payable to "Gregory M. Messer, Chapter 11 Trustee" or by wire in immediately available federal funds, an amount equal to ten (10%) percent of the bid submitted at Sale by the Successful Purchaser, minus such Qualifying Bidder's applicable Qualifying Deposit (together with the Qualifying Deposit, the "Initial Deposit"), plus a four (4%) percent Buyer's Premium (except for the Senior Lienholder). The Buyer's Premium shall be deemed to have been earned immediately upon the fall of the hammer and is due within 48 hours after conclusion of the Sale. Failure of the Successful Purchaser to tender both (i) the ten (10%) percent Deposit of the high bid at the Sale and (ii) the Buyer's Premium within 48 hours after conclusion of the Sale, shall result in an immediate: (a) default under the terms of these Terms and Conditions of Sale and the Memorandum of Sale; and (b) forfeiture of all earnest monies paid, including without limitation, any part of the Initial Deposit paid. The Trustee shall retain the Qualifying Deposit of the Second Highest Bidder until the Closing (as defined herein) with the Successful Purchaser.

16.     Pursuant to an Order of the Bankruptcy Court, the Successful Purchaser (and the Second Highest Bidder in the event of a Successful Purchaser's Default (as hereinafter defined)) are solely responsible to pay the Co-Brokers four (4%) percent of the amount bid by such Successful Purchaser and Second Highest Bidder, as applicable, at the Sale (the "Buyer's Premium"). The sum of the amount bid at the Sale and the Buyer's Premium is defined herein as the "Purchase Price". Notwithstanding anything to the contrary, the Senior Lienholder shall not be required to pay a Buyer's Premium.

17.     The Successful Purchaser must pay the balance of the Purchase Price for the Real Property to the Trustee by certified check or bank check or by wire in immediately available federal funds. The Successful Purchaser must close title to the Real Property at a date that is no more than twenty (20) days after the Sale Date (the "Closing Date"). The Trustee shall seek the entry of an Order confirming the sale from the Bankruptcy Court. **TIME BEING OF THE ESSENCE as to each Successful Purchaser**, although such Closing Date may be extended by the Trustee, in his sole discretion and after consultation with the Senior Lienholder, but such extension of the Closing Date shall not be later than twenty (20) days from the original Closing Date.  To the extent that the Trustee grants any such extension, the Successful Purchaser shall provide to the Trustee, at least two (2) days prior to the scheduled Closing Date, an additional, non-refundable deposit equal to ten (10%) percent of the Purchase Price (the "Additional Deposit"). The Additional Deposit shall be made by certified check or bank check made payable to "Gregory M. Messer, Chapter 11 Trustee" or by wire in immediately available federal funds and, together with the Initial Deposit, shall be deemed the "Deposit". In addition, all adjustments shall be made as of the original Closing Date. Further, the Successful Purchaser shall also be responsible for any and all real estate taxes, costs, fees and expenses incurred by the Debtor's estate after the original Closing Date through the date of the actual closing of the sale of the Real Property. The Successful Purchaser shall also be responsible for any additional interest, fees and other amounts due to the Senior Lienholder and any other party asserting a lien against the Real Property from the original Closing Date through the actual closing of the sale of the Real Property.

18.     If the  Successful Purchaser fails to post the total required ten (10%) percent Deposit and four (4%) percent Buyer's Premium within 48 hours following the Sale  or if the Successful Purchaser fails to Close on the Sale of the Real Property as set forth and required herein, (the "Successful Purchaser's Default"), the Trustee, in his sole and absolute discretion, may, within three (3) business days of any Successful Purchaser's Default, deem the Second Highest Bidder to hold all benefits and obligations under the Terms and Conditions of Sale and Memorandum of Sale, as the new Successful

Purchaser (the "New Successful Purchaser"). In the event that of the Successful Purchaser's Default, then within 48 hours after notification by the Trustee that the Second Highest Bidder is the New Successful Purchaser (except for the Senior Lienholder) the New Successful Purchaser shall deliver to the Trustee, by certified check or bank check made payable to "Gregory M. Messer, Chapter 11 Trustee" or by wire in immediately available federal funds, an amount equal to ten (10%) percent of the bid submitted at Sale by the New Successful Purchaser minus such Qualifying Bidder's applicable Qualifying Deposit (together with the Qualifying Deposit, the "New Initial Deposit"), plus a four (4%) percent Buyer's Premium (except for the Senior Lienholder). The Buyer's Premium shall be deemed to have been earned immediately upon the fall of the hammer and is due within 48 hours after notification by the Trustee that the Second Highest Bidder is the New Successful Purchaser. Failure of the New Successful Purchaser to tender both (i) the ten (10%) percent Deposit of the high bid at the Sale and (ii) the Buyer's Premium within 48 hours after notification by the Trustee that the Second Highest Bidder is the New Successful Purchaser, shall result in an immediate: (a) default under the terms of these Terms and Conditions of Sale and the Memorandum of Sale; and (b) forfeiture of all earnest monies paid, including without limitation, any part of the New Initial Deposit paid. The Trustee may close on the Sale of the Real Property without further order of the Court

19. Any New Successful Purchaser shall **not** receive credit for any Deposit and/or Buyer's Premium forfeited by the Successful Purchaser. Any New Successful Purchaser must close title no later than twenty (0) days following receipt of written notice to the New Successful Purchaser of Successful Purchaser's Default (the "New Successful Purchaser's Closing"), **TIME BEING OF THE ESSENCE as to the New Successful Purchaser**, although such Closing Date may be extended by the Trustee, as determined in his sole discretion. To the extent that the Trustee grants any such extension, the New Successful Purchaser(s) shall provide to the Trustee at least two (2) days prior to the scheduled Closing Date an additional, non-refundable deposit equal to ten (10%) percent of the Purchase Price (the "New Additional Deposit"). The New Additional Deposit shall be made by certified check or bank check made payable to "Gregory M. Messer, Chapter 11 Trustee" or by wire in immediately available federal funds and, together with the original Deposit, shall be deemed the "New Deposit". In addition, all adjustments shall be made as of the original Closing Date. Further, the New Successful Purchaser shall also be responsible for any and all real estate taxes, costs, fees and expenses incurred by the Debtor's estate after the New Successful Purchaser's Closing through the date of the actual closing of the sale of the Real Property. The New Successful Purchaser shall also be responsible for any additional interest due any Senior Lienholder or other party asserting a lien against the Real Property from the New Successful Purchaser's Closing through the actual closing of the sale of the Real Property.

20. The closing shall take place at the Law Office of Gregory M. Messer, 26 Court Street, Suite 2400, Brooklyn, NY 11242 (the "Closing").

21. At or before the Closing, the Successful Purchaser, or the New Successful Purchaser, as the case may be, shall pay any and all costs and expenses in connection with the Closing related to obtaining a survey; fee title or mortgage insurance; title company endorsement, search and escrow charges; environmental, engineering or other inspections; appraisals, reports and other costs of due diligence; and County, State, City, or other real property transfer, deed or documentary tax, or other taxes imposed upon the sale due in connection with the transfer of each Real Property, including, but not limited to, any transfer tax imposed by New York State and/or the City of New York.

22. The Successful Purchaser and the New Successful Purchaser, as the case may be, acknowledges that they will be responsible for the completion of any ACRIS forms, if required. The Trustee shall not be required to execute any form of title affidavit (but may in its sole and absolute discretion) and all title exceptions customarily omitted from a title policy on account of such title

affidavit shall be deemed permitted exceptions. The Successful Purchaser, or the New Successful Purchaser, as the case may be, acknowledges that it will be responsible for the preparation of all Closing documents required including, but not limited to, transfer tax forms. In connection with the Closing and Closing Date, the Successful Purchaser or the New Successful Purchaser, as the case may be, is hereby given notice that **TIME IS OF THE ESSENCE against the Successful Purchaser or the New Successful Purchaser, as the case may be, and the failure of the Successful Purchaser or the New Successful Purchaser, as the case may be, to close for any reason whatsoever (except as otherwise provided herein) including its failure to pay the balance of the Purchase Price on the Closing Date, will result in an immediate forfeiture of the Deposit and Buyer's Premium and the termination of such Successful Purchaser's or such New Successful Purchaser's, as the case may be, right to acquire each Real Property under these Terms and Conditions of Sale and the Memorandum of Sale**.

23. The Successful Purchaser or the New Successful Purchaser, as the case may be, shall be obligated to close title to each Real Property and, except as expressly set forth herein, there is no contingency of any kind or nature that will permit such Successful Purchaser, or such New Successful Purchaser, as the case may be, to cancel or avoid its obligation under these Terms of and Conditions of Sale and the Memorandum of Sale other than the Trustee's inability to deliver insurable title to each Real Property. Further, the Successful Purchaser or the New Successful Purchaser, as the case may be, shall have demonstrated, to the satisfaction of the Co-Brokers, the Trustee and the Senior Lienholder, evidence of its ability to conclude the transaction upon these Terms and Conditions of Sale and the Memorandum of Sale, without delay.

24. The Trustee reserves the right to reject any Successful Purchaser or Bidder who the Trustee or the Senior Lienholder, believes is not financially capable of consummating the purchase of any of the Real Property. Expenses incurred by any Successful Purchaser, or any other Bidder, concerning any due diligence shall be the sole responsibility of such Successful Purchaser or Bidder and, under no circumstances shall the Co-Brokers, the Trustee, his other retained professionals, or the estate be responsible for, or pay, such expenses. The foregoing shall not be deemed to imply a contingency upon the results of any such due diligence.

25. The Successful Purchaser, the New Successful Purchaser or Bidder hereto acknowledge and agree (i) that the Successful Purchaser, the New Successful Purchaser or Bidder shall retain and engage Kensington Vanguard National Land Services (the "Title Company") to provide an owner's title insurance policy for the Real Property; (ii) that the Title Company has examined title and issued a Certificate of Title for File No. 530843-S-NY-MR-RA last updated on dated March 9, 2019 (hereinafter either the "Certificate of Title" or the "Title Report") and (iii) to utilize such Title Report for purposes of obtaining an owner's title insurance policy from the Title Company for the Real Property, provided however, notwithstanding the foregoing or anything to the contrary, the Senior Lienholder may use its own title company, and shall not be required to purchase a title policy from the above described Title Company, provided that such election to use an alternative title company or purchase an alternative title policy shall not be any justification for the Senior Lienholder to raise any title issues that are not contained in the above described Title Report.

26. The Co-Brokers, the Trustee, his other retained professionals, or the estate have not made and do not make any representations or warranties as to the physical condition, expenses, operations, value of the land or buildings thereon, or any other matter or thing affecting or related to the Real Property or this Sale, which might be pertinent to the purchase of the Real Property, including, without limitation, (i) the current or future real estate tax liability, assessment or valuation of the Real Property;

(ii) the potential qualification of the Real Property for any and all benefits conferred by or available under federal, state or municipal laws, whether for subsidies, special real estate tax treatment, insurance, mortgages, or any other benefits, whether similar or dissimilar to those enumerated; (iii) the compliance or non-compliance of the Real Property, in its current or any future state, with applicable present or future zoning ordinances or other land use law or regulation, or the ability to obtain a change in the zoning or use, or a variance in respect to the Real Property; (iv) the availability of any financing for the purchase, alteration, rehabilitation or operation of the Real Property from any source, including, but not limited to, any state, city or federal government or institutional Senior Lienholder; (v) the current or future use of the Real Property; (vi) the current or future rents, other operating incomes or expenses; (vii) the presence or absence of any laws, ordinances, rules or regulations issued by any governmental authority, agency or board and any violations thereof; (viii) the compliance or non-compliance with environmental laws and the presence or absence of underground fuel storage tanks, any asbestos, any lead paint or other hazardous materials anywhere on the Real Property, or notes or notices of violations of law or municipal ordinances, orders or requirements noted or issued by any governmental department, agency or bureau having authority as to but not limited to lands, housing, buildings, fire, health, environment and labor conditions affecting the Real Property.

27.     Each Bidder hereby expressly agrees and acknowledges that no such representations or warranties have been made, and that the Co-Brokers, the Trustee, his retained professionals or the estate, shall not be liable or bound in any manner by expressed or implied warranties, guarantees, promises, statements, representations or information pertaining to the Real Property, made or furnished by Co-Brokers, the Trustee, his retained professionals or any real estate broker, agent, employee, servant or other person or professional representing or purporting to represent the Co-Brokers, the Trustee, his retained professionals or the estate unless such warranties, guarantees, promises, statements, representations or information are expressly and specifically set forth in writing within these Terms and Conditions of Sale and the Memorandum of Sale.

28.     Each Real Property is being sold "**AS IS**" "**WHERE IS**", "**WITH ALL FAULTS**", pursuant to Section 363 of the Bankruptcy Code and without any representations, covenants, guarantees or warranties of any kind or nature, and free and clear of any liens, claims, interests or encumbrances of whatever kind or nature, with any liens, if any, to attach to the proceeds of Sale in such order and priority as they existed immediately prior to the actual closing on the Sale of the applicable Real Property, and Sale of the Real Property is subject to, among other things (a) any state of facts that an accurate survey may show; (b) any covenants, restrictions and easements of record; (c) any state of facts a physical inspection may show; (d) any building or zoning ordinances or other applicable municipal regulations and violations thereof; and (e) environmental conditions; provided, however, **each Real Property shall be delivered free and clear of any and all monetary liens and vacant of leases and tenancies**. By delivering their respective Qualifying Deposits, all Bidders acknowledge that they have had the opportunity to review and inspect each Real Property, the state of title thereof and laws, rules and regulations applicable thereto, and will rely solely thereon and on their own independent investigations and inspections of such Real Property in making their bids. The Co-Brokers, the Trustee or his retained professionals or any of their collective representatives makes any representations or warrantees with respect to the permissible uses of any of Real Property including, but not limited to, the zoning of such Real Property. All Bidders acknowledge that they have conducted their own due diligence in connection with such Real Property and are not relying on any information provided by Co-Brokers, the Trustee or his retained professionals. Each Real Property will be sold subject to any and all violations requiring corrective action**.**

29. The Trustee shall convey each Real Property by delivery of a quitclaim or Trustee Deed.

30. Nothing contained in these Terms and Conditions of Sale is intended to supersede or alter any provisions of the Bankruptcy Code, any orders entered in the Debtor's bankruptcy case or otherwise interfere with the jurisdiction of the Bankruptcy Court. All of the terms and conditions set forth in these Terms and Conditions of Sale are subject to modification as may be directed by the Trustee, in his sole discretion and in consultation with the Senior Lienholder, or by the Bankruptcy Court. The Trustee reserves the right to modify these Terms and Conditions of Sale at the Sale or thereafter to maintain consistency with the provisions of the Bankruptcy Code and/or prior orders of the Bankruptcy Court.

31. These Terms and Conditions of Sale will be read into the record, or specifically incorporated by reference, at the Sale of the Real Property. By making a bid for any of Real Property, all Bidders will be deemed to have acknowledged having read and understood these Terms and Conditions of Sale and have agreed to be bound by them.

32. If the Trustee is unable to deliver any of the Real Property in accordance with these Terms and Conditions of Sale for any reason whatsoever, the Trustee's and the Co-Brokers' only obligation will be to refund the Deposit and Buyer's Premium, without interest, to the Successful Purchaser, or the New Successful Purchaser, as the case may be, and upon such refund, the Successful Purchaser or the New Successful Purchaser, as the case may be, will have no claim or recourse against the Co-Brokers, the Trustee, his retained professionals and/or the estate and shall have no further rights under these Terms and Conditions of Sale or Memorandum of Sale.

33. The Sale of the Real Property is subject to the entry of the Sale Confirmation Order by the Bankruptcy Court.

34. The Bankruptcy Court retain jurisdiction over the Sale and shall determine any disputes concerning the Sale of the Real Property. By participating in the Sale, all Bidders, including the Successful Purchaser and the New Successful Purchaser, consent to the jurisdiction of the Bankruptcy Court to determine such disputes under the Debtor's pending case.

I have read these Terms and Conditions of Sale and agree to be bound by them.

By: _____ Date: _____

Print Name: _____

## **MEMORANDUM OF SALE – SUCCESSFUL BIDDER**

High Bid Realized at Public Sale: _____

Buyer's Premium: _____

**Purchase Price:** _____

The undersigned has this _____ 2020, agreed to purchase the Property (as defined in the annexed Terms and Conditions of Sale) and sold by Gregory Messer, Esq., as Chapter 11 Trustee pursuant to the Order of the United States Bankruptcy Court for the Eastern District of New York entered on _____2020 authorizing the sale of the Property, for the sum of $_____ DOLLARS and hereby promises and agrees to comply with the annexed Terms and Conditions of Sale of the Property and this Memorandum of Sale.

_____
SUCCESSFUL BIDDER (Signature)

_____
PRINT NAME

_____
ADDRESS

_____
ADDRESS (City, State, Zip)

_____
TELEPHONE NUMBER

_____
EMAIL ADDRESS

Received from _____ the sum of $_____,000 DOLLARS, as a non-refundable initial deposit for the purchase of the Real Property pursuant to the Terms and Conditions of Sale.

This is to verify that the final Purchase Price in the above sale was for the sum of $_____.

_____
[TRUSTEE ]

**SUCCESSFUL BIDDER ATTORNEY INFORMATION**

Name _____

Address _____

Phone _____

## **MEMORANDUM OF SALE – SECOND HIGHEST BIDDER**

High Bid Realized at Public Sale: _____

Buyer's Premium: _____

**Purchase Price:** _____

The undersigned has this _____, 2020, agreed to purchase the Property (as defined in the annexed Terms and Conditions of Sale) and sold by Gregory Messer, Esq., the Chapter 11 Trustee of the Debtor for the sum of $_____ DOLLARS in the event of the Successful Bidder's Default and if deemed by the Trustee, in his sole and absolute discretion, and to hold all benefits and obligations of a Successful Bidder under the Terms and Conditions of Sale and this Memorandum of Sale and hereby promises and agrees to comply with the annexed Terms and Conditions of Sale of said Property and this Memorandum of Sale.

_____

SECOND HIGHEST BIDDER (Signature)

_____

PRINT NAME

_____

ADDRESS

_____

ADDRESS (City, State, Zip)

_____

TELEPHONE NUMBER

_____

EMAIL ADDRESS

Received from _____the sum of $_____ DOLLARS, as a non-refundable deposit for the purchase of the Property pursuant to the Terms and Conditions of Sale.

This is to verify that the final Purchase Price for the 2nd Highest Bid was in the above sale was for the sum of $_____.

_____

[TRUSTEE]

**SECOND HIGHEST BIDDER ATTORNEY INFORMATION**

Name _____

Address _____    Phone: _____