UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------x
In re:                                                                    Chapter 11

41-23 HAIGHT STREET REALTY INC.,                       Case No.: 19-43441 (NHL)

                Debtor.
----------------------------------------------------------------x

**AFFIRMATION IN SUPPORT OF AN ORDER CONFIRMING THE RESULTS
OF THE VIRTUAL PUBLIC AUCTION CONDUCTED ON AUGUST 5, 2020
FOR THE DEBTOR'S REAL PROPERTY FREE AND CLEAR OF ALL LIENS,
CLAIMS, ENCUMBRANCES AND INTERESTS
TO JCBD INVESTMENT INC./JINYU ZHANG**

Gregory M. Messer, solely in my capacity as the Chapter 11 Trustee, affirms, under penalties of perjury, the following:

1.       I am the Chapter 11 Trustee of the 41-23 Haight Street Realty LLC (the "Debtor") estate pending in the United States Bankruptcy Court, Eastern District New York (the "Court"). I am fully familiar with the facts and circumstances of this case and the matters set forth in this Affirmation.

2.       On at August 5, 2020 at 11:00 a.m., the estate's retained co-brokers, Maltz Auctions Inc. and Rosewood Realty LLC (the "Co-Brokers"), conducted a virtual public auction sale (the "Virtual Auction") of Debtor's real properties in Queens County identified as Block 5063, Lots 44, 45, 46, 47, 48, 49, 50, 51, 52, 53, and 55 and also known as 41-09 through 41-31 Haight Street, Flushing, New York 11355 (collectively, the "Real Property").

**A.**      **The Virtual Auction Process**

3.       The Virtual Auction was scheduled in accordance with the motion (the "Sale Procedure Motion") [dkt. no. 116] submitted by my counsel seeking an Order scheduling a hearing on shortened notice and the entry of an Order, pursuant to 11 U.S.C. §§ 105 and 363 (the

1

"Bankruptcy Code") and Rules 2002 and 6004(h) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"): (i) authorizing the Trustee to proceed with the Public Auction of the Real Property; (ii) approving the Terms and Conditions of Sale (the "Sale Terms") and the Notice of Sale; (iii) approving the sale of Debtor's Real Property, free and clear of all liens, claims and encumbrances, security interests and other interests (collectively, the "Liens"), to the successful bidder(s) at the Public Auction; (iv) scheduling a hearing to confirm the results of the Public Auction; and (v) such other, further and different relief as this Court deems just and proper.

4. Pursuant to the Order entered on March 30, 2020 [dkt. no. 126], the Court, among other things, approved: (i) proceeding with the (virtual) Public Auction of the Real Property; (ii) the Sale Terms and the Notice of Sale; (iii) the sale of Debtor's Real Property, free and clear of all Liens to the successful bidder(s) at the Public Auction; and (iv) scheduled a hearing to confirm the results of the Public Auction. (the "Sale Procedure Order").

5. After notice and hearing, pursuant to the Order entered on July 21, 2020 (the "July 21 Order") [dkt. no. 225], the Court: (i) approved the August 5, 2020 date of the Virtual Auction for the sale of the Real Property; (ii) approved the revised terms and conditions of sale (the "Revised Sale Terms"); (iii) approved the revised Notice of Sale (the "Revised Notice of Sale"); and (iv) scheduled the hearing to confirm the sale of the Real Property for August 6, 2020 at 4:00 p.m. (the "Sale Confirmation Hearing").

6. In accordance with the July 21 Order, a copy the Revised Notice of Sale was served on all necessary parties, via electronic mail or overnight mail, and the affidavits of service was filed with the Court [dkt no. 226].

7. In accordance with the July 21 Order, the Co-Brokers published the Revised Notice of Sale in *New York Real Estate Journal*, *New York Times*, *Real Estate Weekly*, *Epoch Times,* as

well as the *Korean Times* (with a Korean translation) and *Chinese World Journal* (with a Chinese translation) prior to the Virtual Auction.

8. Accordingly, the Revised Notice of the Sale was provided in accordance with Bankruptcy Code §§ 102, 363(b) and (f) and Bankruptcy Rules 2002, 4001 and 6004.

9. Moreover, prior to the Virtual Auction, the Co-Brokers aggressively marketed the sale of the Real Property and circulated the Court approved Revised Sale Terms to all interested parties. A copy of the marketing summary is annexed hereto as **Exhibit "A"**.

**B.** **The Successful Bidder and Confirmation of the Purchase Price**

10. On August 5, 2020 at 11:00 a.m., a Virtual Auction was conducted by my retained Co-Brokers. Five bidders registered in advance of the Virtual Auction:

  i. JCBD Investment Inc./Jinyu Zhang ("JCBD");

  ii. S-3 Global Multi-Strategy Master Fund;

  iii. Hemant Mehta;

  iv. Jiashu Xu a/k/a Chris Xu ("Xu"-proposed third stalking horse bidder)[1]; and

  v. The Debtor's senior lienholder, 41-31 Haight Street Lender LLC.

11. In accordance with the Revised Sale Terms, in advance of the Virtual Auction, in order to bid on the entire Real Property each bidder was required to provide to the Co-Brokers with: i) a fully-executed copy of the Revised Sale Terms; ii) a sworn declaration regarding its relationship with the Debtor, insiders of the Debtor and other related parties; iii) proof of funds of the ability to close on the sale of the Real Property; and iv) the qualifying deposit of $2,000,000 (but for Xu, who had previously provided me with a deposit of $2,600,000 on account of proposed third stalking horse bid, which I retained in advance of the Virtual Auction and the Debtor's senior

---

[1] The proposed third stalking horse bid by Jiashu Xu a/k/a Chris Xu was submitted to the Court in advance of the Virtual Auction, but the Court denied to conduct a hearing on the proposal.

lender who was deemed qualified to bid without the additional deposit). All the bidders complied with these requirements and were deemed qualified bidders under the Revised Sale Terms (collectively, the "Qualified Bidders").

12. At the Virtual Auction, the Co-Brokers opened the bidding for Offering "C" (the bulk offering for the 10 Townhouses and the Residential Building) with an initial bid of $27,000,000. There was spirited bidding for Offering "C" conducted during the Virtual Public Auction, and the highest bid received was $28,100,000 by JCBD.

13. The Co-Brokers then opened up bidding for Offering "A" (the Residential Building), to which none of the Qualified Bidders submitted a bid.

14. The Co-Brokers then opened up bidding for Offering "B" (the 10 Townhouses), to which none of the Qualified Bidders submitted a bid.

15. The Co-Brokers then re-opened the bidding for Offering "C" for any further bidding. When none of the Qualified Bidders submitted a counterbid, the Co-Brokers identified the bid of $28,100,000 from JCBD as the highest bid received (the "Highest Bid"), and the bid of $28,000,000 from Xu as the second highest bid received ("Second Highest Bid"), both subject to confirmation by the Court.

16. In accordance with Revised Sale Terms, JCBD is required to pay to the estate, *via* wire transfer or certified or bank check, an amount equal to ten (10%) of the bid submitted (*minus* the qualifying deposit of $2,000,000) for a total of $2,810,000, *plus* the 4% Buyer's Premium of $1,124,000 within 48 hours of the Virtual Auction—no later than the close of business by Friday, August 7, 2020.

17. Also, under the Revised Sale Terms, JCBD is required to close on the sale of the Real Property within twenty (20) days of the Virtual Auction—no later than Tuesday, August 25, 2020.

18. The estate will continue to retain Xu's deposit of $2,600,000 until JCBD closes on the sale of the Real Property.

19. The Highest Bid of $28,100,000 from JCBD was the highest and best offer received for the Real Property.

20. The sale to JCBD is an arms-length transaction and the sale of the Real Property is being entered into in good faith by the parties. Annexed as **Exhibit "B"** is a copy of the sworn declaration of Jinyu Zhang, on behalf of JCBD, who declared, under the penalty of perjury, that he not a statutory insider, has no relationship with the Debtor and/or its related entities. Annexed as **Exhibit "C"** is a copy of the sworn declaration of John Xu, on behalf of JCBD[2], who declared, under the penalty of perjury, that he is not insider, but he did disclose three prior transactions with Wing Fung Chau a/k/a Andy Chau.

21. As such, in the absence of a stay pending appeal, JCBD will be acting in good faith pursuant to Bankruptcy Code § 363(m) in closing on the sale of the Real Property after the entry of the Order confirming the sale.

C. **Approval to Proceed with the Closing**

22. The sale of the Real Property to JCBD is a reasonable exercise of my business judgment. Further, the transactions contemplated by the sale of the Real Property are in the best interest of this estate and its creditors.

---

[2] JCBD is the entity that alleged that it contributed to the deposit from the second stalking horse bidder.

23.     I have exercised sound business judgment in proceeding with the Virtual Auction. The Co-Brokers and other retained professionals actively marketed and advertised the Real Property for sale and the purchase price of $28,100,000 from JCBD was the highest and best offer received.  See Exhibit "A".

24.     As such, in consultation with my professionals, I have elected to proceed with confirmation of the sale of the Real Property to JCBD as the successful purchaser with the Highest Bid of $28,100,000, and request that the Court enter an Order confirming the sale of the Real Property to JCBD as the successful purchaser.

25.     Under the circumstances of this case, a valid business purpose exists for the approval of the sale of the Real Property to JCBD for the purchase price of $28,100,000, *plus* the Buyer's Premium of $1,124,000 and the transfer taxes pursuant to Bankruptcy Code § 363(b), (f) and (m).

26.     Accordingly, I respectfully request that the Court approve and enter an Order confirming the sale of the Real Property to JCBD as the successful purchaser.

Dated: August 5, 2020
       Wantagh, New York

> By:     *s/ Gregory M. Messer, as Trustee*
>         Gregory M. Messer, solely in his capacity as
>         Chapter 11 Trustee of the 41-23 Haight Street Realty estate