UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------------x
In re:                                                          Chapter 11

41-23 HAIGHT STREET REALTY, INC.,                               Case No. 19-43441 (NHL)

                          Debtor.
---------------------------------------------------------------x

**ORDER CONFIRMING THE SALE OF THE DEBTOR'S REAL PROPERTY TO JCBD INVESTMENT INC./JINYU ZHANG OR ITS DESIGNEE AS THE SUCCESSFUL PURCHASER AT THE VIRTUAL PUBLIC AUCTION HELD ON AUGUST 5, 2020 FREE AND CLEAR OF ALL LIENS, CLAIMS, ENCUMBRANCES AND OTHER <u>INTERESTS AND RELATED RELIEF</u>**

Upon the order entered on March 30, 2020 [ECF No. 126]: (i) authorizing the Trustee to proceed with the (virtual) public auction of the real properties in Queens County identified as Block 5063, Lots 44, 45, 46, 47, 48, 49, 50, 51, 52, 53 and 55 Haight Street, Flushing, New York 11355 (collectively, the "<u>Real Property</u>") of the 41-23 Haight Street Realty LLC (the "<u>Debtor</u>") estate; (ii) approving the Terms and Conditions of Sale (the "<u>Sale Terms</u>") and the Notice of Sale; (iii) approving the sale of Debtor's Real Property, free and clear of all liens to the successful bidder(s) at the (virtual) public auction; and (iv) scheduling a hearing to confirm the results of the public auction (the "<u>Sale Procedure Order</u>"); and upon the motion (the "<u>Motion</u>")[1] of Gregory M. Messer, solely in his capacity as the Chapter 11 Trustee (the "<u>Trustee</u>") of the Debtor's estate, through his counsel, seeking the entry of an order pursuant to 11 U.S.C. §§ 105 and 363 (the "<u>Bankruptcy Code</u>") and Rules 2002 and 6004(h) of the Federal Rules of Bankruptcy Procedure (the "<u>Bankruptcy Rules</u>"): (i) approving July 31, 2020 as the date of the virtual public auction sale of the Real Property; (ii) approving the revised Terms and Conditions of Sale (the "<u>Revised Sale</u>

---

[1] Capitalized terms not otherwise defined herein shall have the definition ascribed to them in the Motion and/or the Revised Sale Terms.

Terms") and the revised Notice of Sale (the "Revised Notice of Sale"); and (iii) scheduling a hearing to confirm the results of the virtual auction; and upon no objections to the relief sought in the Motion having been filed; and upon the Motion having been heard before the Court on July 14, 2020 at 3:00 p.m. (the "Hearing"), the transcript of which is incorporated by reference herein; and upon the order entered on July 21, 2020 (the "July 21 Order") [ECF No. 225], the Court: (i) approving August 5, 2020 as the date of the virtual public auction (the "Virtual Auction") for the sale of the Real Property; (ii) approving the Revised Sale Terms and the Revised Notice of Sale; and (iii) scheduling the hearing to confirm the sale of the Real Property for August 6, 2020 at 4:00 p.m.; and upon the Virtual Auction having been conducted by the Trustee's retained brokers, Maltz Auctions, Inc. and Rosewood Realty LLC (the "Co-Brokers"), on August 5, 2020 at 11:00 a.m. in accordance with the Sale Procedures Order and the July 21 Order; and there having been five (5) Qualified Bidders pursuant to the Revised Sale Terms at the Virtual Auction; and there having been spirited bidding for Offering "C" (the bulk bid for 10 Townhouses and the Residential Building); and upon JCBD Investment Inc./Jinyu Zhang or its designee having been the successful purchaser (the "Successful Purchaser") of the Real Property with a purchase price of $28,100,000, *plus* the payment to the Trustee of the 4% Buyer's Premium in the sum of $1,124,000 and the payment to the Trustee of any and all New York State, New York City, and any other County transfer taxes (collectively, the "Purchase Price"); and upon Jiashu Xu a/k/a Chris Xu having been the second highest bidder with the second highest bid of $28,000,000; and upon the Trustee having filed with the Court an Affirmation In Support of the Order Confirming the Results of the Virtual Public Auction Conducted on August 5, 2020 for the Debtor's Real Property Free and Clear of All Liens, Claims and Encumbrances to JCBD Investment Inc./Jinyu Zhang [ECF No. 251]; and upon the hearing on the confirmation of the sale of the Real Property having been held on August 6,

2020 at 4:00 p.m. (the "Sale Confirmation Hearing"), at which Gregory Messer (CH 11 Trustee), Jacklyn Loftin & Gary Herbst (Counsel to Gregory Messer), Jeremy Sussman (US Trustee), Steven Newman (Counsel to 41-31 Haight Street Lender, LLC), Christopher Baum (Counsel to Wei Zhu), Scott Bogucki (Proposed Counsel to Creditors Committee), Ricardo Morel (Counsel to LDWS LLC, & T.8.J.LLC), Eric Snyder (Counsel to Selena Chau & Wei Kang Yang), Eloy Peral (Counsel to Selena Chau, Tu Kang Yang), Joseph Barbiere (Counsel to JCBD Investment, Inc.), John Xu & Leon Chen (JCBD Investment, Inc.), and Barry Alan Salzman (Counsel to Matthew Krepil) appeared; and upon the record of the Sale Confirmation Hearing, the transcript of which is incorporated by reference herein; and upon the transcripts of all other hearings in this case which are hereby incorporated by reference herein; and no additional notice or hearing being required; and after due deliberation and good cause appearing therefor, it is hereby FOUND AND DETERMINED THAT:

A.     The Court has subject matter jurisdiction over the Sale Procedure Order, the Motion, the July 12 Order and the relief requested therein, including without limitation, the sale of the Real Property, pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding pursuant to 28 U.S.C. §§ 157(b)(2)(A) and (N). Venue in this district is proper before the Court pursuant to 28 U.S.C. §§ 1408 and 1409.

B.     Proper, timely, adequate and sufficient notice of the Motion, the July 21 Order, the Revised Notice of Sale, the Virtual Auction and the Sale Confirmation Hearing was provided in accordance with Bankruptcy Code §§ 105 and 363 and Bankruptcy Rules 2002, 4001 and 6004, including, but not limited to, all the parties listed in paragraph 4 of the July 21 Order.

C.     In accordance with the July 21 Order, the Co-Brokers published the Revised Notice of Sale in *New York Real Estate Journal*, *New York Times*, *Real Estate Weekly*, *Epoch Times,* as

well as the *Korean Times* (with a Korean translation) and *Chinese World Journal* (with a Chinese translation) prior to the Virtual Auction.

D.    The Revised Notice of Sale was provided in accordance with Bankruptcy Code §§ 102, 363(b) and (f), and Bankruptcy Rules 2002, 4001 and 6004.

E.    In accordance with the Revised Sale Terms, the Successful Purchaser provided the Trustee with bank checks totaling $2,000,000 (the "Deposit") on August 5, 2020 in order to qualify as a bidder for the Virtual Auction.

F.    The Trustee conducted a fair and open sale process. The sale process, including the Virtual Auction, was non-collusive, duly noticed and provided a full, fair and reasonable opportunity for any entity to make an offer to purchase the Real Property, subject to, *inter alia*, the Sale Procedure Order, the July 21 Order, and the Revised Sale Terms (collectively, the "Final Sale Terms"), and the process conducted by the Trustee pursuant to the Final Sale Terms obtained the highest and best value for the Debtor's Real Property.

G.    The Successful Purchaser was selected as the successful bidder for the Debtor's Real Property at the Virtual Auction.

H.    The Trustee has demonstrated that the sale of the Real Property to the Successful Purchaser for the Purchase Price is a reasonable exercise of the Trustee's business judgment.

I.    The Official Committee of Unsecured Creditors appointed in this case (the "Committee") submits that the sale of the Real Property to the Successful Purchaser for the Purchase Price pursuant to the Final Sale Terms is in the best interests of the Debtor, its estate, and all parties in interest.

J.      The Successful Purchaser is purchasing the Real Property in good faith and is a good faith buyer within the meaning of Bankruptcy Code § 363(m) and is therefore entitled to the full protections of that provision.

K.      The Trustee shall sell the Real Property free and clear of any and all liens, or adverse claims to title, of whatever kind or nature, because one or more of the standards set forth in Bankruptcy Code § 363(f)(1)-(5) has been satisfied. Those holders of liens against the Real Property who did not object to the sale of the Real Property are deemed to have consented thereto pursuant to Bankruptcy Code § 363(f)(2), subject to the provisions of this Order, the Sale Procedures Order and the July 21 Order.

**NOW THEREFORE, IT IS HEREBY ORDERED, ADJUDGED AND DECREED THAT**:

1.      Pursuant to Bankruptcy Code §§ 363(b), (f) and (m), the Trustee is authorized to (a) sell the Real Property to the Successful Purchaser for the Purchase Price in accordance with the Revised Sale Terms and the Memorandum of Sale; and (b) execute and deliver, perform under, consummate, implement and close  pursuant to the Final Sale Terms, together with all additional instruments and documents that may be reasonably necessary, desirable, or appropriate to implement the Final Sale Terms, this Order and the sale of the Real Property. The sale of the Real Property pursuant to this Order is herein referred to as the "Sale".

2.      In accordance with the Revised Sale Terms, at the Closing of the Sale the Successful Purchaser shall deliver to the Trustee, by certified check or bank check made payable to "Gregory M. Messer, Chapter 11 Trustee" or by wire in immediately available federal funds, the Purchase Price *less* the amount of the Deposit and the Additional Deposit.

3.      The Real Property is being sold "**AS IS**" "**WHERE IS**", "**WITH ALL FAULTS**", pursuant to Bankruptcy Code § 363 and without any representations, covenants, guarantees or

warranties of any kind or nature, and free and clear of any liens, claims, interests or encumbrances of whatever kind or nature, with any liens, if any, to attach to the proceeds of sale to the extent, validity, and priority as they existed immediately prior to the actual closing on the Sale of the Real Property, and the Sale of the Real Property is subject to, among other things (a) any state of facts that an accurate survey may show; (b) any covenants, restrictions and easements of record; (c) any state of facts a physical inspection may show; (d) any building or zoning ordinances or other applicable municipal regulations and violations thereof; and (e) environmental conditions; provided however, the Real Property shall be delivered free and clear of any and all liens and vacant of lesees and tenancies, except that this Court will not order the United States Marshal's Service to evict any tenant in the Real Property, and the Trustee may use New York State process to obtain vacant possession if needed.

4.     The Trustee shall convey the Real Property to the Successful Purchaser by delivery of a quitclaim or Trustee Deed.

5.      The Trustee shall pay to the Debtor's and the estate's secured lender, 41-31 Haight Street Lender LLC (the "Lender"), and satisfy from the proceeds of the Sale, within three (3) business days after the proceeds have cleared the Trustee's account, all sums due to the Lender, on account of both the Lender's pre-petition loans to the Debtor and the Lender's post-petition loans to the Debtor's estate through and including the date of payment of such loans in such amounts as the Lender shall advise the Trustee in a written payoff letter. The Lender shall provide the Court, and counsels to the Trustee, and the Creditors Committee within 1 business day before the Closing Date (as defined below), with a breakdown of the amounts claimed to be owed, showing the total amount now claimed and the additional amounts of principal, interest, fees and related costs claimed owed over and above the $20,776,196.00 on

account of the pre-petition loans and the $2,822,420.00 on account of the post-petition loans, which amounts were approved and allowed pursuant to this Court's Second Supplemental Final Order (i) Authorizing the Trustee to obtain Post-Petition Financing and Grant Liens and Superpriority Administrative Expense Status Pursuant to 11. U.S.C. §§ 105(a), 364(c), and 364(d); (ii) Granting Replacement Liens and Rights to Adequate Protection Pursuant to 11 U.S.C. § 105 and 11 U.S.C. § 362; and (iv) Granting Related Relief, dated April 13, 2020 (ECF No. 136). The Trustee shall advise the Lender of the Closing Date of the Sale at least 3 business days prior to the date of such Closing.   The Trustee's payment to Lender shall constitute conclusive approval of the amounts owed to the Lender.

6.      All Liens shall immediately attach to the proceeds of Sale in the same validity, priority and extent as they existed on date of the Closing of the Sale; and without limiting the foregoing, the Lender shall have, and hereby has, a first priority lien on all of the proceeds of Sale of the Real Property, including, without limitation, any deposits paid at any time by or on behalf of the Successful Purchaser and/or any other bidders.

7.      The Successful Purchaser is solely responsible to pay the Co-Brokers' four (4%) percent Buyer's Premium in the amount of $1,124,000, which shall be paid from the Additional Deposit delivered to the Trustee. Notwithstanding any prior agreement or Orders of this Court or anything else whatsoever to the contrary, the Trustee and the Lender shall not be required to pay a Buyer's Premium or any other amounts whatsoever to the Co-Brokers.

8.      In accordance with the Revised Sale Terms, the Successful Purchaser has paid the estate, *via* delivery of bank checks totaling $1,934,000, an amount equal to ten (10%) percent of the bid submitted (*minus* the qualifying deposit of $2,000,000) for a total of $2,810,000, *plus* the

four (4%) percent Buyer's Premium of $1,124,000 (the "Additional Deposit") on Friday, August 7, 2020.

9.      The Successful Purchaser shall close title to the Real Property no later than Tuesday, August 25, 2020 (which is no more than twenty (20) days after the date of the Virtual Auction) (the "Closing Date"), **TIME BEING OF THE ESSENCE,** although such Closing Date may be extended by the Trustee, in his sole discretion and after consultation with the Lender and the Committee, but such extension of the Closing Date shall not be later than twenty (20) days from the original Closing Date—September 14, 2020, **TIME BEING OF THE ESSENCE**.

10.     To the extent that the Trustee, in his sole discretion after consultation with the Lender and the Committee, grants any such extension of the Closing Date, the Successful Purchaser shall provide to the Trustee prior to the original Closing Date an additional, non-refundable deposit equal to ten (10%) percent of the Purchase Price in the amount of $2,810,000 (the "Extension Deposit") and the other adjustments as set forth in the Revised Sale Terms.  The Extension Deposit shall be made by certified check or bank check made payable to "Gregory M. Messer, Chapter 11 Trustee" or by wire in immediately available federal funds and the Successful Purchaser shall receive credit against the Purchase Price for the amount of the Extension Deposit.

11.     The Successful Purchaser shall pay the Extension Deposit, and the other adjustments as set forth in the Revised Sale Terms, as of the original Closing Date, and failure to do so shall be deemed a default under the Revised Sale Terms and this Order and shall result in the Successful Purchaser's automatic forfeiture of any rights whatsoever to the Deposit, the Additional Deposit, including the Buyer's Premium, and the Extension Deposit.

12.     The Successful Purchaser shall be solely responsible for any and all real estate taxes, costs, fees and expenses incurred by the Debtor's estate after the original Closing Date

through the adjourned closing date of the Real Property and water and sewage charges will be adjusted as of the original Closing Date. The Successful Purchaser shall also be responsible for any additional interest, fees and other amounts due to the Lender and any other party asserting a Lien against the Real Property from the original Closing Date through the adjourned closing date of the Real Property.

13.    At the Trustee's discretion, the closing shall take place virtually, by mail or at the Law Office of Gregory M. Messer, 26 Court Street, Suite 2400, Brooklyn, NY 11242 (the "Closing").

14.    At or before the Closing, the Successful Purchaser shall pay any and all costs and expenses in connection with the Closing related to obtaining a survey; fee title or mortgage insurance; title company endorsement, search and escrow charges; environmental, engineering or other inspections; appraisals, reports and other costs of due diligence; and County, State, City, or other real property transfer, deed or documentary tax, or other taxes imposed upon the Sale due in connection with the transfer of the Real Property, including, but not limited to, any transfer tax imposed by New York State and/or the City of New York.

15.    The Successful Purchaser shall be responsible for the completion of any ACRIS forms, if required. The Trustee shall not be required to execute any form of title affidavit (but may in its sole and absolute discretion) and all title exceptions customarily omitted from a title policy on account of such title affidavit shall be deemed permitted exceptions.

16.    The Successful Purchaser shall be responsible for the preparation of all Closing documents required including, but not limited to, transfer tax forms.

17.    Time is of the essence as to the Successful Purchaser's obligation to timely close on the Sale on the Closing Date and the failure of the Successful Purchaser to close for any or no

reason whatsoever, including, without limitation, its failure to pay the balance of the Purchase Price on the Closing Date, will result in an immediate forfeiture of the Deposit, the Additional Deposit, including the Buyer's Premium, and any Extension Deposit and the termination of the right to acquire the Real Property.

18.     The amount of any tax refund and/or tax credit including, but not limited to, any New York State Real Property Tax Law Section 421-a tax benefits (the "421-a Tax Benefits")(collectively the "Tax Benefits"), issued with respect to any portion of the fiscal tax year in which the Closing occurs shall be apportioned between the Trustee, on behalf of the Debtor's estate, and the Successful Purchaser as of the Closing Date based on the parties' respective periods of ownership of the Premises during said fiscal tax year.  The amount of any Tax Benefits issued for any fiscal tax year occurring prior to the fiscal tax year in which the Closing occurs shall belong to the Trustee, on behalf of the Debtor's estate.  The amount of any Tax Benefits issued for any fiscal tax year occurring after the fiscal tax year in which the Closing occurs shall belong to Successful Purchaser. The costs, expenses and fees to obtain the 421-a Tax Benefits shall be evenly split between the Trustee, on behalf of the Debtor's estate, and the Successful Purchaser up to the amount of $50,000. In the event the costs, expenses and fees exceed $50,000 the parties will confer as to the sharing of those costs, expenses and fees over $50,000. The Trustee, on behalf of the Debtor's estate, and the Successful Purchaser shall cooperate with each other in connection with obtaining the 421-a Tax Benefits and as necessary execute such documents reasonably requested and needed in connection with the 421-a Tax Benefits.

19.     The Successful Purchaser has acknowledged and agreed that: (i) Kensington Vanguard National Land Services (the "Title Company") is ready to issue an owner's title

insurance property for the Real Property;  (ii) the Title Company has examined title and issued a Certificate of Title for File No. 530843-S-NY-MR-RA last updated on dated March 9, 2019 (hereinafter either the "Certificate of Title" or the "Title Report"); (iii) he has examined the Title Report and there are no title issues preventing the Successful Purchaser from Closing on the sale of the Real Property; and (iv) the Successful Purchaser hereby waives, any title issues in connection with the sale of the Real Property.

20.    If the Trustee is unable to deliver any of the Real Property in accordance with this Order and the Revised Sale Terms for any reason whatsoever, the Trustee's and the Co-Brokers' only obligation will be to refund the Deposit, the Additional Deposit, including the Buyer's Premium, and any Extension Deposit, without interest, to the Successful Purchaser and upon such refund, the Successful Purchaser shall have no claim or recourse against the Co-Brokers, the Trustee, his retained professionals and/or the estate and shall have no further rights under this Order, the Revised Sale Terms or Memorandum of Sale.

21.    The Successful Purchaser has acted without collusion and is a good faith purchaser of the Real Property and is hereby granted and is entitled to the protections provided to a good faith purchaser under Bankruptcy Code § 363(m). Pursuant to Bankruptcy Code § 363(m), if any or all of the provisions of this Order are hereafter reversed, modified or vacated by a subsequent order of the Bankruptcy Court or any other court, such reversal, modification, or vacatur shall not affect the validity and enforceability of any sale, transfer or assignment or obligation or right granted pursuant to the terms of this Order (unless stayed pending appeal), and notwithstanding any reversal, modification or vacatur, any sale, transfer, or assignment shall be governed in all respects by the original provisions of this Order.

22.     This Court shall retain jurisdiction to: (i) interpret and construe and enforce the provisions of this Order and any ancillary documents in connection therewith; (ii) hear and determine any disputes arising under or related to the foregoing; and (iii) enforce the provision of this Order.

23.     Notwithstanding Bankruptcy Rule 6004(h), this Order shall not be stayed for fourteen (14) days after the entry hereof and shall be effective and enforceable immediately upon entry hereof.



**Dated: August 13, 2020**
**Brooklyn, New York**

_Nancy Hershey Lord_
**Nancy Hershey Lord**
**United States Bankruptcy Judge**