UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------------x
In re

    41-23 HAIGHT STREET REALTY INC.,

                     Debtor.

Chapter 11

Case No. 19-43441(NHL)

------------------------------------------------------------------------x

## STIPULATION AND ORDER:
### (I) FIXING AND ALLOWING THE CLAIMS OF 41-31 HAIGHT STREET LENDER LLC; (II) AUTHORIZING THE CHAPTER 11 TRUSTEE TO PAY AND SATISFY IN FULL LENDER'S CLAIM FROM SALE PROCEEDS; AND <u>(III) GRANTING RELATED RELIEF</u>

THIS STIPULATION AND ORDER: (I) FIXING AND ALLOWING THE CLAIMS OF 41-31 HAIGHT STREET LENDER LLC; (II) AUTHORIZING THE CHAPTER 11 TRUSTEE TO PAY AND SATISFY IN FULL LENDER'S CLAIM FROM SALE PROCEEDS; AND (III) GRANTING RELATED RELIEF (this "**Stipulation**"), dated as of August 26, 2020, by and among (i) Gregory Messer, as the Chapter 11 Trustee (the "**Trustee**") of 41-23 Haight Street Realty Inc., a/k/a 41-23 Haight Realty Inc. (the "**Debtor**"), (ii) the Official Committee of Unsecured Creditors of the Debtor (the "**Committee**"), by and through its counsel, Gleichenhaus, Marchese & Weishaar, PC, and (iii) 41-31 Haight Street Lender LLC (the "**Lender**").

## R E C I T A L S:

**WHEREAS** on June 4, 2019 ("**Petition Date**"), an involuntary petition pursuant to Chapter 11 of the Bankruptcy Code was filed in the United States Bankruptcy Court for the Eastern District of New York ("**Court**"), against the Debtor by petitioning creditors, Wen Mei Wang, Xian Kang Zhang, Yu Qing Wang, Matthew Krepil, T.8.J. LLC and LDWS LLC (ECF Nos. 1 (Involuntary Petition); 13 (Joinder of Matthew Krepil); 15 (Joinder of LDWS LLC and T.8.J. LLC));

**WHEREAS**, on June 30, 2019, a motion to dismiss this case was filed on behalf of the Debtor (ECF No. 6);

**WHEREAS**, on July 22, 2019, the Lender filed a motion to appoint a Chapter 11 Trustee (ECF No. 7);

**WHEREAS**, on August 8, 2019, the Court entered an Order for Relief and Order to File Schedules and Other Documents (ECF No. 16);

1

**WHEREAS**, on August 12, 2019, the Court entered an Order Granting Motion for Appointment of Chapter 11 Trustee (ECF No. 20). By Notice of Appointment dated August 12, 2019, Gregory Messer was appointed as Chapter 11 Trustee of the Debtor's estate (ECF No. ~~22~~ *18 (NHL)*). By Order dated August 12, 2019, the Court approved the appointment of Gregory Messer as Chapter 11 Trustee of the Debtor's estate (ECF No. 21);

**WHEREAS**, on July 17, 2020 the United States Trustee appointed the Committee (ECF No. 221);

**WHEREAS**, the Lender holds both pre-petition secured claims and post-petition secured claims (collectively, the "**Secured Claims**") against the Debtor and its estate, which claims are secured by mortgages and liens on all of the Debtor's and its estate's assets, including, without limitation, the Debtor's real property located in Queens County identified as Block 5063, Lots 44, 45, 46, 47, 48, 49, 50, 51, 52, 53 and 55 Haight Street, Flushing, New York 11355 (collectively referred to herein as the "**Real Property**") and all proceeds thereof. Lender's Secured Claims were allowed and its liens were approved pursuant to and as set forth in several orders entered by the Court in connection with the authorization of post-petition financing. Such orders include, without, limitation:

> (x) the Final Order: (i) Authorizing The Trustee To Obtain Post-Petition Financing And Grant Liens And Superpriority Administrative Expense Status Pursuant To 11 U.S.C. §§ 105(A), 364(C) And 364(D); (ii) Granting Replacement Liens And Rights To Adequate Protection Pursuant To 11 U.S.C. §§ 105 And 361; (iii) Modifying The Automatic Stay Pursuant To 11 U.S.C. § 362; And (iv) Granting Related Relief, dated September 20, 2019 (ECF No. 68) (the "**Initial Final Financing Order**");

> (y) Supplemental Final Order: (i) Authorizing The Trustee To Obtain Post-Petition Financing And Grant Liens And Superpriority Administrative Expense Status Pursuant To 11 U.S.C. §§ 105(A), 364(C) And 364(D); (ii) Granting Replacement Liens And Rights To Adequate Protection Pursuant To 11 U.S.C. §§ 105 And 361; (iii) Modifying The Automatic Stay Pursuant To 11 U.S.C. § 362; And (iv) Granting Related Relief, dated December 4, 2019 (ECF No. 101) (the "**Supplemental Final Financing Order**"); and

> (z) the Second Supplemental Final Order: (i) Authorizing The Trustee To Obtain Post-Petition Financing And Grant Liens And Superpriority Administrative Expense Status Pursuant To 11 U.S.C. §§ 105(A), 364(C) And 364(D); (ii) Granting Replacement Liens And Rights To Adequate Protection Pursuant To 11 U.S.C. §§ 105 And 361; (iii) Modifying The Automatic Stay Pursuant To 11 U.S.C. § 362; And (iv) Granting Related Relief, dated April 13, 2020 (ECF No. 136) (the "**Second Supplemental Final Financing Order**"). The Initial Final Financing Order, the Supplemental Final Financing Order, and the Second Supplemental Final Financing Order are collectively referred to herein as the "**Final Financing Orders**". Each of the Final Financing Orders is hereby incorporated herein by reference hereby. Capitalized terms used herein but not

otherwise defined herein shall have the meaning given to such terms in the Second Supplemental Financing Order;

**WHEREAS**, in an Order entered on December 12, 2019, the Court approved the retention of Maltz Auctions, Inc. d/b/a Maltz Auctions and Rosewood Realty Group as co-real estate brokers (the "**Co-Brokers**") to sell the Debtor's Real Property (ECF No. 105);

**WHEREAS**, pursuant to an Order entered on March 30, 2020 (ECF No. 126), the Court, among other things, (i) authorized the Trustee to proceed with the virtual public auction for the sale of the Real Property; (ii) approved the Terms and Conditions of Sale; and (iii) directed the Trustee to pay the Lender all amounts owed on account of its pre-petition claims and post-petition claims, as set forth in a payoff letter to be delivered to the Trustee, within 3 business days after the proceeds of sale clear the Trustee's account (the "**Sale Procedure Order**");

**WHEREAS**, the Co-Brokers conducted an auction of the Real Property on August 5, 2020 and the Trustee determined that the collective bid submitted by JCBD Investment Inc. and Jinyu Zhang (collectively, together with their permitted designee, being referred to herein as the "**Successful Purchaser**") was the highest and best bid for the Real Property;

**WHEREAS**, pursuant to an order dated August 13, 2020 the Court approved the Trustee's sale of the Property to the Successful Purchaser, directed the Trustee to pay to the Lender all Obligations owed on account of its pre-petition loans to the Debtor and post-petition loans to the Debtor's Estate through and including the date of payments of such loans in such amounts as the Lender shall advise the Trustee in a written payoff letter, and granted related relief (ECF. No. 262) (the "**Sale Approval Order**"); and

**WHEREAS**, notwithstanding the Final Financing Orders, the Sale Procedure Order and the Sale Approval Order, the Committee and the Lender have voluntarily reached a resolution on the Lender's claims whereby the Lender has agreed to accept an allowed claim and a distribution fixed in an amount less than the full amount of the Lender's allowed secured claims in satisfaction of all Obligations, so as to provide a post-confirmation fund for the Committee to pursue causes of action against and related to the Debtor's current and former principals; and

**WHEREAS**, the Lender, the Committee and the Trustee desire to consent to the above described settlement among the Committee, the Lender, the Trustee and the Debtor's estate, subject to the terms of this Stipulation and also to amicably and finally resolve and settle any and all disputes and issues whatsoever among them pursuant to the terms of this Stipulation.

**NOW, THEREFORE**, in consideration of the mutual covenants herein contained and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, and intending to be legally bound, the parties hereto do hereby covenant and agree as follows:

    1.    **Affirmation of Recitals**.    The Trustee, the Committee and the Lender hereby ratify and confirm the facts in the Recitals set forth above, which Recitals are hereby incorporated by reference and shall have the same force and effect as if in the body of this Stipulation.

2. **Fixing and Allowance of Lender's Claims**.

(a) As of the close of business on September 14, 2020, the aggregate amount owed by the Debtor and the Estate to the Lender under and in connection with the Pre-Petition Loan Documents is $22,932,418.19[1], plus all default interest accruing thereon, and all fees, costs, expenses, and other charges accrued, accruing, or chargeable with respect thereto (collectively, "**Pre-Petition Obligations**"). The Pre-Petition Obligations constitute allowed legal, valid, binding, enforceable and non-avoidable obligations of the Debtor and the Estate, and are not subject to any offset, defense, counterclaim, avoidance, recharacterization or subordination pursuant to the Bankruptcy Code or any other applicable law, and neither the Estate nor the Trustee nor the Committee will assert any claim, counterclaim, setoff or defense of any kind, nature or description which would in any way affect the validity, amount, enforceability and non-avoidability of any of the Pre-Petition Obligations.

(b) As of the close of business on September 14, 2020, the aggregate amount of the Post-Petition Obligations (as defined in the Second Supplemental Financing Order) owed by the Debtor and the Estate to the Lender under and in connection with the Note (as defined in the Second Supplemental Financing Order), the Mortgage (as defined in the Second Supplemental Financing Order) and all of the other post-petition Loan Documents (as defined in the Second Supplemental Financing Order) is $3,442,582.99[2], plus all interest accruing thereon, and all fees, costs, expenses, and other charges accrued, accruing, or chargeable with respect thereto.

(c) The Obligations (as defined in the Second Supplemental Financing Order) constitute allowed legal, valid, binding, enforceable and non-avoidable obligations of the Debtor and the Estate, and are not subject to any offset, recoupment, defense, counterclaim, deduction, avoidance, claim, recharacterization or subordination of any kind or nature, whether pursuant to the Bankruptcy Code or any other applicable law, and subject to the Mutual Releases set forth in paragraph 5 below, neither the Estate nor the Trustee nor the Committee possess or will assert any claim, counterclaim, setoff or defense of any kind, nature or description which would in any way affect the validity, amount, enforceability and non-avoidability of any of the Obligations.

(d) As of the date hereof, the Obligations are fully secured pursuant to the Pre-Petition Loan Documents and the Loan Documents by valid, perfected, enforceable and non-avoidable first priority security interests and liens granted by the Debtor and/or the Trustee to

---

[1] This sum includes attorneys' fees and expenses and protective advances through July 31, 2020. Additional attorneys' fees and expenses and protective advances have accrued and continue to accrue after July 31, 2020 and such additional amounts shall be added to the above-described sum and the amount of the Pre-Petition Obligations.

[2] This sum includes attorneys' fees and expenses and protective advances through July 31, 2020. Additional attorneys' fees and expenses and protective advances have accrued and continue to accrue after July 31, 2020 and such additional amounts shall be added to the above-described sum and the amount of the Post-Petition Obligations.

4

the Lender upon all of the collateral and mortgaged property described in the Pre-Petition Loan Documents and in the Loan Documents and all rents, issues, profits, proceeds, and products thereof, whether prior to or after the Petition Date, including, without limitation, any proceeds from the sale of the Real Property and any deposits by the Successful Purchaser and by any persons, whether before or after the date hereof, in connection with the sale at any time of the Real Property (collectively, together with any other property of the Debtor's Estate (as used herein "**Estate**" shall include all items included under Section 541 of the Bankruptcy Code) in which a mortgage, security interest or lien was granted to the Lender (or any predecessor in interest) at any time, whether prior to or after the Petition Date, being referred to herein as the "**Collateral**"), which liens of the Lender are senior to all other liens on the Collateral. The acknowledgment and agreement by the Trustee and the Committee of the Obligations and the liens, rights, priorities and protections granted to or in favor of the Lender as set forth herein and in the Pre-Petition Loan Documents and the Loan Documents shall constitute a proof of claim on behalf of the Lender in this case and the Court hereby orders that the Lender shall not be required to file any further proof of claim or further proof of amounts owed in this case.

3. **Payment to Lender**.

(a) The Trustee shall pay to the Lender, and satisfy in full from the proceeds of the sale of the Real Property, within three (3) business days after the proceeds have cleared the Trustee's account, all sums due to the Lender, (i) on account of the Post-Petition Obligations and (ii) on account of the Pre-Petition Obligations through and including the date of the Trustee's payment of all the Obligations, in such amount equal to the sum of (x) the amount that the Lender shall advise the attorneys and the Trustee as due and owing in a written payoff letter, less (y) the sum of $425,000.00. The Trustee shall advise the Lender of the closing date of the sale at least 3 business days prior to the date of such closing date. The Trustee's payment to Lender shall constitute conclusive approval of the amounts owed to the Lender. The amounts paid to the Lender shall be paid by wire transfer pursuant to wire instructions that the Lender shall deliver to the Trustee.

(b) The Trustee shall set aside the $425,000 sum, which would otherwise have been paid to the Lender but for the Lender's agreement in Paragraph 3(a) above to voluntarily reduce the amount of its distribution on account of the Obligations, solely for the Estate's payment of the Committee's post-confirmation investigation of claims against and related to the Debtor's current and former principals.

(c) In connection with calculating the amount of the Obligations owed to the Lender, the parties hereby agree that:

(i) The maturity date of the Note is hereby extended from July 31, 2020 to September 30, 2020 (the "**Extended Maturity Date**");

(ii) Interest on all Pre-Petition Obligations has and will continue to accrue at the default rate set forth in the Pre-Petition Loan Documents through and including the date that the Pre-Petition Obligations are paid in full; and

5

    (iii) Interest on all Post-Petition Obligations has and will continue to accrue at the non-default rate set forth in the post-petition Loan Documents through and including the date that is earlier of (x) the date that all Post-Petition Obligations are paid in full or (y) the Extended Maturity Date set forth hereinabove; <u>provided, however</u>,  if for any reason whatsoever the Post-Petition Obligations are actually not paid in full to the Lender by the Extended Maturity Date, then interest will accrue at the default rate set forth in the post-petition Loan Documents from the Extended Maturity Date through and including the date that all Post-Petition Obligations are paid in full.

  4. **Representations and Warranties**. In order to induce the Lender to enter into this Stipulation, the Trustee and the Committee represent and warrant to the Lender as follows, all of which representations and warranties shall survive the execution of this Stipulation:

   4.1 **Due Execution of Stipulation**.  This Stipulation has been duly executed and delivered by the Trustee and the Committee and constitutes the legal, valid and binding obligations of the Trustee and the Committee enforceable in accordance with its terms. Without limiting the foregoing, this Stipulation has been duly authorized by all necessary Committee action and the person executing and delivering this Stipulation on behalf of Trustee and the Committee has been duly authorized and empowered to do so.

   4.2 **Benefitted From This Stipulation**. The Estate, the Trustee and the Committee have each derived direct and substantial benefits from this Stipulation and the transactions contemplated by this Stipulation.

  5. **Mutual Releases**.

   5.1 **Release of Claims**.

    (a) **Release by Estate, Trustee, and Committee**.  The Estate, the Trustee, and the Committee (solely on behalf of itself and not on behalf of each of its members) (collectively, the "**Estate Releasing Parties**"), does hereby release, discharge and acquit the Lender, and Lender's past, present and future officers, directors, shareholders, agents, employees, professionals, predecessors, successors, assigns and affiliates, and their respective successors, heirs and assigns (collectively, the "**Lender Released Parties**"), of and from any and all rights, claims, demands, obligations, liabilities, indebtedness, breaches of contract, breaches of duty or any relationship, acts, omissions, misfeasance, malfeasance, causes of action, promises, damages, costs, losses and expenses of every kind, nature, description or character, and irrespective of how, why, or by reason of what facts, which could or may be claimed to exist, whether known or unknown, matured or contingent, suspected or unsuspected, liquidated or unliquidated, claimed or unclaimed, whether based on contract, tort, breach of any duty, or other legal or equitable theory of recovery, each as though fully set forth herein at length, from the beginning of the world to the date of execution of this Stipulation (collectively, the "**Estate Released Claims**"), based on any matter or thing whatsoever, including, without limitation, any matters which directly or indirectly

6

in any way arise out of, are connected with or relate to the Pre-Petition Loan Documents, the post-petition Loan Documents, the Obligations, the Real Property or any Collateral.

(b) **Release by Lender**. Conditioned solely upon the Lender's timely indefeasible receipt of payment in full on its allowed claims pursuant to the Sale Procedures Order, the Sale Approval Order and as set forth herein, the Lender is hereby deemed, effective as of the date of its receipt of indefeasible payment in full of its claims, to release, discharge and acquit (i) the Estate, (ii) the Trustee and his professionals, and (iii) the Committee and its professionals (collectively, the "**Estate Released Parties**"), of and from any and all rights, claims, demands, obligations, liabilities, indebtedness, breaches of contract, breaches of duty or any relationship, acts, omissions, misfeasance, malfeasance, causes of action, promises, damages, costs, losses and expenses of every kind, nature, description or character, and irrespective of how, why, or by reason of what facts, which could or may be claimed to exist, whether known or unknown, matured or contingent, suspected or unsuspected, liquidated or unliquidated, claimed or unclaimed, whether based on contract, tort, breach of any duty, or other legal or equitable theory of recovery, each as though fully set forth herein at length, from the beginning of the world to the date of execution of this Stipulation (collectively, the "**Lender Released Claims**"), based on any matter or thing whatsoever, including, without limitation, any matters which directly or indirectly in any way arise out of, are connected with or relate to the Pre-Petition Loan Documents, the post-petition Loan Documents, the Obligations, the Real Property or any Collateral.

5.2 **Waivers of Unknown Claims**. (a) As to all matters being released by the Estate Releasing Parties pursuant to the provisions hereof, the Estate Releasing Parties expressly acknowledge that the release of the Estate Released Claims set forth in Paragraph 5.1(a) hereof applies to all Estate Released Claims whether or not known to, or suspected by the Estate Releasing Parties to exist. Each of the Estate Releasing Parties acknowledges and agrees that the facts with respect to which the release of the Estate Released Claims contained in Paragraph 5.1(a) is executed may hereafter be found to be different from the facts now believed by the Estate Releasing Parties to be true, and each of the Estate Releasing Parties expressly accepts and assumes the risk of all such possible differences, and agrees that the release of Estate Released Claims contained in this Paragraph shall be and remain effective notwithstanding any such difference in facts.

(b) As to all matters being released by the Lender pursuant to the provisions hereof, the Lender expressly acknowledge that the release of the Lender Released Claims set forth in Paragraph 5.1(b) hereof applies to all Lender Released Claims whether or not known to, or suspected by the Lender to exist. The Lender acknowledges and agrees that the facts with respect to which the release of the Lender Released Claims contained in Paragraph 5.1(b) is executed may hereafter be found to be different from the facts now believed by the Lender to be true, and the Lender expressly accepts and assumes the risk of all such possible differences, and agrees that the release of Lender Released Claims contained in this Paragraph shall be and remain effective notwithstanding any such difference in facts.

5.3 **No Assignment**. Each of the Estate Releasing Parties warrants and represents to the Lender that none of the Estate Releasing Parties have sold, assigned, transferred, conveyed or otherwise disposed of any Estate Released Claims which are the subject of Paragraph

5.1(a). The Lender warrants and represents to the Estate Releasing Parties that the Lender has not sold, assigned, transferred, conveyed or otherwise disposed of any Lender Released Claims which are the subject of Paragraph 5.1(b).

    5.4  **Documents Regarding Insiders**.  The Lender will use reasonable efforts to provide to counsel for the Committee copies of all non-privileged documents in its possession concerning the assets and liabilities of any present or former insiders of the Debtors that the Lender received from G4 18171, LLC, within thirty days after the date the Obligations have been paid to Lender pursuant to Paragraph 3(a) above.

    6.  **Miscellaneous**.

    (a)  **Further Instruments**. The parties hereto shall, whenever and as often as they shall be requested to do so by the Lender, promptly cause to be executed, acknowledged or delivered any and all such further instruments and documents as may be necessary or desirable, in the sole discretion of the Lender, in order to carry out the intent and purpose of this Stipulation.

    (b)  **Written Waiver Only**. No waiver by the Lender of any of its rights or remedies in connection with any Loan Documents, this Stipulation or otherwise shall be effective unless such waiver is in writing and signed and delivered by the Lender. Without limiting the generality of the preceding sentence, nothing contained in this Stipulation nor any delay or omission by the Lender in exercising or enforcing any of its rights and remedies in connection with the Loan Documents or this Stipulation constitutes or shall be construed as a waiver by the Lender of: (i) any defaults or any other breach or default by any of the Obligors under any of the Loan Documents; or (ii) any of Lender's rights or remedies in connection with the First Loan or the Second Loan any of the provisions of any of the Loan Documents, this Stipulation or otherwise.

    (c)  **Governing Law**. This Stipulation shall be governed by and construed and enforced in accordance with the internal laws of the State of New York, without regard to the law on conflicts of law.

    (d)  **Relationship of Parties**. Nothing contained in this Stipulation or any of the Loan Documents constitutes or shall be construed as the formation of a partnership, joint venture, tenancy-in-common, or any other form of co-ownership, or the creation of any confidential or fiduciary relationship of any kind between the Lender, on the one hand, and any of the Estate, the Trustee or Committee and/or any other person or entity on the other hand.

    (e)  **Descriptive Headings; Interpretation**. The headings to paragraphs of this Stipulation are for convenient reference only, do not in any way limit or amplify the terms of this Stipulation, and shall not be used in interpreting this Stipulation. For purposes of this Stipulation: (i) the term "including" shall be deemed to mean "including, without limitation,"; (ii) the term "person" means any natural person or any entity, including any corporation, partnership, joint venture, trust, limited liability company, unincorporated organization or association, or trustee; provided, however, that for the avoidance of any doubt, any reference to the Official

Committee of Unsecured Creditors or the Committee only shall not include or be deemed to mean any of its individual members; and (iii) whenever the context of this Stipulation reasonably requires, all words used in the singular shall be deemed to have been used in the plural, and the neuter gender shall be deemed to include the masculine and feminine gender, and vice versa. This Stipulation has been prepared and drafted through a joint effort of the parties hereto and, therefore it shall not be construed against any of the parties as the person who prepared or drafted this Stipulation.

(f)  **Notices**. All notices and other communications provided for in this Stipulation shall be in writing and shall be given by Federal Express or hand delivery:

If to Lender, at:

>41-31 Haight Street Lender LLC
>100 Park Avenue, Suite 2305
>New York, New York 10012
>Attn: Jason S. Leibowitz, Esq.
>
>with a copy to:
>
>Katsky Korins LLP
>605 Third Avenue, 16th Floor
>New York, New York 10158
>Attn.: Steven H. Newman, Esq.

If to the Trustee, at:

>Gregory Messer, Esq.
>26 Court Street, Suite 2400
>Brooklyn, New York 11242
>
>
>with a copy to:
>
>LaMonica Herbst & Maniscalco LLP
>33058 Jersusalem Avenue
>Wantagh, New York 11793
>Attn.: Gary Herbst, Esq.

If to the Committee, at:

>Gleichenhaus, Marchese & Weishaar, PC
>43 Court Street
>930 Convention Tower

9

>Buffalo, New York 14202
>Attn. Scott Bogucki, Esq.

Notices shall be deemed given when sent, if by hand, and one (1) business day thereafter, if by Federal Express.

(g) **Counterparts, Etc**. This Stipulation may be executed in any number of counterparts so long as each signatory hereto executes at least one such counterpart. Each such counterpart shall constitute one original, but all such counterparts taken together shall constitute one and the same instrument. This Stipulation may be executed by electronic signatures, including without limitation, by PDF, and all electronic signatures shall have the same force and effect as an original signature.

(h) **Subject to Bankruptcy Court Approval**. This Stipulation is subject to the Bankruptcy Court so-ordering this Stipulation. If this Stipulation is not "So-Ordered" by the Bankruptcy Court then this Stipulation shall be void ab initio.

(i) **Successors and Assigns**. This Stipulation shall inure to the benefit of any successors and assigns of the parties hereto.

(j) **Incorporation into Chapter 11 Plan**. The terms of this Stipulation shall be incorporated in their entirety into any proposed chapter 11 plan of reorganization or liquidation filed in this case.

[*Stipulation and Order continues on the following page*]

(k)     **Jurisdiction**.  To the fullest extent provided by law, the Bankruptcy Court for the Eastern District of New York shall retain exclusive jurisdiction over this Stipulation, including, without limitation, jurisdiction to resolve any and all controversies, suits, and issues that may arise in connection with the Stipulation.

**IN WITNESS WHEREOF**, the Trustee, The Committee and the Lender have executed and delivered this Stipulation on the date first set forth above.

**GREGORY MESSER, as Chapter 11 Trustee of 41-31 Haight Street Realty a/k/a 41-23 Haight Realty Inc.**

/s/ Gregory Messer
Name:  Gregory Messer
Title:    Trustee

**OFFCIAL COMMITTEE OF UNSECURED CREDITORS OF 41-31 HAIGHT STREET REALTY A/K/A 41-23 HAIGHT REALTY INC.**

By :          /s/ Scott J. Bogucki
Name:  Scott J. Bogucki
Title:    Counsel to the Committee

**41-23 HAIGHT STREET LENDER LLC**

By:          /s/ Jason Leibowitz
Name:  Jason Leibowitz
Title:    Authorized Signatory

This Stipulation is **SO ORDERED**, *and it is further ORDERED, that to the extent that there is an inconsistency between this Stipulation and the Order Supplementing and Approving the Stipulation [ECF No. 310] (the "Order"), the Order will govern. (NHL)*

**Dated: September 24, 2020**
       **Brooklyn, New York**

*Nancy Hershey Lord* (signature)

**Nancy Hershey Lord**
**United States Bankruptcy Judge**