**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF NEW YORK**

---

In re:                                                      **Chapter 11**

   **41-23 HAIGHT REALTY INC.,**                      **No. 19-43441-nhl**
   **a/k/a 41-23 HAIGHT STREET REALTY, INC.,**

                         **Debtor.**       **Hon. Nancy Hershey Lord**

---

## <u>TRUSTEE'S FIRST AMENDED CHAPTER 11 PLAN OF LIQUIDATION</u>

**LAMONICA HERBST & MANISCALCO, LLP**
*Counsel to Gregory Messer, as Chapter 11 Trustee*
3305 Jerusalem Avenue, Suite 201
Wantagh, New York 11793

Gary F. Herbst, Esq.
Jacqulyn Loftin, Esq.

# TABLE OF CONTENTS

Page

ARTICLE I      DEFINITIONS............................................................................1

ARTICLE II     CLASSIFICATION OF CLAIMS AND INTERESTS .....................................11

ARTICLE III    TREATMENT OF CLASSES ..........................................................13

ARTICLE IV   IDENTIFICATION OF UNIMPAIRED CLAIMS UNDER THE PLAN .........17

ARTICLE V    CONDITIONS PRECEDENT TO CONFIRMATION OF THE PLAN AND THE EFFECTIVE DATE ..........................................................18

ARTICLE VI   EXECUTION AND IMPLEMENTATION OF PLAN.....................................19

ARTICLE VII  AMENDMENTS AND MODIFICATIONS .....................................22

ARTICLE VIII EXECUTORY CONTRACTS AND UNEXPIRED LEASES .........................23

ARTICLE IX   EFFECT OF CONFIRMATION; VESTING OF PROPERTY; INJUNCTION.........................................................................24

ARTICLE X    CLAIMS MATTERS....................................................................28

ARTICLE XI   DUTIES AND RIGHTS OF PLAN ADMINISTRATOR AND THE COMMITTEE.......................................................................31

ARTICLE XII  UNCLAIMED DISTRIBUTIONS .................................................36

ARTICLE XIII RETENTION OF JURISDICTION...............................................38

ARTICLE XIV GENERAL PROVISIONS .............................................................40

**LaMONICA HERBST & MANISCALCO, LLP**
*Counsel to Gregory Messer, as Chapter 11 Trustee*
3305 Jerusalem Avenue
Wantagh, New York 11793
Telephone: (516) 826-6500
Gary F. Herbst, Esq.
Jacqulyn Loftin, Esq.
Adam P. Wofse, Esq.

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re: | Chapter 11 |
| 41-23 HAIGHT REALTY INC., <br> a/k/a 41-23 HAIGHT STREET REALTY, INC., | No. 19-43441-nhl |
| Debtor. | |

## TRUSTEE'S CHAPTER 11 PLAN OF LIQUIDATION

The following Chapter 11 Plan of Liquidation dated February 25, 2021 is hereby proposed by Gregory Messer, solely in his capacity as Chapter 11 Trustee of the estate of 41-23 Haight Realty Inc. a/k/a 41-23 Haight Street Realty, Inc., by his undersigned counsel, pursuant to Chapter 11 of Title 11 of the United States Code.

### ARTICLE I

### DEFINITIONS

For purposes of this Plan, the following terms have the meanings set forth below with the meanings to be equally applicable to the singular and plural forms of each term defined, unless a different meaning is clearly defined herein. Terms used in this Plan that are defined in the Bankruptcy Code will have the meaning ascribed to them therein.

1.01    "Administrative Expense" means any cost or expense of the administration of the Debtor's Chapter 11 case entitled to priority in payment in accordance with the provisions of sections 503(b), 507(a), and 507(b) of the Bankruptcy Code, or as may be allowed by Final Order,

including, without limitation: (a) the actual and necessary costs and expenses of preserving the Debtor's Estate (other than such Claims or portions thereof which, by their express terms, are not due or payable by the Effective Date); (b) all allowances of compensation for legal or other services or reimbursement of costs and expenses under applicable sections of the Bankruptcy Code or otherwise allowed by a Final Order of the Bankruptcy Court; and (c) any indebtedness or obligations incurred or assumed by the Trustee during the pendency of this Chapter 11 case. To the extent permitted under section 506(b) of the Bankruptcy Code, an Administrative Expense includes unpaid interest and any reasonable unpaid fees, costs, or charges provided for under the agreements under which that Administrative Expense arose.

1.02    "Allowed Administrative Expense" means any Administrative Expense, or portion thereof, which has been allowed by Final Order of the Bankruptcy Court.

1.03    "Allowed Claim" means a Claim, other than an Administrative Expense, that is: (a) set forth in a proof of Claim timely and properly filed in this Chapter 11 case on or before the Bar Date, or as established by applicable rule or statute, as the last day for filing such proof of Claim, or late filed with leave of the Bankruptcy Court after notice and opportunity for hearing having been given, and as to which no objection to the allowance thereof is filed within the time fixed by the Bankruptcy Court to object to such proof of Claim; (b) determined to be allowed by Final Order of the Bankruptcy Court, or (c) an amount of that Claim that the Trustee agrees to in a writing signed by the Trustee, with the consent of the Committee, and the Holder of that Claim. To the extent permitted under section 506(b) of the Bankruptcy Code, an Allowed Claim shall include unpaid interest on such Claim and any reasonable unpaid fees, costs, or charges provided for under the agreements under which such Claim arose.

1.04    "<u>Allowed Fee Claim</u>" means all or that portion of an Allowed Claim under an applicable provision of the Bankruptcy Code or otherwise allowed by the Bankruptcy Court, for allowance of compensation and reimbursement of expenses to the Trustee, the Committee, or his/their professionals in this Chapter 11 case

1.05    "<u>Allowed Priority Claim</u>" means all or that portion of an Allowed Claim entitled to priority under sections 507(a)(3), (4), (5), and (7) of the Bankruptcy Code. Except as may be allowed by the Bankruptcy Court in the case of an (a) Allowed Priority Tax Claim under section 507(a)(8) of the Bankruptcy Code (any interest on such Claim which accrued after the entry of the Order for Relief, shall be part of the Allowed Priority Claim), or (b) Allowed Fee Claim.

1.06    "<u>Allowed Priority Tax Claim</u>" means any Allowed Claim, or portion thereof, except an Administrative Expense, that is entitled to priority in payment pursuant to section 507(a)(8) of the Bankruptcy Code.

1.07    "<u>Allowed Secured Claim</u>" means that portion of an Allowed Claim that is secured by a valid and perfected lien on property of the Debtor, to the extent of the value of the Debtor's interest in such property of the Debtor in accordance with section 506(a) of the Bankruptcy Code, together with interest, fees, costs, expenses, and charges accrued on or after the entry of the Order for Relief in accordance with section 506(b) of the Bankruptcy Code.

1.08    "<u>Allowed Unsecured Claim</u>" means any Allowed Claim, or portion thereof, which is not an Allowed Administrative Expense Claim, an Allowed Fee Claim, an Allowed Secured Claim, an Allowed Priority Tax Claim, or an Allowed Priority Claim.

1.09    "<u>Assigned Claims</u>" means those claims and causes of action of the estate under, *inter alia*, sections 510, 542, 543, 544, 545, 546, 547, 548, 549, and 550 and/or such other claims or causes of action under State or Federal law that may be brought by or on behalf of the Debtor

or the Estate, against any insider, as defined under the Bankruptcy Code or at law, or against any entity, third party, or parties, whether in this Chapter 11 Case, other cases pending under the Bankruptcy Code, or proceedings commenced pursuant to other State or Federal law.

1.10    "Bankruptcy Code" means Title 11 of the United States Code, and any amendments thereof applicable to this Chapter 11 case and in effect on the Petition Date.

1.11    "Bankruptcy Court" means the United States District Court for the Eastern District of New York and, to the extent of any reference made by such Court pursuant to 28 U.S.C. § 157, the United States Bankruptcy Court for the Eastern District of New York or any other Court having lawful jurisdiction over this Chapter 11 case.

1.12    "Bankruptcy Rules" means the Federal Rules of Bankruptcy Procedure, and any amendments or supplements thereto, including any local bankruptcy rules or administrative orders adopted by the Bankruptcy Court.

1.13    "Bar Date" means November 20, 2019, the date by which non-government creditors were required to file a proof of Claim regarding their Claim with the Bankruptcy Court.

1.14    "Broker(s)" mean such real estate broker(s) duly employed by the Trustee and the Debtor's Estate, in connection with the Sale of the Real Property (both as defined below), pursuant to a Final Order of the Court.

1.15    "Business Day" means any day except a Saturday, Sunday, or other day on which commercial banks in the State of New York are traditionally authorized or required by law to close, or such days on which the Bankruptcy Court is closed; provided, however, that "Business Day" shall include those days commercial banks may be required by law to close pursuant to Executive Order or otherwise as a result of any force majeure, state of emergency, or other unforeseen disaster or similar occurrence.

1.16    "<u>Buyer</u>" means JBCD Investment Inc./Jinyu Zhang.

1.17    "<u>Chapter 11</u>" means Chapter 11 of the Bankruptcy Code.

1.18    "<u>Chapter 11 Case</u>" means the case under Chapter 11 of the Debtor.

1.19    "<u>Claim</u>" means a claim as defined in section 101(5) of the Bankruptcy Code, whether or not asserted against the Debtor.

1.20    "<u>Class</u>" means any class into which Claims or Interests are classified pursuant to Article II of the Plan on the Effective Date.

1.21    "<u>Committee</u>" means that certain Official Committee of Unsecured Creditors appointed by the United States Trustee for Region 2 in this Chapter 11 Case pursuant to section 1102(a) of the Bankruptcy Code [ECF No. 221, as amended, ECF No. 297].

1.22    "<u>Committee Reserve</u>" means the $425,000 that was carved out from the lien of the Haight Street Secured Lender to fund the Committee's post-Confirmation Date investigation pursuant to the Stipulation and Order: (I) Fixing and Allowing the Claims of 41-23 Haight Street Lender LLC; (II) Authorizing the Chapter 11 Trustee to Pay and Satisfy in Full Lender's Claim from Sale Proceeds; and (III) Granting Related Relief, that was so ordered by the Court on September 24, 2020 (the "<u>Haight Street Secured Lender Settlement</u>") [ECF No. 330], which was supplemented by the Court's Order entered previously on September 11, 2020, that incorporates by reference the Committee's Rule 9019 Motion seeking to settle the claims of the Haight Street Secured Lender (defined below) [ECF No. 270].

1.23    "<u>Confirmation Account</u>" means the bank account to be established by the Plan Administrator to hold all funds necessary to make distributions under the Plan on the Effective Date or thereafter, which bank account shall be a banking institution that is an authorized depository in the Eastern District of New York.

1.24    "<u>Confirmation Date</u>" means the date on which the Confirmation Order is entered on the docket by the Bankruptcy Court.

1.25    "<u>Confirmation Order</u>" means the order issued by the Bankruptcy Court confirming the Plan pursuant to section 1129 of the Bankruptcy Code.

1.26    "<u>Debtor</u>" means 41-23 Haight Realty Inc. a/k/a 41-23 Haight Street Realty, Inc.

1.27    "<u>Deposits</u>" means the deposit of $2,580,000 paid to the Trustee by Tu Kang Yang and Selena Chau in connection with the first attempted sale of the Real Property and the deposit of $3,822,000 paid to the Trustee by Mei Yang Ko in connection with the second attempted sale of the Real Property.

1.28    "<u>Disputed Claim</u>" means any Claim against the Debtor which has not been allowed or determined by a Final Order: (a) as to which (i) a proof of Claim has timely been filed or deemed filed by the Bankruptcy Court; (ii) an objection to the allowance of such Claim has timely been filed by the Trustee or the Committee and has not been withdrawn, and (iii) no Final Order exists allowing or disallowing such Claim or any portion thereof; or (b) a proof of Claim has been timely Filed, or deemed filed by the Bankruptcy Court, and the Holder of such Claim asserts a Claim in an unliquidated or contingent amount. In the event that any part of the Claim is disputed, such Claim shall be deemed a Disputed Claim in its entirety for purposes of distribution hereunder, unless the Trustee, the Committee, and the Holder thereof otherwise agree, or the Court orders otherwise.  Disputed Claims shall be governed by Article X of the Plan.

1.29    "<u>Distribution</u>" means the payments made by the Plan Administrator under this Plan to Holders of Allowed Claims and Allowed Administrative Expense Claims.

1.30    "<u>Effective Date</u>" means fourteen (14) days after the Confirmation Date, *provided that* if a party in interest appeals the Confirmation Order and obtains a stay pending appeal (a "<u>Stay</u>

Order"), within such 14-day period, then the possible Effective Date under this provision shall mean the earlier of (a) the date the Confirmation Order becomes a Final Order, or (b) the date the Stay Order terminates or expires or is reversed by an appellate court of competent jurisdiction.

1.31    "Estate" means the estate of the Debtor created under section 541 of the Bankruptcy Code.

1.32    "Exculpated Parties" means the Trustee, OTL, the Committee, and all agents, representatives, attorneys, accountants, financial advisors, brokers, or other professionals and/or agents thereof.

1.33    "Executory Contract" means any of the contracts to which the Debtor is a party and was a party as of the entry of the Order for Relief, and which are executory within the meaning of section 365 of the Bankruptcy Code.

1.34    "Fee Application" means any application of the Trustee, the Plan Administrator, the Committee, or their professionals under applicable provisions of the Bankruptcy Code for allowance of compensation and reimbursement of expenses in this Chapter 11 case.

1.35    "Fee Claim" means a Claim under an applicable provision of the Bankruptcy Code or otherwise allowed by the Bankruptcy Court, for allowance of compensation and reimbursement of expenses to the Trustee, the Committee, or his/their professionals in this Chapter 11 case.

1.36    "Financing Orders," means the (a) the Final Order: (i) Authorizing the Trustee to Obtain Post-Petition Financing and Grant Liens and Superpriority Administrative Expense Status Pursuant to 11 U.S.C. §§ 105(a), 364(c) and 364(d); (ii) Granting Replacement Liens and Rights to Adequate Protection Pursuant to 11 U.S.C. § 362; (iii) Modifying the Automatic Stay Pursuant to 11 U.S.C. § 362; and (iv) Granting Related Relief [Docket No. 68] (the "First Financing Order"); and (b) the Supplemental Final Order: (i) Authorizing the Trustee to Obtain Post-Petition

Financing and Grant Liens and Superpriority Administrative Expense Status Pursuant to 11 U.S.C. §§ 105(a), 364(c) and 364(d); (ii) Granting Replacement Liens and Rights to Adequate Protection Pursuant to 11 U.S.C. § 362; (iii) Modifying the Automatic Stay Pursuant to 11 U.S.C. § 362; and (iv) Granting Related Relief  [Docket No. 101], and any supplement and/or amendment thereof (the "<u>Second Financing Order</u>").

      1.37    "<u>Final Order</u>" means: (a) a judgment, order, or decree issued and entered by the Court, which judgment, order, or decree (i) has not been reversed or stayed and as to which the time to appeal therefrom has expired and as to which no appeal or petition for review, rehearing or certiorari is pending, or (ii) with respect to which an appeal therefrom has been finally decided and no further appeal or petition for certiorari has been or can be taken or granted; or (b)  a stipulation or other agreement entered into in this Chapter 11 Case which has the effect of any such judgment, order or other decree that satisfies the conditions in sub-paragraph (a) immediately above.

      1.38    "<u>General Unsecured Creditor Reserve</u>" means the $345,000 that was carved out for the general unsecured creditors in accordance with the Court's September 11, 2020 Order.

      1.39    "<u>Haight Street Secured Lender</u>" shall mean 41-31 Haight Street Lender LLC and any successors or assigns thereof.

      1.40    "<u>Haight Street Secured Lender's Post-Petition Claim</u>" shall mean the Claim of the Haight Street Secured Lender for all "Post-Petition Obligations" (as defined in the Second Financing Order) and any other amounts to which the Haight Street Secured Lender is entitled to in connection with the "Financing" (as defined in the Second Financing Order) and the "Post-Petition Loan Documents" (as defined in the Second Financing Order).

1.41    "<u>Haight Street Secured Lender's Pre-Petition Claim</u>" shall mean the Claim of the Haight Street Secured Lender for all "Pre-Petition Obligations" (as defined in the Second Financing Order) and all other amounts to which the Haight Street Secured Lender is entitled to in connection with such obligations and the Pre-Petition Loan Documents (as defined in the Second Financing Order) pursuant to the Second Financing Order.

1.42    "<u>Holder</u>" means the legal or beneficial holder of a Claim, Administrative Expense, or Interest (and, when used in conjunction with a Class or type of Claim, Administrative Expense, or Interest, means a Holder of a Claim, Administrative Expense, or Interest in such Class or of such type).

1.43    "<u>Initial Offerors</u>" means Tu Kang Yang and Selena Chau.

1.44    "<u>Interests</u>" means the equity ownership interests of the Holders of the Debtor's common stock, as of the date of the Order for Relief.

1.45    "<u>Litigation(s)</u>" means any litigation commenced or to be commenced in this Chapter 11 case, or any other case, including but not limited to whether such litigation is commenced by an adversary proceeding or as a contested matter; including, without limitation, actions to avoid and recover preferential and fraudulent transfers, any objections to Claims (including objections to claims filed in other bankruptcy cases), and any other contested matters, whether commenced or pending before the Bankruptcy Court or any Court of competent jurisdiction, including any related appeals.

1.46    "<u>Order for Relief</u>" means the order for relief pursuant to section 303(h) of the Bankruptcy Code, entered on August 8, 2019 by the Bankruptcy Court [ECF No. 16].

1.47    "<u>OTL</u>" shall mean OTL Enterprises, LLC.

1.48    "Person" has the meaning set forth in section 101(41) of the Code and includes any individual, corporation, partnership, joint venture, association, trust, unincorporated organization, or governmental unit or any agency or political subdivision thereof, or any other entity.

1.49    "Petition Date" means June 4, 2019, the date an involuntary petition pursuant to Chapter 11 of the Bankruptcy Code was filed against the Debtor.

1.50    "Plan" means this plan of liquidation and any amendments permitted in accordance with the Bankruptcy Code and the Bankruptcy Rules.

1.51    "Plan Administrator" means Gregory Messer.

1.52    "Priority Tax Claims" mean those Claims of governmental units that are entitled to priority in payment pursuant to section 507(a)(8) of the Bankruptcy Code.

1.53    "Professional" means the attorneys and other professionals retained by the Trustee or the Committee pursuant to Final Orders of the Bankruptcy Court.

1.54    "Real Property" means the real property commonly known as 41-09/41-31 Haight Street, Flushing, New York 11355 (Block: 5063, Lots: 44-53 (formerly Lots 42 and 53 and p/o old Lot 55); and Lot 55 (formerly p/o old Lot 55).

1.55    "Released Parties" means the Trustee, the Committee, OTL, and any professionals or agents of the Trustee, the Committee, and OTL, respectively.

1.56    "Sale" means the sale of the Real Property pursuant to a separate motion and Final Order of the Court authorizing and approving the same in accordance with section 363 of the Bankruptcy Code and Bankruptcy Rules 2002 and 6004.

1.57    "Second Offeror" means Mei Yang Ko.

1.58    "Section 421-a Claims" means the recovery, if any, by the Trustee on account of the Section 421-a of the New York State Real Property Law on behalf of the Estate.

1.59    Shareholders" mean the Holders of any Interest(s) in the Debtor.

1.60    "Trustee" means Gregory Messer, solely in his capacity as Chapter 11 Trustee of the Debtor's Estate.

1.61    "Unclaimed Property" means any cash (together with any interest earned thereon) unclaimed on the 90th day following the Effective Date and any subsequent distributions. Unclaimed Property includes: (a) checks (and the funds represented thereby) which have been returned as undeliverable without a proper forwarding address; (b) checks (and the funds represented thereby) which have not been paid; and (c) checks (and the funds represented thereby) which were not mailed or delivered because of the absence of a proper address to mail or deliver such check.

## ARTICLE II

## CLASSIFICATION OF CLAIMS AND INTERESTS

### 2.01.  General Classification Rule

A Claim that is properly included in more than one Class is in a Class to the extent it qualifies within the description of such Class and is in a different Class to the extent it qualifies within the description of such different Class.

### 2.02.  Acceptance of Classification

Any Holder of a Claim who fails to object, in writing, to the classification of Claims provided in the Plan, and who has not filed such objection with the Bankruptcy Court and served such objection upon counsel for the Trustee and counsel to the Committee, at least ten (10) days prior to the hearing on confirmation of the Plan, shall be deemed to have accepted such classification and shall be bound thereby.

**2.03.**    **Unclassified Claims**

1.    <u>Administrative Expense Claims</u>: This Class consists of all Allowed Administrative Expense Claims, including those of the Trustee, the Committee, his/their counsel or other retained professionals, as authorized by and subject to the approval of the Bankruptcy Court. The estimated amount of the Administrative Expense Claims subject to the filing of fee applications and approval of the Court could be up to approximately $2,500,000.00[1]

2.    <u>Fees of the United States Trustee and the United States Bankruptcy Court</u>: All statutory quarterly fees and applicable interest due to the United States Trustee that come due, up to and including the earlier of the date of entry of a final decree closing this Chapter 11 proceeding or of the date of entry of an order dismissing or converting the case to one under Chapter 7 of the Bankruptcy Code. The estimated amount to the United States Trustee is approximately $65,000.00. Further, fees due to the United States Bankruptcy Court are estimated to be approximately$5,000.00 or less.

3.    <u>Priority Tax Claims</u>: Claims of governmental units that are entitled to priority in payment pursuant to section 507(a)(8) of the Bankruptcy Code.

**2.04.**    **Classification of Claims**

For purposes of this Plan, except for all Unclassified Claims as set forth above, all Allowed Claims shall be placed in the following Classes, which Classes shall be mutually exclusive.

1.    <u>Class 1 Claim</u> – Haight Street Secured Lender's Post-Petition Claim.  This Class consists of the Haight Street Secured Lender's Post-Petition Claim.

---

[1] While the Trustee could seek commissions of up to $1,184,435.76, the Trustee has agreed not to seek the maximum commissions allowed.

2.      <u>Class 2 Claims</u> – Secured Governmental Unit Real Estate Tax Liens.  This Class of Claims consists of real estate tax liens of governmental units, and water and sewer charges against the Real Property, which Claims against the Real Property arose by operation of law, judgment, lien, tax deed, or purchase for unpaid real property taxes.

3.      <u>Class 3 Claim</u> – Haight Street Secured Lender's Pre-Petition Claim.  This Class consists of the Haight Street Secured Lender's Pre-Petition Claim.

4.      <u>Class 4 Claims</u> – Other Allowed Secured Claims. This Class consists of secured Claims against the Real Property, other than Claims in Class 1, Class 2, or Class 3.

5.      <u>Class 5 Claims</u> – Allowed Priority (Non-Tax) Claims.  This Class consists of priority (non-tax) Claims under section 507(a) of the Bankruptcy Code.

6.      <u>Class 6 Claims</u> – Allowed Unsecured Claims. This Class consists of general unsecured, non-priority Claims against the Debtor's Estate.

7.      <u>Class 7 Interests</u> – Shareholder Interests. This Class consists of the Shareholder Interests.

**ARTICLE III**

**<u>TREATMENT OF CLASSES</u>**

**3.01.   <u>Unclassified Claims</u>**

(a) <u>Administrative Expense Claims</u>

Administrative Expense Claims are unimpaired. Each Holder of an Allowed Administrative Expense Claim shall be paid, in full, on the Effective Date, or on such other date and upon such other terms as may be agreed upon by the Holder of such Allowed Administrative Expense Claim and the Trustee.  Holders of Allowed Administrative Expense

Claims are unimpaired, and therefore, such claimants are (a) not entitled to vote on the Plan, and (b) deemed to have accepted the Plan.

Allowed Administrative Expense Claims representing liabilities incurred in the ordinary course of business by the Debtor and/or the Debtor's Estate will be assumed and paid by the Trustee in accordance with the terms and conditions of the arrangements with the particular creditor and in accordance with ordinary business terms.

In the event of any subsequent conversion of this case to a case under Chapter 7 of the Bankruptcy Code, all payments on account of any Allowed Administrative Expense Claim are deemed to have been made in the ordinary course of the Debtor's business and will not be deemed preferential or unauthorized under sections 547 or 549 of the Bankruptcy Code.mo

(b) United States Trustee Claims

The United States Trustee Claims are unimpaired. The Trustee, on behalf of the Debtor's Estate, shall pay all statutory fees and applicable interest due to the Office of the United States Trustee that come due, up to and including the earlier of the date of entry of a final decree closing this Chapter 11 proceeding or of the date of entry of an order dismissing or converting the case to one under Chapter 7 of the Bankruptcy Code. The Plan Administrator is obligated to pay the post-confirmation quarterly fees to the Office of the United States Trustee.

(c) Priority Tax Claims

Priority Tax Claims are unimpaired. Upon the Effective Date, Allowed Priority Tax Claims, if any, of governmental units will be paid, in full.  As of the Petition Date, Priority Tax Claims are filed in the aggregate amount of $196,185.84, subject to dispute by the Trustee and

the Committee. Accordingly, Priority Tax Claims are unimpaired, and therefore, such claimants are (a) not entitled to vote on the Plan, and (b) deemed to have accepted the Plan.

### 3.02.  **Class 1 – Haight Street Secured Lender's Post-Petition Claim**

This Class is unimpaired. This Claim has been paid in full from the proceeds from the sale of the Real Property.  Accordingly, Class 1 is unimpaired, and therefore, such claimant is (a) not entitled to vote on the Plan, and (b) deemed to have accepted the Plan.

### 3.03.  **Class 2 – Secured Governmental Unit Real Estate Tax Liens**

This Class is unimpaired. This Class consists of all real estate tax liens and water and sewer charges against the Real Property which arose by operation of law for unpaid real property taxes and water and sewer charges.  Class 2 Claims have been paid, in full from the proceeds from the sale of the Real Property. Accordingly, Class 2 is unimpaired, and therefore, such claimants are (a) not entitled to vote on the Plan, and (b) deemed to have accepted the Plan.

### 3.04.  **Class 3 – Allowed Haight Street Secured Lender's Pre-Petition Claims**

This Class is unimpaired. This Claim has been paid in full from the proceeds from the sale of the Real Property. Accordingly, Class 3 is unimpaired, and therefore, such claimant is (a) not entitled to vote on the Plan, and (b) deemed to have accepted the Plan.

### 3.05.  **Class 4 – Other Secured Claims**

This Class is unimpaired.  This Class consists of asserted Secured Claims other than the Allowed Secured Claims in Class 1, Class 2, or Class 3.  As of the Bar Date, the aggregate amount of the filed Class 4 Claims is approximately $3,050,088.76. Claim 42, that asserted a Class 4 Claim has been resolved by Order of the Bankruptcy Court dated December 21, 2020. The Trustee and the Committee dispute the remaining Class 4 Claims. Based upon the amount of the net sales proceeds from the sale of the Real Property the maximum aggregate amount of the remaining Class

4 Claims is $180,000. If Allowed as an "Other Secured Claim" such claim will be paid in full on the Effective Date. Accordingly, Class 4 is unimpaired, and therefore, such claimants are (a) not entitled to vote on the Plan, and (b) deemed to have accepted the Plan.

### 3.06.    Class 5 – Priority (Non-Tax) Claims

This Class is unimpaired.  This Class consists of Priority Claims of the Debtor's Estate pursuant to section 507(a)(7) of the Bankruptcy Code.  As of the Bar Date, the aggregate amount of the filed Class 5 Claims is approximately $2,986,185.84. The Trustee and the Committee dispute one or more of such Class 5 Claims as exceeding the maximum claim amount allowed under Section 507(a)(7) of the Bankruptcy Code. The Trustee estimates that Class 5 Claims will not exceed an aggregate of $18,150.00. If Allowed as a Class 5 Claim, each such claim will be paid in full upon the Effective Date. Accordingly, Class 5 is unimpaired, and therefore, such claimants are (a) not entitled to vote on the Plan, and (b) deemed to have accepted the Plan.

### 3.07.    Class 6 – Allowed Unsecured Claims

This Class is impaired. This Class consists of general unsecured, non-priority, Claims against the Debtor's Estate.  Upon the Effective Date, allowed Class 6 Claims will be paid their pro-rata share of no less than the amount of the General Unsecured Creditor Reserve. In addition, after the payment in full of all senior Classes of Claims and all Allowed Administrative Expenses and United States Trustee fees, the establishment of a reserve for any Disputed Claims in any senior classes and Disputed Administrative Expenses, and a reserve for any anticipated future Administrative Expenses, then the Class 6 Claims shall be paid their pro rata distribution from the remaining proceeds from the sale of the Real Property recovery, and the recovery from: (a) the Deposits; (b) the Section 421-a Claims; (c) any recovery on account of the claims to be brought by the Committee, including but not limited to the Assigned Claims and the Litigation(s); and (d)

any other source of recovery. The Trustee and the Committee dispute one or more of such Class 6 Claims. As of the Bar Date, the aggregate amount of the filed Class 6 Claims was approximately $29,110,279.82. Within the filed Class 6 Claims are several duplicative Claims and Claims filed by, or associated with, insiders of the Debtor (as that term is defined by section 101(31) of the Bankruptcy Code) which will be objected to or otherwise sought to be subordinated by the Trustee and the Committee. The amount of the Class 6 Claims may increase if Claims in Classes 4 and 5 are reclassified to Class 6 Claims.  Accordingly, Class 6 is impaired, and therefore, such claimants are entitled to vote on the Plan. The Trustee may request that the Court determine the amount of certain Class 6 Claims for purposes of voting on this Plan.

 **3.08.** **Class 7 – Allowed Shareholder Interests**

 This Class is impaired. This Class consists of the Allowed Interests in the Debtor.  On or after the Effective Date, Class 7 Interests will receive pro rata Distributions under the Plan only in the event that all Classes of Allowed Claims have been paid in full; <u>provided</u>, <u>however</u>, that any such distributions will be held in escrow by the Plan Administrator pending the results of the Committee's investigation and the outcome of any Litigation(s). On the Effective Date, the Interests will be cancelled, and the Debtor shall be dissolved as provided for herein.  Accordingly, Class 7 is impaired.  In accordance with section 1126(g) of the Bankruptcy Code, Class 7 is deemed to have rejected the Plan.

**ARTICLE IV**

**<u>IDENTIFICATION OF UNIMPAIRED CLAIMS UNDER THE PLAN</u>**

 **4.01.** **<u>Unimpaired Classes</u>**

 Administrative Expense Claims, United States Trustee Claims, Priority Tax Claims, and Classes 1, 2, 3, 4 and 5 are unimpaired under the Plan and are deemed to have accepted the Plan.

 **4.02.** **<u>Impaired Classes</u>**

17

Classes 6 and 7 are impaired under the Plan. Class 6 is entitled to vote to accept or reject the Plan. Class 7 is deemed to have rejected the Plan and is not entitled to vote to accept or reject the Plan.

**ARTICLE V**

**CONDITIONS PRECEDENT TO CONFIRMATION OF**
**THE PLAN AND THE EFFECTIVE DATE**

**5.01.** **Conditions Precedent for Plan Confirmation**:

    (a) An impaired Class has voted in favor of this Plan; or, in the alternative, the Trustee met the qualifications of a cramdown of the Plan;  and

    (b) The Bankruptcy Court has determined that the Plan is confirmable and satisfies the requirements of Bankruptcy Code § 1129.

**Conditions Precedent for the Effective Date:**

(a) The Court has entered the Confirmation Order and the Confirmation Order has become a Final Order;

(b) No stay of the Confirmation Order is in effect; and

(c) All documents, instruments and agreements, in form and substance satisfactory to the Plan Administrator provided for under or necessary to implement the Amended Plan have been executed and delivered by the parties thereto, unless such execution or delivery has been waived, in writing.

**5.02.** **Waiver**

Notwithstanding the foregoing conditions in Article V. 5.01, the Trustee, in consultation with the Committee, reserves the right to waive the occurrence of any condition precedent or to modify any of the foregoing conditions precedent.  Any such written waiver of a condition precedent set forth in this Article may be affected at any time, with reasonable notice to the

Committee, and without further notice to any other party in interest, without leave or order of the Bankruptcy Court, and without any formal action and proceeding to consummate the Plan. Any actions required to be taken on the Effective Date or Confirmation Date (as applicable) shall take place and shall be deemed to have occurred simultaneously, and no such action shall be deemed to have occurred prior to the taking of any other such action.

## ARTICLE VI

## EXECUTION AND IMPLEMENTATION OF PLAN

### 6.01.   Timing of the Plan

Consistent with the requirements set forth in Article V, the implementation of the Plan occurs on the Effective Date, provided, however, that the Trustee, in his sole discretion, may waive the requirement that the Confirmation Order be a Final Order.

### 6.02.   Source of Funding

Pre-petition, the Debtor was constructing eleven multi-family town homes, consisting of approximately sixty-one residential and twenty-three commercial units, at the Real Property. Upon information and belief, construction at the Real Property ceased in November 2018.

To the extent construction at the Real Property was not completed by December 31, 2019, the Debtor's Estate risked the loss of available Section 421-a tax benefits estimated to be between $5,000,000 and $10,000,000.  To obtain these valuable tax benefits, among other things, construction at the Real Property must have been completed by the end of the calendar year 2019, temporary certificates of occupancy needed to be obtained, and certain necessary applications needed to be filed.

The Trustee, upon his appointment, did not have available funds to complete these tasks, which are/were necessary to preserve and enhance the value of the Real Property and the Debtor's Estate.  Accordingly, pursuant to the Financing Orders and expedited motions in connection

therewith, the Trustee obtained post-petition financing from the Haight Street Secured Lender to complete construction at the Real Property.  As a result, construction resumed at the Real Property and the Trustee retained OTL to complete certain construction at the Real Property.  Accordingly, based upon the actions of the Trustee, the tax benefits were indeed obtained.

Pursuant to an Order entered on March 30, 2020, the Court authorized the Trustee to proceed with the virtual public auction for the sale of the Real Property. The Trustee entered into a stalking horse agreement with the Initial Offerors for $31,000,000, with an initial deposit to be paid of $3,100,000. In the Motion to approve the initial stalking horse agreement with the Initial Offerors, the Trustee advised the Court that the Initial Offerors had only partially paid the deposit, with a commitment by the Initial Offerors to pay the remaining balance immediately following the hearing seeking approval of the staking horse agreement. Pursuant to an Order entered on April 9, 2020, the Court approved the initial stalking horse agreement with the Initial Offerors.  The Initial Offerors paid only $2,580,000 of the required deposit. The Initial Offerors defaulted on the initial stalking horse agreement and the April 9, 2020 Order.

As a result of the Initial Offerors' default, the Trustee remarketed the Real Property for sale and received an offer from the Second Offeror for the purchase price of $27,300,000 for the Real Property.  The Trustee and the Second Offeror memorialized the terms of the offer in the second stalking horse agreement dated April 20, 2020. The Second Offeror also defaulted under the terms of the second stalking horse agreement and the order that confirmed the second sale.

Based upon the Initial and Second Offerors' defaults, the Trustee filed two motions, and a supplemental motion to the first motion, seeking to retain all of the Deposits paid to the Trustee as liquidated damages. After several hearings, the Court ruled in favor of the Trustee and found that

all of the Deposits were property of this estate. The Court entered three orders deeming the Deposits to be property of the estate. All three orders have been appealed.

Recently, the Trustee reached an agreement with the Initial Offerors to settle the dispute regarding a portion of the Deposit. That settlement was approved by the Court. As a result, the appeals of the Initial Offerors have been withdrawn and the estate will retain for distribution to creditors under this Plan the sum of $2,230,000.

By Order dated July 21, 2020, the Court authorized the Trustee to proceed with a public auction sale of the Real Property. At the auction sale, after competitive bidding, the Buyer was the successful bidder for the Real Property having bid $28,100,000, plus the payment of any and all transfer taxes and the buyer's premium in the amount of $1,124,000. On September 14, 2020, the Trustee closed on the sale of the Real Property with the Buyer. Thereafter, the Trustee paid Haight Street Secured Lender in full, except for the Committee Reserve and $115,000.00 set aside as part of the General Unsecured Creditors Reserve. After the payment of the fees due the United States Trustee and the payment for the balance of the work performed by OTL, the Trustee will have funds remaining from the proceeds of sale of the Real Property available for distribution under the Plan.

In addition, as a result of the completion of the necessary work at the Real Property, the Trustee may also recover additional funds under the Section 421-a Claims. The Trustee estimates that, if there is a recovery on the Section 421-a Claims, that recovery should exceed $1,000,000.

Lastly, the Committee is conducting an investigation regarding potential avoidance claims or other claims that could be pursued and recovered for the benefit of the Estate. To the extent there is any recovery from such actions or settlements of such claims then those recoveries and/or settlements will be available for distribution to the creditors of this Estate under this Plan.

Furthermore, the Committee and the Trustee are investigating and will be pursuing objections to certain Claims, and to the extent such objections are successful, will increase distributions to creditors of the Estate.

### 6.03.    Transfer Taxes and Capital Gains Taxes

In accordance with the sale of the Real Property, all transfer tax obligations were the obligation of the Buyer. To the extent there are any capital gains taxes owed by the estate, those taxes will be paid by the Trustee.

### 6.04.    Bar Date for Fee Claims

Each Person retained or requesting compensation in this Chapter 11 Case, pursuant to Bankruptcy Code sections 330, 331, and/or 503(b), must file with the Court an application for allowance of any Fee Claims within sixty (60) days after the Effective Date. Objections, if any, to each such application shall be filed in accordance with the Bankruptcy Rules. The Court shall determine all such Fee Claims.

### 6.05.    Bar Date for Other Administrative Expense Claims

Other than the retained Professionals and the Trustee, all administrative claims of this estate have been paid and there are no other administrative claims against this Estate.

## ARTICLE VII

## AMENDMENTS AND MODIFICATIONS

### 7.01.    Amendment of Plan

The Trustee reserves the right to amend and modify the Plan prior to the Confirmation Date in any manner necessary to obtain confirmation of the Plan, to the extent permitted by the

Bankruptcy Code, the Bankruptcy Rules, and the Bankruptcy Court, and with reasonable consultation with the Committee; provided however, no post-confirmation Plan modifications will be made without a notice and hearing. Such amendments may be made at, or prior to, the hearing on confirmation of the Plan, with reasonable notice to the Committee, and without further notice to any other party in interest, except an announcement in open court made on the record at the confirmation hearing. After the Confirmation Date, the Trustee may, upon an order of Bankruptcy Court in accordance with section 1127(b) of the Bankruptcy Code, remedy any defects, or omissions or reconcile any inconsistency in this Plan in a manner necessary to carry out the purposes and intent of the Plan.

## ARTICLE VIII

## EXECUTORY CONTRACTS AND UNEXPIRED LEASES

### 8.01. Assumption/Rejection of Executory Contracts and Unexpired Leases

To the extent the Debtor was a lessee to any executory contracts and/or unexpired leases, as of the Petition Date, that were not assigned to the Buyer, the Trustee, on behalf of the Debtor's Estate, shall be deemed to have rejected each executory contract and unexpired lease to which it is a party, unless such contract or lease: (a) was previously assumed or rejected by the Debtor and/or the Trustee, (b) previously expired or terminated pursuant to its own terms, or (c) is the subject of a motion to assume filed on or before the Confirmation Date.

If the rejection by the Trustee, on behalf of the Debtor's Estate, pursuant to the Plan or otherwise, of an executory contract or unexpired lease results in a Claim that is not theretofore evidenced by a timely filed proof of Claim or a proof of Claim that is deemed to be timely filed under applicable law, then such Claim shall be forever barred and shall not be enforceable against the Debtor's Estate, unless a proof of Claim is filed with the Clerk of the Court and served upon counsel for the Trustee within thirty (30) days of entry of the Confirmation Order.

## ARTICLE IX

## EFFECT OF CONFIRMATION; VESTING OF
## PROPERTY; INJUNCTION

**9.01.**    On the Effective Date, the terms of this Plan bind all Holders of all Claims against the Debtor and all Holders of Interests in the Debtor, whether or not such Holders accept this Plan.

**9.02.    Injunction**

Effective on the Confirmation Date, all Holders of any Interest or Claims who have held, hold, or may hold any Interests in the Debtor or any Claims against the Real Property, the Debtor, the Debtor's Estate and/or any Released Parties, or its/their assets, are enjoined from taking any of the following actions against or affecting the Real Property or Debtor, the Debtor's Estate, the Released Parties, or the assets thereof, with respect to such Claims or Interests (other than actions brought to enforce any rights or obligations under the Plan or appeals, if any, from the Confirmation Order):

(a) commencing, conducting, or continuing in any manner, directly or indirectly, any suit, action, or other proceeding of any kind against the Real Property or the Debtor, the Debtor's Estate, the Released Parties, or the assets thereof, or any direct or indirect successor in interest to the Debtor, the Debtor's Estate, the Trustee and/or any of the other Released Parties or any assets of any such transferee or successor (including, without limitation, any purchaser of the Real Property or any successor or assignee thereof);

(b) enforcing, levying, attaching, collecting or otherwise recovering by any manner or means whether directly or indirectly any judgment, award, decree, or order against the Real Property or the Debtor, the Debtor's Estate, the Released Parties, or its/their assets, or any direct or indirect successor in interest to the Debtor, the Debtor's Estate, the Released

Parties, or any assets of such transferee or successor (including, without limitation, any purchaser of the Real Property or any successor or assignee thereof);

(c) creating, perfecting or otherwise enforcing in any manner, directly or indirectly, any encumbrance of any kind against the Real Property or the Debtor, the Debtor's Estate, the Released Parties, or the assets thereof, or its/their assets or any direct or indirect successor in interest to the Debtor, the Debtor's Estate, the Released Parties, or any assets of any such transferee or successor (including, without limitation, any purchaser of the Real Property or any successor or assignee thereof), other than as expressly contemplated by the Plan;

(d) asserting any set-off, right of subrogation or recoupment of any kind directly or indirectly against any obligation due the Debtor, the Debtor's Estate, Released Parties, or its/their assets or any direct or indirect transferee of any assets of, or successor in interest to, the Debtor, the Debtor's Estate, or the Released Parties; and

(e) proceeding in any manner in any place whatsoever that does not conform to or comply with the provisions of the Plan.

**9.03.  <u>Release</u>**

As of the Confirmation Date, to the extent authorized by section 1141 of the Bankruptcy Code, the Released Parties are released from all Claims, claims, demands, actions, claims for relief, causes of actions, suits, debts, covenants, agreements, and demands of any nature whatsoever, in law and in equity, that any creditor of the Debtor had, or now has, or may hereafter have against the Released Parties arising prior to the Confirmation Date.  Except as otherwise provided herein and in section 1141 of the Bankruptcy Code, all Persons shall be precluded and enjoined from asserting against the Released Parties, their assets or properties, or against any property that is

distributed, or is to be distributed under the Plan, any other or further Claim upon any acts or omissions, transactions, or other activity of any kind or nature that occurred prior to the Confirmation Date.  Nothing in this Plan shall be deemed or construed to be a release of any of the Debtor's Insiders and/or related parties from any and all claims or causes of action nor shall the Plan be construed to release those parties from any prosecution they may have for any criminal liability.

### 9.04.  **Exculpation**

The Exculpated Parties and their property and Professionals who provided services to the Trustee and the Debtor's Estate during this Chapter 11 case will not have or incur any liability to any Person for any act taken or omission occurring on or after the Petition Date in connection with or related to this Debtor's Estate, including but not limited to the:

> (a) commencement and administration of the Chapter 11 case,
>
> (b) operation of the Debtor's Estate during the pendency of the Chapter 11 Case,
>
> (c) the construction of the Real Property,
>
> (d) formulation, preparation, dissemination, implementation, confirmation, consummation, or administration of (i) the Plan (including soliciting acceptances or rejections thereof), and/or (ii) the Disclosure Statement, or any contract, instrument, release, or other agreement or document entered into or any action taken or omitted to be taken during the administration of the Chapter 11 case, or in connection with the Plan, and
>
> (e) any Distributions made pursuant to the Plan.

Nothing in this section shall (i) be construed as a release of such person's fraud, gross negligence, criminal conduct, malpractice, or willful misconduct with respect to the matters set forth in this section, (ii) be construed to release any of the Debtor's Insiders and/or related parties from

prosecution for criminal liability; (iii) limit the liability of the Trustee's professionals and the Committee's professionals to their respective clients for malpractice pursuant to the New York Rules of Professional Conduct; or (iv) shall in any way affect the rights and remedies held by any creditor to pursue any claims against any Person other than the Debtor or the Released Parties.

**9.05.    Litigation and other Recoveries**

The Trustee, the Plan Administrator, or the Committee, in consultation with the Plan Administrator, may file any complaint, or may appear in any other proceeding, based upon any cause of action of the Debtor and its Estate prior to the expiration of the statute of limitations governing such cause of action, and may commence any contested matter, including but not limited to objections to any Claims in this or other bankruptcy cases, and also including filing any proofs of claim or commencing Litigation(s) in other pending bankruptcy cases based upon those causes of action or other theories of recovery.

The Committee has commenced its investigation as to whether certain claims can be pursued for the benefit of the estate. Post-Confirmation, the Committee, in consultation with the Plan Administrator, shall continue to investigate such claims and take any appropriate actions related thereto. In addition, in connection with that investigation the Committee, in consultation with the Plan Administrator, and only to the extent that the Trustee or the Plan Administrator consent or do not file objections to Claims in this Chapter 11 Case, the Committee may also file objections to Claims filed against this Estate.

The failure of the Trustee to list a claim, right, cause of action, suit, or proceeding shall not constitute a waiver or release by the Estate of such claim, right, cause of action, suit, or proceeding. No Entity may rely on the absence of a specific reference in the Plan or the Disclosure Statement to any remaining causes of action against them as any indication that the Trustee, the Plan Administrator, or the Committee will not pursue any and all available remaining causes of action

against them or object to their Claim. In accordance with section 1123(b)(3) of the Bankruptcy Code, any remaining causes of action that the Estate may hold against any entity shall vest in the Plan Administrator or the Committee, as the case may be.  In addition, the Plan Administrator or the Committee, reserves the right to pursue or adopt any claims alleged in any lawsuit in which the Estate is a party or an interested party, against any Entity, including the plaintiffs or co-defendants in such lawsuits.

The Trustee and/or the Plan Administrator will be responsible for: (a) the Deposit Claims and any appeals or settlements relating to the Deposits and any distributions to be made under this Plan; (b) the pursuit and recovery of the Section 421-a Claim; and (c) the objections to Claims; provided, however, the Committee shall be authorized to file any Claims objections it deems appropriate if the Trustee or the Plan Administrator consent or do not file any such objection.

The Committee shall be responsible for the Assigned Claims and the investigation and, as appropriate, the commencement of any avoidance or such other claims or actions it deems appropriate relating to the Assigned Claims either in this Court or any such other court of competent jurisdiction. The Committee will have the complete authority to settle any such action that it commences or pursues. Any recoveries by the Committee shall be distributed by the Committee under this Plan.

Any settlement of actions in this Court by the Committee shall be subject to Court approval pursuant to Bankruptcy Rule 9019, and any distribution from such recoveries must comply with the terms of this Plan.

**ARTICLE X**

**CLAIMS MATTERS**

**10.01.  Objections to Claims**

In the event that objections to Claims are filed by the Trustee, the Plan Administrator, or the Committee, the Plan Administrator will determine the amount of cash to be reserved with respect to the contested or Disputed Claims in a sum not less than the amount required to pay all contested or Disputed Claims under the Plan on account of such Claims, if said Claims were proved and allowed, in full (with interest, if applicable), and keep on deposit such funds in the Confirmation Account. Contested or Disputed Claims that are litigated to judgment, settled, or withdrawn will be satisfied from the funds held for that purpose. Should the amount reserved by the Plan Administrator on account of the Contested or Disputed Claim exceed the amount required to satisfy the Contested or Disputed Claim, any excess will be distributed to the Debtor's Estate in accordance with the Plan.

Objections to Claims, to the extent not already commenced by the Trustee, the Plan Administrator or, as appropriate, the Committee, shall be filed and served no later than 180 days subsequent to the Effective Date, or within such other extended time period as may be requested by the Plan Administrator or, as appropriate, the Committee (with such application or motion being made prior to the expiration of the subject period) and fixed by the Bankruptcy Court; provided, however, that the Plan Administrator and the Committee, as appropriate, will have 180 days to file an objection to any Claim that is filed against the Estate after the Effective Date.

Notwithstanding any other provision of this Plan, no payment or distribution shall be made with respect to any Claim that has not become an Allowed Claim, except that the Plan Administrator, or the Committee, as appropriate, may distribute consideration attributable to any undisputed portion of a Claim and withhold the remainder.

**10.02. <u>Distribution Record Date</u>**

Except as otherwise provided in a Final Order of the Bankruptcy Court or as otherwise stipulated by the Trustee, as applicable, the transferees of Claims that are transferred pursuant to Bankruptcy Rule 3001 on or prior to December 1, 2020 ("Distribution Record Date") will be treated as the Holders of those Claims for all purposes, notwithstanding that any period provided by Bankruptcy Rule 3001 for objecting to the transfer may not have expired by the Distribution Record Date. The Trustee, the Plan Administrator, or the Committee shall have no obligation to recognize any transfer of any Claim occurring after the Distribution Record Date. In making any distribution with respect to any Claim, the Trustee, the Plan Administrator, or the Committee shall be entitled instead to recognize and deal with, for all purposes hereunder, only the Person that is listed on the Proof of Claim filed with respect thereto or on the Schedules as the Holder thereof as of the close of business on the Distribution Record Date and upon such other evidence or record of transfer or assignment that are known to the Trustee as of the Distribution Record Date except as expressly set forth in this Plan.

**10.03.  Setoffs**

Except as otherwise provided in the Plan, the Confirmation Order, or in agreements previously approved by Final Order of the Court, the Committee, or the Plan Administrator, pursuant to law (including section 553 of the Bankruptcy Code), may offset against any Claim (other than a Secured Claim), before any distribution is made on account of such Claim, and all of the claims, rights, and causes of action of any nature that the Committee or the Plan Administrator may hold against the holder of such Claim; provided, however, that neither the failure to effect such a setoff nor the allowance of any Claim hereunder shall constitute a waiver or release by the Committee or the Plan Administrator of any such claims, rights, and causes of action that the Committee or the Plan Administrator may possess against such holder.  To the extent the

Committee or the Plan Administrator fail to set off against a creditor and seek to collect a claim from such creditor after a distribution to such creditor pursuant to the Plan, the Committee or the Plan Administrator to the extent successful in asserting such cause of action, shall be entitled to full recovery against such creditor.  Any party, who is subject to an offset by the Plan Administrator and/or the Committee shall receive 3-days' written notice of any such offset.

### 10.04.  <u>Compromise of Controversies</u>

Pursuant to Bankruptcy Rule 9019, and in consideration for the classification, distribution, and other benefits provided under the Plan, the provisions of this Plan shall constitute a good faith compromise and settlement of all claims and controversies resolved pursuant to the Plan.  The entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of each of the foregoing compromises or settlements and all other compromises and settlements provided for in the Plan.  In addition, the Court's findings shall constitute its determination that such compromises and settlements are in the best interests of the Debtor, the Plan Administrator, the Committee, the Estate, creditors, and other parties in interest, and are fair, equitable, and within the range of reasonableness.

**ARTICLE XI**

**<u>DUTIES AND RIGHTS OF PLAN ADMINISTRATOR AND THE COMMITTEE</u>**

### 11.01.  <u>Duties and Rights of the Plan Administrator</u>

On the Effective Date, except as to the Assigned Claims being transferred to the Committee, (i) the Plan Administrator shall be appointed and shall succeed to such powers as would have been applicable to the Debtor's officers, directors, and shareholders, and (ii) the Trustee shall assign and transfer absolutely and unconditionally to the Plan Administrator all of its

assets of this estate.  The Plan Administrator shall be paid on an hourly basis for the services rendered to the Estate and reimbursed for his out-of-pocket expenses.

On the Effective Date, the Plan Administrator shall establish the Confirmation Account, pursuant to the terms of the Plan.  The Plan Administrator shall distribute amounts in the Confirmation Account pursuant to the terms of this Plan.   Except as to the Assigned Claims, the Plan Administrator will be responsible for implementing, enforcing, and effectuating all provisions of the Plan in accordance with its terms. Pursuant to the Plan, the Plan Administrator will pay all Allowed Administrative Expenses, and distribute the monies payable to the Holders of Allowed Claims in accordance with the Plan, or upon such other terms as may be agreed upon between the Plan Administrator, the Committee, and such Holder of an Allowed Claim.

Any decision, made or not made, or action, taken or not taken, by the Plan Administrator, as set forth in the Plan, or with the approval of the Bankruptcy Court, shall be deemed to have been made, not made, taken, or not taken, as applicable, by the Plan Administrator without gross negligence or willful misconduct.

The duties and powers of the Plan Administrator shall include, but not be limited to, the following:

(a) To make decisions, without further Court approval, regarding the retention or engagement of professionals, employees, and consultants by the Plan Administrator and to pay, from the Confirmation Account, the fees and charges incurred by the Plan Administrator on or after the Effective Date, the fees and other expenses of professionals, disbursements, expenses, or related support services relating to the winding down of the Debtor and implementation of the Plan;

(b) To file tax returns and to seek, as necessary, a determination of tax liability under section 505 of the Bankruptcy Code or otherwise and to pay from the Confirmation Account any taxes incurred by the Debtor or the Plan Administrator after the Effective Date attributable to earnings of the Confirmation Account;

(c) To pay any and all statutory fees that become due, including the fees that are or may become due to the United States Trustee;

(d) To invest any cash transferred to the Plan Administrator, the cash proceeds from the liquidation of any assets or claims transferred to the Plan Administrator, and any income earned by the Plan Administrator in respect of the Confirmation Account shall be limited to the right and power to invest such cash in United States Treasury Bills, interest-bearing certificates of deposit, tax exempt securities or investments permitted by section 345 of the Bankruptcy Code or otherwise authorized by the Bankruptcy Court;

(e) To abandon in a commercially reasonable manner, including abandonment or donation to a charitable organization of its choice, any assets, if the Plan Administrator concludes that they are of no benefit to the Estate; and

Except as to the Assigned Claims, to prosecute, abandon, sell, release and/or settle any causes of action and exercise, participate in, or initiate any proceeding before the Court or any other court of appropriate jurisdiction, and participate as a party or otherwise in any administrative, arbitrative, or other nonjudicial proceeding and litigate or settle such causes of action in the name of the Debtor or the Estate, and pursue to settlement or judgment such causes of action, and enter into any agreement or execute any document required by or consistent with the Plan. Any decision, made or not made, or action, taken or not taken, by the Plan Administrator either (a) in compliance with the Plan or (b) with the approval of

the Bankruptcy Court shall be deemed to have been made, not made, taken, or not taken, as applicable, by the Plan Administrator without gross negligence or willful misconduct.

.

### 11.02. Duties and Rights of the Committee

On the Effective Date, the Committee shall be appointed to and the Trustee shall turnover and transfer to the Committee the Committee Reserve and the Assigned Claims. Any recoveries by the Committee on account of the Assigned Claims or otherwise shall be distributed by the Committee in accordance with this Plan.   To the extent that the Plan Administrator has not completed his administration of this case, the Committee shall consult with the Plan Administrator in connection with making such distributions.


Any decision, made or not made, or action, taken or not taken, by the Committee either (a) in compliance with the Plan or (b) with the approval of the Bankruptcy Court shall be deemed to have been made, not made, taken, or not taken, as applicable, by the Committee without gross negligence or willful misconduct. The duties and powers of the Committee shall include, but not be limited to, the following:

To make decisions, without further Court approval, regarding the retention or engagement of professionals, employees, and consultants by the Committee and to pay, from the Committee Reserve or such other recoveries by the Committee, the fees and charges incurred by the Committee on or after the Effective Date for fees and other expenses of professionals, disbursements, expenses, or related support services relating to the Assigned Claims.

The Committee will have the right and standing in any court of competent jurisdiction to enforce any and all Assigned Claims against any Entity, any and all rights of the Debtor (including

but not limited to the rights and powers of a trustee and debtor-in-possession) and/or any and all rights of holders of General Unsecured Claims in Class 6 arising from, relating to, or in connection with a claim against an Insider for equitable subordination under section 510 of the Bankruptcy Code, owned by, belonging to, or assertable by, whether now or at any time in the future, any creditor holding a General Unsecured Claim in Class 6 and remedies granted pursuant to the Bankruptcy Code. To the extent that an Assigned Claim against any party, party's entity, or individual is not specifically identified or described in the Plan or the Disclosure Statement, such Assigned Claim shall be preserved and vested with the Committee, and the failure to identify such Assigned Claim shall not be construed as a waiver or defense to such Assigned Claim.

### 11.03. <u>**Post Confirmation Compensation**</u>

After the Confirmation Date, to the extent the Trustee, the Plan Administrator, the Trustee's Professionals, the Plan Administrator and his Professionals or the Committee's Professionals provide services to the Estate in connection with the Plan, they shall provide invoices, on a monthly basis, to the Plan Administrator and the Committee for the fees incurred and any disbursements expended on behalf of the Estate under the confirmed Plan. In the event that no objection to the invoice is asserted within ten (10) days of delivery, the Plan Administrator will be vested with the right to pay the invoice to the Trustee, the Plan Administrator and the Trustee's Professionals from the Confirmation Account.

The Committee will be vested with the right to pay the invoice of the Committee's Professionals from the Committee Reserve or from such other funds recovered by the Committee. In the event there is a dispute over the fees of the Trustee, the Plan Administrator, the Trustee's Professionals, the Plan Administrator and his Professionals, or the Committee's Professionals that cannot be resolved consensually, the dispute will be resolved through an appropriate application

to the Bankruptcy Court. The parties agree that the Bankruptcy Court retains jurisdiction to resolve any fee dispute, to the extent one arises.

### 11.04.  **Resignation, Death, or Removal of Plan Administrator**

The Plan Administrator may resign at any time upon sixty (60) days' written notice to the Court and the Committee.  In the event of any such resignation, or the death or incapacity of the Plan Administrator, the Committee shall be appointed as the substitute Plan Administrator.  No successor Plan Administrator under the Plan shall in any event have any liability or responsibility for the acts or omissions of any of his or her predecessors.  Every successor Plan Administrator appointed pursuant to the Plan shall execute, acknowledge and deliver to the Bankruptcy Court an instrument in writing accepting such appointment under the Plan, and thereupon such successor Plan Administrator, without any further act, shall become fully vested with all of the rights, powers, duties, and obligations of his or her predecessor.

### 11.05.  **Termination of Duties of Plan Administrator**

The duties of the Plan Administrator will terminate after the Plan Administrator has administered, liquidated, and distributed the proceeds thereof from the Deposits, the Section 421-a Claim, and resolved any and all objections to claims brought by the Plan Administrator or the Trustee and after material completion of all other duties and functions set forth herein.

### ARTICLE XII

### DISTRIBUTIONS

### 12.01.    **Unclaimed Distributions**

Checks issued by the Plan Administrator or the Committee, as the case may be, in respect of Allowed Claims shall be null and void if not negotiated within ninety (90) days after the date

of issuance thereof.  Requests for reissuance of any check shall be made to the Plan Administrator or the Committee, as the case may be, by the holder of the Allowed Claim to whom such check originally was issued.  Any Claim in respect of such a voided check shall be made on or before thirty (30) days after the expiration of the ninety-day period following the date of issuance of such check.  Thereafter, the amount represented by such voided check shall irrevocably revert to the Contribution Fund or the fund to be distributed by the Committee, as the case may be, from which such amount was distributed in accordance with the Plan, and any Claim in respect of such voided check shall be discharged and forever barred from assertion against the Debtor and its property or the Plan Administrator or the Committee, as the case may be. Further, in that event, the holder of the such Allowed Claim shall not be entitled to receive any further distributions from the estate.

### 12.02.    Distributions of Cash

Any payment of Cash made by the Plan Administrator or the Committee, as the case may be, pursuant to the Plan may be made at the option of the Plan Administrator or the Committee, as the case may be, either by check drawn on a domestic bank or by wire transfer from a domestic bank. Any distribution made in compliance with this Plan must be made from an authorized depository in the Eastern District of New York.

### 12.03.    Distributions Free and Clear

Any distributions or transfers by the Plan Administrator, or the Committee, as the case may be, including, but not limited to, distributions to any holder of an Allowed Claim, shall be free and clear of any liens, claims, and encumbrances, and no other entity shall have any interest, legal, beneficial or otherwise, in assets transferred pursuant to the Plan.

### 12.04.    Withholding and Reporting Requirements

In connection with the Plan, the Plan Administrator, or the Committee, as the case may be, shall comply with all applicable withholding and reporting requirements imposed by any federal, state, or local taxing authority, and all distributions under the Plan shall be subject to any such withholding or reporting requirements.

### 12.05.    Delivery of Distributions and Undeliverable Distributions

Distributions to holders of Allowed Claims shall be made at the address of each such holder as set forth (a) on a proof of claim filed by a holder of an Allowed Claim or (b) in another writing notifying the Plan Administrator, or the Committee, as the case may be (at the addresses set forth in the Plan), of a change of address.

### 12.06.    Minimum Distribution and Rounding

If a Distribution to be made to a given Holder of an Allowed Claim would be $50.00 or less, notwithstanding any contrary provision of this Plan, no such Distribution will be made to such Holder. Any Distribution will be rounded to the nearest whole Dollar (up or down).

## ARTICLE XIII

## RETENTION OF JURISDICTION

**13.01**   The Bankruptcy Court will retain jurisdiction under Chapter 11 of the Bankruptcy Code and, for the purposes set forth in section 1127(b) of the Bankruptcy Code, including, *inter alia*, the following purposes:

(a)    to hear and determine all Claims and/or Administrative Expense Claims concerning the classification, allowance, or disallowance of any Claim and/or Administrative Expense Claim;

(b)    to hear and determine all Claims arising out of any agreement entered into by the Trustee, the Debtor and/or the Debtor's Estate, or the Committee after the Petition Date, if any;

(c)        to hear and determine applications for the assumption or rejection of executory contracts or unexpired leases, if any, and allowance of Claims resulting therefrom;

(d)        to alter, modify and amend the Plan pursuant to section 1127 of the Bankruptcy Code, or to remedy any defect, cure any omissions or reconcile any inconsistency in the Plan or Confirmation Order as may be necessary or advisable to carry out the purpose and intent of the Plan and to the extent authorized by the Bankruptcy Code or Bankruptcy Rules;

(e)        to hear and adjudicate the Litigation(s), whether such Litigation(s) was/were filed or commenced before or after the Effective Date, including without limitation, any settlement of such Litigation(s), and/or any disputes concerning settlement of the Litigation(s), or to enforce and/or implement the terms of any such settlement;

(f)        to hear and determine any settlement and/or compromise, pursuant to Bankruptcy Rule 9019, concerning any claim of the Debtor's Estate and/or any of the provisions of this Article;

(g)        to resolve any disputes concerning or related to the Sale or any order authorizing the Sale;

(h)        to hear and determine any settlement relating to the Deposits or any part thereof;

(i)        to hear and determine any disputes, issues, or settlement relating to the Section 421-a Claims;

(j)        to hear and determine matters concerning local, state and federal taxes in accordance with sections 345, 505 and/or 1146 of the Bankruptcy Code;

(k)     to hear and determine such other matters as may be provided for in the Confirmation Order of the Bankruptcy Court or that is authorized under the provisions of the Bankruptcy Code, including without limitation, for the purposes set forth in sections 1127(b) and 1142 of the Bankruptcy Code or as contained in Bankruptcy Rules 9019 and 3020(d);

(l)     to hear and determine all applications for compensation;

(m)     to make such orders ex parte or upon application, as are necessary or appropriate, and to hear and determine any controversies and/or disputes, concerning the interpretation and/or implementation of the provisions of the Plan;

(n)     to hear and determine that Distributions have been accomplished as provided in the Plan; and

(o)     to enter a final order or decree concluding the Chapter 11 case or an order of substantial consummation.

## ARTICLE XIV

## **GENERAL PROVISIONS**

### 14.01.     **Headings**

The headings used in the Plan are inserted for convenience or reference only and neither constitute a portion of the Plan nor in any manner affect the provisions or interpretations of this Plan.

### 14.02.     **Section 1125(e) of the Bankruptcy Code**

Confirmation of this Plan will constitute a finding that the Trustee (and each of his affiliates, agents, directors, officers, employees, advisors, Professionals, and attorneys) have

proposed and solicited acceptances of this Plan in good faith and in compliance with the applicable provisions of the Bankruptcy Code.

### 14.03. Successors and Assigns

The rights and obligations of any entity named or referred to in the Plan will be binding upon, and shall inure to the benefit of, the successors and assigns of such entity.

### 14.04. Notices

Notices will be deemed given when received.  All notices, requests or demands described in or required to be made in accordance with the Plan must be in writing and must be delivered personally or by registered or certified mail, return receipt requested, to:

Attorneys for the Trustee:

Gary F. Herbst, Esq.
Jacqulyn Loftin, Esq.
LaMonica Herbst & Maniscalco, LLP
3305 Jerusalem Avenue, Suite 201
Wantagh, New York 11793
Telephone: (516) 826-6500

To the Trustee:

Gregory Messer, Chapter 11 Trustee
26 Court Street
Suite 2400
Brooklyn, New York 11242

Attorneys for the Committee:

Scott J. Bogucki, Esq.
Gleichenhaus, Marchese & Weishaar, P.C.
930 Convention Tower
43 Court Street
Buffalo, New York 14202

### 14.05. Change of Address

The Trustee and/or his Professionals may change the address at which he/they is/are to receive notices under the Plan by sending written notice pursuant to the provisions of this Article to the person to be charged with the knowledge of such change.

### 14.06.    Post-Confirmation Reporting

The Trustee shall file post-confirmation operating reports on a quarterly basis, upon the conclusion of each respective quarter, as follows:  January 20th, April 20th, July 20th and October 20th, until the earlier of the entry of a final decree, conversion, or dismissal of these cases. The Plan Administrator is obligated to file quarterly post-confirmation operating reports.

In compliance with EDNY LBR 3022-1, within 14 days following the full administration of the estate, but not later than 18 months following the entry of the order confirming a Plan, the Plan Administrator shall file, on notice to the United States trustee, an application and a proposed order for a final decree pursuant to Bankruptcy Rule 3022.

Within 14 days after the entry of the Confirmation Order, the Plan Administrator shall file on presentment in accordance with Local Bankruptcy Rule 2002-1 a proposed Order that shall contain a timetable with the steps proposed for achieving substantial consummation of the Plan and entry of a final decree, including resolution of claims and resolution of avoidance and other bankruptcy court litigation outstanding or contemplated. The law firms or individuals responsible for safeguarding and accounting for the proceeds of all recoveries on behalf of the estate shall be identified therein.

### 14.07.    Post-Confirmation Date Service List - Persons Entitled to Notice

From and after the Confirmation Date, any notices of appearance and demands for service of process filed by any Person with the Bankruptcy Court prior to such date shall no longer be effective; provided, however, any parties who filed notices of appearance int his cases, who have

provided email address to the Plan Administrator and/or Committee shall receive email notice of pleadings No further notices, other than notice of entry of the Confirmation Order, shall be required to be sent to such Persons unless such Persons file a new notice of appearance and demand for service of process dated subsequent to the Confirmation Date, which subsequent notice and demand must be filed with the Bankruptcy Court and served upon the Persons listed in Section 14.04 of the Plan.

### 14.08. <u>Notice of Entry of Confirmation Order</u>

Notice of Entry of the Confirmation Order shall be sufficient if a copy of a notice indicating that said order has been entered by the Bankruptcy Court, without attaching said order, is mailed to those Persons who had filed a notice of appearance and request for service of process in the Chapter 11 Case and to Persons appearing on the Post-Confirmation Date Service List.

### 14.09. <u>Effectuating Documents and Further Transactions</u>

The Trustee and the Committee and his/their counsel shall be authorized to execute, deliver, file, or record such documents, contracts, instruments, releases, and other agreements and take such other actions as may be necessary or desirable to effectuate and further evidence the terms and conditions of the Plan.  All Holders of Claims or Interests, including those receiving distributions under the Plan, shall, from time to time, prepare, execute and deliver any agreements or documents and take any other actions as may be necessary or advisable to effectuate the provisions and intent of the Plan.

### 14.10. <u>Blank Ballots</u>

Any ballot which is executed by the Holder of an Allowed Claim but which does not indicate an acceptance or rejection of the Plan, shall be deemed to be an acceptance of the Plan. Any ballot not filed in accordance with the filing instructions on the ballot pertaining to the Plan shall not be counted for voting purposes.

### 14.11.    **Cramdown**

The Trustee reserves the right to request confirmation of this Plan under section 1129(b) of the Bankruptcy Code with respect to any Class that does not accept this Plan pursuant to section 1126 of the Bankruptcy Code.

### 14.12.    **No Interest**

Except with respect to (i) any Claim or Administrative Expense of the Haight Street Secured Lender; and (ii) Holders of unimpaired Claims and Allowed Secured Claims entitled to interest under applicable non-bankruptcy law, pursuant to an Order of this Court, or as otherwise provided herein, no Holder of an Allowed Claim, including without limitation, Holders of Allowed Unsecured Claims under Class 6 of this Plan, shall receive interest on any Distribution to which such Holder is entitled hereunder, regardless of whether such Distribution is made on the Effective Date or thereafter.

### 14.13.    **Manner of and Minimum Distributions**

If a Distribution to be made to a given Holder of an Allowed Claim would be $50.00 or less, notwithstanding any contrary provision of this Plan, no such Distribution will be made to such Holder.  Any unclaimed or retained Distributions shall be disbursed by the Trustee pursuant to the terms of the Plan.  Distributions may be made by the Trustee by wire, electronic transfer, check, or such other method as the Trustee deems appropriate under the circumstances.

### 14.14.    __Rounding to the Nearest Dollar__

Any other provision of the Plan to the contrary notwithstanding, no payments of portions of a Dollar will be made. Whenever any payment of a portion of a Dollar would otherwise be called for, the actual payment shall reflect a rounding of such fraction to the nearest whole Dollar (up or down).

### 14.15.    __Withholding of Taxes__

(a)    The Trustee may withhold from any property to be distributed under this Plan any property which must be withheld for taxes payable by the entity entitled to such Distribution to the extent required by applicable law.  As a condition to making any Distribution under this Plan, the Trustee may request that the Holder of any Allowed Claim provide such Holder's taxpayer identification number and such other certification as may be deemed necessary to comply with applicable tax reporting and withholding laws.

(b)    Notwithstanding any other provision of the Plan, each entity receiving a distribution pursuant to the Plan will have the sole and exclusive responsibility for the satisfaction and payment of any tax obligations imposed on it by any governmental unit on account of such distribution, including income, withholding and other tax obligations.

### 14.16.    __Corporate Dissolution__

Upon the Effective Date, (a) the Debtor shall cease to exist as a corporation, and (b) the Shareholder's Interests shall be cancelled.  Distributions to Shareholders will occur if and only if (i) money remains in the Estate after payment of all Administrative Expenses, United States Trustee fees, and Allowed Claims, (ii) no Disputed Claims or unpaid Administrative Expenses then exist, and (iii) the Committee has completed its investigation and has determined that no viable claims exist against the Shareholders or any other Insiders or that any such claims have been

otherwise settled, and none of the Shareholder Interests have been deemed subordinated to the other Shareholder's Interests.  Upon the Effective Date, the Debtor shall be deemed dissolved for all purposes without the necessity for any other or further actions to be taken by or on behalf of the post-confirmation Debtor and/or the Trustee or payments to be made in connection therewith. From and after the Effective Date, the post-confirmation Debtor (or the Trustee, on behalf of the Debtor) shall not be required to file any document, or take any action, to withdraw its business operation from any state (or jurisdiction) where the Debtor previously conducted business operations.

### 14.17.    <u>Controlling Documents</u>

(a) In the event and to the extent that any provision of the Plan is inconsistent with the provisions of the Disclosure Statement, the provisions of the Plan shall control and take precedence, and (b) in the event and to the extent that any provision of this Plan or Confirmation Order is inconsistent, the Confirmation Order shall control.

### 14.18.    <u>Governing Law</u>

Except to the extent that the Bankruptcy Code is applicable, the rights and obligations arising under the Plan shall be governed by, and construed and enforced in accordance with, the laws of the State of New York.

### 14.19.    <u>Severability</u>

In the event that the Bankruptcy Court determines, prior to the Confirmation Date, that any provision of this Plan is invalid, void or unenforceable, the Bankruptcy Court shall, with the consent of the Trustee, in consultation with the Committee, have the power to alter and interpret

such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void or unenforceable, and such term or provision shall then be applicable as altered or interpreted. Notwithstanding any such holding, alteration or interpretation, the remainder of the terms and provisions of this Plan shall remain in full force and effect and shall in no way be affected, impaired or invalidated by such holding, alteration or interpretation. The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of this Plan, as it may have been altered or interpreted in accordance with the foregoing, is valid and enforceable pursuant to its terms.

### 14.20.    No Admissions

Notwithstanding anything herein to the contrary, nothing contained in the Plan shall be deemed an admission by the Trustee, on behalf of the Debtor's Estate, with respect to any matter set forth herein, including, without limitation, liability on any Claim or the propriety of a Claim's classification (except as to all matters concerning the Claims and/or Administrative Expenses of the Haight Street Secured Lender).

### 14.21.    Entire Agreement

Except as otherwise indicated, the Plan and the Confirmation Order supersede all previous and contemporaneous negotiations, promises, covenants, agreements, understandings and representations on such subjects, all of which have become merged and integrated into the Plan.

### 14.22.    <u>References</u>

Unless otherwise specified, all references in the Plan to Sections and Articles are to Sections and Articles of the Plan.

Dated:  April 5, 2021          **LaMONICA HERBST & MANISCALCO, LLP**
      Wantagh, New York      *Counsel to the Chapter 11 Trustee*

By:   <u>*s/ Gary F. Herbst*</u>
     Gary F. Herbst, Esq.
     Jacqulyn S. Loftin, Esq.
     3305 Jerusalem Avenue, Suite 201
     Wantagh, New York 11793
     Telephone: 516.826.6500


Dated:  April 5, 2021          **GREGORY MESSER, ESQ.**
      Wantagh, New York      *Solely in his capacity as the Chapter 11 Trustee*


By:   <u>*s/ Gregory M. Messer*</u>
     26 Court Street, Suite 2400
     Brooklyn, New York 11242
     (718) 858-1474